UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

_____
                                      )

In re FEDEX GROUND PACKAGE    )     CAUSE NO. 3:05-MD-527 RM
SYSTEM, INC., EMPLOYMENT       )           (MDL-1700)
PRACTICES LITIGATION           )
----------------------------------------------- )
THIS DOCUMENT RELATES TO:   )
                                        )
ALL ACTIONS                          )
_____ )

## OPINION AND ORDER

This multi-district litigation docket involving the classification of FedEx Ground pickup and delivery drivers is before the court on the motions for class certifications filed by plaintiffs in the actions categorized in this docket as "Wave 1," "Wave 2," and "Wave 3."

These plaintiffs challenge the practice of FedEx Ground Package System, Inc. labeling its Ground and Home Delivery division drivers as independent contractors. The plaintiffs assert that although FedEx Ground represents to its drivers that they are only partnering with FedEx Ground and will essentially own their own business, all FedEx Ground drivers sign the FedEx Ground Operating Agreement, which actually reserves to FedEx Ground the right to exercise pervasive control over the method, manner, and means of the drivers' work, rendering improper the drivers' classification as independent contractors rather than employees.

As examples of the actual control FedEx Ground asserts over its drivers, the plaintiffs point to FedEx Ground's right to control the drivers' appearance and behavior, their pay and rates charged to customers, the vehicle they use and its appearance, their route and the number of packages they deliver each day, their delivery methods and mode of customer service, their hours of work, and their opportunity to increase their earnings. The plaintiffs say litigation of this case as a class action is appropriate and desirable since common evidence can resolve all plaintiffs' claims. The plaintiffs contend that FedEx Ground has a categorical policy of classifying its drivers as independent contractors. All class members share the same job title, have signed the same non-negotiable Operating Agreement, are paid under the same compensation formula, wear the same uniform, drive FedEx Ground-approved trucks bearing the FedEx Ground logo, work exclusively for FedEx Ground, and are all similarly integrated into FedEx Ground's operations.

FedEx Ground generally responds that the proposed classes should not be certified because the plaintiffs' claims turn on individualized issues, including whether contractors should be classified as employees under the states' statutory tests, and whether any individual contractor can meet the high bar for rescission of his individual contract. FedEx Ground says the named plaintiffs themselves show how diverse this class would be because each contractor's experience is different: some named plaintiffs reviewed the Operating Agreement before signing;

some had others drive their routes; some bought their routes from contractors; and one even developed his own alternating day schedule.

For the reasons that follow, the court grants motions for class certifications in cases involving drivers from Tennessee (see page 10 of this opinion), Arkansas (page 24), Kentucky (page 30), Texas (page 39), Wisconsin (page 44), Alabama (page 48), New York (page 53), New Jersey (with a modification of the class definition (page 69)), Maryland (page 77), Minnesota (page 87), Pennsylvania (page 93), New Hampshire (page 97), South Carolina (page 102), Oregon (page 110), Indiana (page 119), West Virginia (page 129), Florida (page 149), and Rhode Island (page 156). The court grants the motion for class certification involving drivers from California to the extent the motion seeks a class and sub-class for state law claims, but denies the motion with respect to the Family and Medical Leave Act claims (page 63). The court denies motions for class certifications in cases involved drivers from Montana (page 17), Mississippi (page 20), Massachusetts (page 57), Michigan (page 83), Missouri (page 106), South Dakota (page 115), Iowa (page 125), Virginia (page 136), and Illinois (page 142).

## A.

To maintain a class action, the named representatives and each class they seek to represent must meet the requirements under Federal Rule of Civil Procedure 23. First, the proposed class action must satisfy all four elements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation.

A district court has broad discretion in determining whether the plaintiffs have satisfied the prerequisites of Rule 23, <u>Retired Chicago Police Ass'n v. City of Chicago</u>, 7 F.3d 584, 596 (7th Cir. 1993), but the court must conduct a rigorous inquiry into the propriety of proceeding as a class before certifying. <u>Livingston v. Associates Fin., Inc.</u>, 339 F.3d 553, 558 (7th Cir. 2003). The plaintiffs have the burden of demonstrating they satisfy the class certification prerequisites. <u>Retired Chicago Police Ass'n v. City of Chicago</u>, 7 F.3d at 596.

Numerosity means the proposed class is "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). No magic number establishes the numerosity requirement, and some courts have found this element satisfied when the putative class consists of fewer than forty members. <u>Lucas v. GC Servs. L.P.</u>, 226 F.R.D. 337, 340 (N.D. Ind. 2005) (collecting cases). "The exact number of class members need not be known . . . [i]nstead, the plaintiff can offer 'good faith estimates of class size' . . . and the court may use 'common sense assumptions' to determine the validity of those estimates'." <u>Id.</u> (internal citations and quotations omitted).

The commonality requirement requires only that there exist "questions of law or fact common to the class." <u>Keele v. Wexler</u>, 149 F.3d 589, 594 (7th Cir. 1998). "A common nucleus of operative fact usually is enough to satisfy the commonality requirement of Rule 23(a)(2)." <u>Id.</u> That there is some factual variation among the class grievances will not defeat a class action. <u>Rosario v. Livaditis</u>, 963 F.2d 1013, 1017 (7th Cir. 1992). Claims arising from a defendant's standardized

4

conduct towards members of the proposed class or from the interpretation of a standard contract often present a case for treatment as a class action. <u>Keele v. Wexler</u>, 149 F.3d at 594 (*citing* <u>Kleiner v. First Nat'l Bank of Atlanta</u>, 97 F.R.D. 683, 691 (N.D. Ga. 1983) ("When viewed in light of Rule 23, claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action."); and <u>Heartland Communications, Inc. v. Sprint Corp.</u>, 161 F.R.D. 111, 116 (D. Kan. 1995) (certifying class where contracts signed by all class members contained virtually the same provision as that challenged by class representative)).

"The question of typicality in Rule 23(a)(3) is closely related to the preceding question of commonality," <u>Rosario v. Livaditis</u>, 963 F.2d at 1018, but this requirement "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." <u>Retired Chicago Police Ass'n v. City of Chicago</u>, 7 F.3d at 596-597. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." <u>De La Fuente v. Stokely-Van Camp, Inc.</u>, 713 F.2d 225, 232 (7th Cir. 1983).

Rule 23(a)(4) requires that the named plaintiff "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). This means that (a) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class, <u>Rosario v. Livaditis</u>, 963 F.2d at 1018, and (b) the class

representatives must be willing and able to "vigorously pursue the litigation on behalf of the class," and the attorneys they have chosen to represent the class must be "qualified, experienced and able to conduct the litigation." Scholes v. Stone, McGuire & Benjamin, 143 F.R.D. 181, 186 (N.D. Ill. 1992) (*citing* Secretary of Labor v. Fitzsimmons, 805 F.2d 682, 697 (7th Cir. 1986)).

In addition to these four prerequisites, an action must also be maintainable under at least one of the three provisions of Rule 23(b). The court must decide which form of class action, if any, is the most appropriate under Rule 23(b). Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 163 (1974); Jefferson v. Ingersoll Int'l, Inc., 195 F.3d 894, 898 (7th Cir. 1999) (the court should "endeavor to select the most appropriate subsection, not just the first linguistically applicable one in the list").

A court may certify a class under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." FED. R. CIV .P. 23(b)(2). When a request is made for both declaratory and monetary relief, the class is properly certified under Rule 23(b)(2) only if the request for declaratory relief predominates over the request for monetary relief. Lemon v. International Union of Operating Eng'rs, Local No. 139, 216 F.3d 577, 580-581 (7th Cir. 2000). That is, the court must decide whether the requested monetary damages are "incidental" to the requested declaratory relief. Jefferson v. Ingersoll Int'l, 195 F.3d at 899. Incidental damages are those "that flow directly from liability to the class as a whole on the claims

6

forming the basis of the injunctive or declaratory relief." <u>Lemon v. Operating Eng'rs, Local 139</u>, 216 F.3d at 581 (*quoting* <u>Allison v. Citgo Petroleum Corp.</u>, 151 F.3d 402, 415 (5th Cir. 1998)). Incidental damages, therefore, don't depend "in any significant way on the intangible, subjective differences of each class member's circumstances" and don't "require additional hearings to resolve the disparate merits of each individual's case." <u>Allison v. Citgo Petroleum</u>, 151 F.3d at 415.

Rule 23(b)(3) allows class certification when questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See* <u>Szabo v. Bridgeport Machines, Inc.</u>, 249 F.3d 672, 676 (7th Cir. 2001). The court looks beyond the pleadings to analyze the claims, defenses, relevant facts, and applicable substantive law that may be necessary to determine whether certification is appropriate. <u>Castano v. American Tobacco Co.</u>, 84 F.3d 734, 744 (5th Cir. 1996). While individual issues may exist in determining the damages suffered, "it has been commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate." <u>Holmes v. Pension Plan of Bethlehem Steel Corp.</u>, 213 F.3d 124, 137 (3rd Cir. 2000) (*quoting* <u>Bogosian v. Gulf Oil Corp.</u>, 561 F.2d 434, 456 (3rd Cir. 1977)); *see also* <u>In re Visa Check/MasterMoney Antitrust Litig.</u>, 280 F.3d 124, 139 (2d Cir. 2001) ("Common issues may predominate when

liability can be determined on a class-wide basis, even when there are some individualized damage issues."); <u>Bertulli v. Independent Ass'n of Cont'l Pilots</u>, 242 F.3d 290, 298 (5th Cir. 2001) (affirming district court's determination that common issues predominated, stating that "[a]lthough calculating damages will require some individualized determinations, it appears that virtually every issue prior to damages is a common issue"); FED. R. CIV. P. RULE 23(b)(3) ADVISORY COMMITTEE'S NOTES ("[A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of damages suffered by the individuals within the class.").

"To determine whether damages predominate, a court should certify a class on a claim-by-claim basis, treating each claim individually and certifying the class with respect to only those claims for which certification is appropriate." <u>Bolin v. Sears, Roebuck & Co.</u>, 231 F.3d 970, 976 (5th Cir. 2000); *see also* FED. R. CIV. P. 23(c)(4); <u>Gunnells v. Healthplan Servs., Inc.</u>, 348 F.3d 417, 441 (4th Cir. 2003) ("courts should take full advantage of the provision in subsection (c)(4) permitting class treatment of separate issues in the case . . . if [an] action includes multiple claims, one or more of which might qualify as a certifiable class claim"); <u>Carnegie v. Household Int'l, Inc.</u>, 376 F.3d 656, 661 (7th Cir. 2004) ("Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues."). The plaintiffs must also show a class action is superior to other available methods for the fair and efficient

adjudication of this controversy. FED. R. CIV. P. 23(b)(3); <u>Wahl v. Midland Credit Mgmt., Inc.</u>, 243 F.R.D. 291, 299 (N.D. Ill. 2007). One factor often disputed in the superiority analysis (as it is in each of these cases) is "the difficulties likely to be encountered in the management of a class action." FED. R. CIV. P. 23(b)(3)(D). Class actions have been found superior when potential damages might be too insignificant to provide class members with incentive to pursue a claim individually, and where potential plaintiffs may not be aware of their rights or be able to hire competent counsel to protect these rights. *See* <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 617 (1997).

## B.

On October 15, this court issued its order granting the Kansas and ERISA plaintiffs' motion for class certification. Because of the similarities amongst states, in the conclusion of that order the court instructed all parties that had filed class certification briefs to file a five-page supplemental stating how their position on class certification differs from the positions addressed in that order. In this order, the court uses the Kansas opinion as its basis and will analyze whether each of the states addressed raise substantial enough differences to make class certification inappropriate.

TENNESSEE

The Tennessee plaintiffs allege violations of Tennessee's Consumer Protection Act of 1977 and seek an accounting, rescission, and declaratory and injunctive relief. The Tennessee plaintiffs contend that through "misclassification" of its drivers, FedEx Ground has acted on grounds generally applicable to all of the proposed members of the Tennessee class of FedEx Ground pickup and delivery drivers and, therefore, this class is suitable for class certification under 23(b)(2). Additionally, the common "overarching issue" of whether FedEx Ground treated its drivers as employees predominates and makes certification of the Tennessee claims suitable under 23(b)(3). The Tennessee plaintiffs assert that these claims are legally and factually common and typical to the following class:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since June 22, 1999 to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Tennessee.

In its supplemental briefing, FedEx Ground raises two issues, which it asserts make the Tennessee scenario different from the one presented in Kansas and weigh against class certification. The first is that, unlike Kansas where the named class representatives included current and former drivers, the Tennessee named plaintiffs all are former contractors. FedEx Ground argues that this presents two separate problems for adequacy of representation. First, as former contractors, the Tennessee plaintiffs can only argue that they were improperly

classified as independent contractors in the past. A named plaintiff must have standing at the time of certification for the class to be properly certified. Second, former drivers have significantly different interests than do the current contractors they purport to represent. Current contractors have a long-term interest in whether they are classified as contractors or employees, and whether they can obtain what they believe is a more favorable relationship with FedEx Ground, whereas former contractors have no such interest.

The two cases FedEx Ground cites to support its standing argument deal with plaintiffs seeking injunctive relief for allegedly improper practices in the criminal justice system. O'Shea v. Littleton, 414 U.S. 488 (1974), addressed whether plaintiffs had standing to bring a class action alleging that the country magistrate and associate judge of the county circuit court were depriving members of their class of their Constitutional rights by engaging, under color of state law, in a continuing pattern and practice of conduct consisting of illegal bond setting, sentencing, and jury fee practices in criminal cases. The plaintiffs in Robinson v. City of Chicago, 868 F.2d 959 (7th Cir. 1989), challenged the city police department's investigatory detention policy.

In the employment context, courts have held that former employees have standing to represent a class consisting of both current and past employees. As stated in Cross v. National Trust Life Ins. Co., 553 F.2d 1026, 1030-1031 (6th Cir. 1977), "[t]hat plaintiffs are no longer employees of the defendant does not deprive them of standing to represent a class consisting of current and prospective

employees." *See also* <u>Walker v. Bankers Life & Cas. Co.</u>, No. 06 C 6906, 2007 WL 2903180, at *7 (N.D. Ill. Oct. 1, 2007) ("Bankers Life's additional argument that Paradise lacks standing (and adequacy) to pursue any form of injunctive relief because she is a former agent is also unpersuasive. Former employees are adequate representatives of current employees in class actions seeking, at least in part, declaratory and/or injunctive relief."); <u>Resnick v. American Dental Ass'n</u>, 90 F.R.D. 530, 540 (D.C. Ill. 1981) ("We believe that a former employee, who is not entitled to reinstatement, may still be an adequate representative of a class of past and present employees."). The named Tennessee plaintiffs' lack of current drivers does not defeat the petition for class certification.

"In making the determination of adequacy of representation the district court should consider the experience and ability of counsel for the plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent." <u>Cross v. National Trust</u>, 553 F.2d at 1031. FedEx Ground hasn't questioned the ability of plaintiffs' counsel to represent the class, and the court sees no basis for any antagonistic interests between the named Tennessee plaintiffs and the rest of the class. All Tennessee plaintiffs signed the same standard Operating Agreement and were classified as independent contractors. The Tennessee plaintiffs were subject to the same regulations regarding their appearance, trucks, delivery methods, and working hours. Whether they were improperly classified as independent contractors affects all of them equally, as it entitles both former and current drivers to additional

benefits and compensation as well as entitling the current drivers to proper classification in the future. FedEx Ground asserts that current contractors, unlike former contractors, have a long-term interest in their classification, and whether they can obtain what they believe is a more favorable relationship with FedEx Ground. If the Tennessee plaintiffs are being treated as FedEx Ground employees, however, the law requires them to be classified as such. Current contractors don't have the option to be classified as one type and treated as another.

Many courts have noted the benefits of having former employees named as class representatives. "[W]ith respect to plaintiffs who were former employees of the company 'being familiar with (the company's) employment practices and being free from any possible coercive influence of (the company's) management, (the plaintiffs) are better situated than either job applicants or present employees to present an intelligent and strongly adverse case against (the company's) alleged discriminatory practices.'" Wetzel v. Liberty Mut. Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975) (*quoting* Mack v. General Elec. Co., 329 F. Supp. 72, 76 (E.D. Pa. 1971)). Additionally, deeming former employees inadequate to represent a class that included current employees might give hiring companies a perverse incentive: "employers would be encouraged to discharge those employees suspected as most likely to initiate a Title VII suit in the expectation that such employees would thereby be rendered incapable of bringing the suit as a class action." Wetzel v. Liberty Mut. Ins., 508 F.2d at 247. For these reasons, the court deems the named Tennessee plaintiffs adequate representatives.

FedEx Ground's second objection to class certification is that while the right to control is an important factor, Tennessee courts look beyond written contracts to the parties' actual conduct. In support of this proposition, FedEx Ground cites the Tennessee Court of Appeals in <u>Hendrix v. City of Maryville</u>, which stated: "When the contract is in writing and its terms are indefinite and ambiguous, or if the evidence shows that more than one inference can be drawn from the relationship, or if there is evidence of circumstances and relations outside of the written agreement, the written contract alone cannot be determinative but a question of fact arises which must be determined by the jury." 431 S.W.2d 292, 297 (Tenn. Ct. App. 1968). FedEx Ground claims that this reasoning applies to the Tennessee case since the plaintiffs have squarely put contract interpretation in issue. FedEx Ground sees the Tennessee plaintiffs as contending that the Operating Agreement is internally inconsistent because, on the one hand, it indicates that the contractor has sole discretion in determining the manner and means of the work, and, on the other hand, it reserves certain rights of control to FedEx Ground. The Tennessee plaintiffs also contend that there are "many terms in the contract that are open to many interpretations." Given that parol evidence is admissible when contract language is in dispute, FedEx Ground says class certification is improper despite the existence of an allegedly standardized agreement.

FedEx Ground also contends that, unlike in Kansas where the right to terminate was dispositive, Tennessee courts consider it to be "just one factor to

be considered" in the employee-independent contractor analysis. Wright v. Knox Vinyl & Aluminum Co., Inc., 779 S.W.2d 371, 374 (Tenn. 1989). Tennessee courts apply a seven-factor test to determine employee-independent contractor status: "(1) the right to control the conduct of the work, (2) the right of termination, (3) the method of payment, (4) the freedom to select and hire helpers, (5) the furnishing of tools and equipment, (6) self scheduling of working hours, and (7) being free to render services to other entities." Bargery v. Obion Grain Co., 785 S.W.2d 118, 119-120 (Tenn. 1990). FedEx Ground believes that these factors will take the court beyond the Operating Agreement's terms and hence render class certification unsuitable.

FedEx Ground's reliance on Hendrix v. Maryville for the proposition that parol evidence must be introduced in light of ambiguous contract terms and existence of circumstances and relations outside the contract does not persuade the court. The Tennessee plaintiffs aren't arguing that the Operating Agreement is ambiguous. The Tennessee plaintiffs assert that although the agreement purports to establish an independent contractor relationship with its drivers the amount of control that FedEx Ground withholds throughout the contract makes the relationship one of an employer-employee. In support of their argument, the Tennessee plaintiffs continually point to contract terms that seem to dictate much of the driver's work day. It doesn't appear that the plaintiff's will need to introduce parol evidence for support.

Likewise, while Tennessee courts look to the factors listed in Bargery to determine whether an employee or independent contractor relationship exists, even the court in Bargery stressed that the employer's "right to control" its workers is the primary factor. Bargery v. Obion Grain, 785 S.W.2d at 120 ("The Masiers court noted that while all factors are important the 'right to control' is the primary test."); *see also* Wright v. Knox Vinyl & Aluminum, 779 S.W.2d at 373. Just as this court stressed in its Kansas opinion, determining the extent of FedEx Ground's control primarily will involve an analysis of the standard Operating Agreement. Kansas courts looked to similar factors when determining the extent of an employer's control and this court found that these factors could again be determined primarily by consulting the Operating Agreement. Neither of FedEx Ground's objections persuade the court that certification of the Tennessee class is inappropriate.

MONTANA

In their amended complaint, the Montana plaintiffs assert claims for violations of Montana's independent contractor and wage laws, rescission and *quantum meruit*, an accounting, and declaratory relief. The Montana plaintiffs challenge the validity of FedEx Ground's practice of labeling its ground and home delivery division drivers as "independent contractors," thereby shifting its ordinary operating expenses to its workforce while still retaining the control traditionally enjoyed by an employer. FedEx Ground's standardized policies and procedures

and the pickup and delivery contractor Operating Agreement, they say, make these claims suitable for class certification. The Montana plaintiffs move the court to certify a class under Rule 23(b)(2) for their claims for an accounting and for declaratory judgment. The Montana plaintiffs further move for class certification of their claims for violation of Montana's independent contractor law, violation of Montana's wage law, rescission, and declaratory judgment under Rule 23(b)(3). They assert that these claims are legally and factually common and typical to the following class:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since October 26, 1997 to provide package pickup and delivery services pursuant to the Operating Agreement; and 3)were dispatched out of a terminal in the state of Montana.

FedEx Ground's supplemental brief raises four issues that FedEx Ground asserts make the Montana scenario different from the one presented in Kansas and weigh against class certification. One of these contentions is that the Montana plaintiffs who are former employees may only argue that in the past they were improperly classified as independent contractors. These former drivers lack standing, FedEx Ground says, because they have no stake in the future conduct at which claims for injunctive and declaratory relief are targeted. The court analyzed this objection as to the Tennessee plaintiffs, and for those same reasons the court finds that former Montana employees can adequately represent the interests of current employees in this action.

FedEx Ground's next objection is that based on the Montana plaintiffs' own theory of the case, it will be necessary to go beyond the Operating Agreement's terms to resolve independent contractor status. FedEx Ground portrays the Montana plaintiffs as asserting that the Operating Agreement is inconsistent since, on the one hand, it indicates that the contractor has sole discretion in determining the manner and means of the work, and, on the other hand, it reserves certain rights of control to FedEx Ground. As already stated in the Tennessee analysis, the court doesn't construe the Montana plaintiffs' argument as being that the Operating Agreement is ambiguous, but rather that, although the agreement purports to establish an independent contractor relationship between FedEx Ground and its drivers, the amount of control FedEx Ground withholds throughout the contract makes the relationship one of an employer-employee. Therefore, the court doesn't believe extrinsic evidence will be necessary to construe the contract.

FedEx Ground next argues that Montana courts look beyond the four corners of the contract and analyze the parties' conduct. FedEx Ground is correct. Montana law places a burden of proof on the party claiming an independent contractor relationship to prove both prongs of what the Montana courts call the "AB test": that the hired party "(a) has been and will continue to be free from control or direction over the performance of the services, both under a contract and in fact; and (b) is engaged in an independently established trade, occupation, profession, or business." MONT. CODE ANN. § 39-51-201(14); <u>American Agrijusters</u>

Co. v. Montana Dep't of Labor and Indus., 988 P.2d 782, 787 (Mont. 1999). Under this "AB test," the party claiming an independent contractor relationship must show not only that no contract vested the hiring party with the right to control the details of the contracted work, but also that the hiring party did not in fact control the details of the contracted work. *See, e.g.,* Walling v. Hardy Constr., 807 P.2d 1335 (Mont. 1991). The hired party "must be free from the control of his employer, under his contract And in fact, in the performance of his services." Sharp v. Hoerner Waldorf Corp., 584 P.2d 1298, 1301 (Mont. 1978).

If the Montana plaintiffs are correct about the import of the control reserved to FedEx Ground under the Operating Agreement, it will be unnecessary to look beyond the Operating Agreement. But if the Montana plaintiffs are incorrect, FedEx Ground is entitled to an opportunity to meet the rest of its burden under the "AB test" by proving that it didn't control the details of the drivers' work sufficiently.

Montana law places a burden of proof on FedEx Ground, and FedEx cannot meet that burden of proof without presenting evidence of the control it exercised over (or conversely, the freedom it allowed) its drivers. The parties' submissions make clear that neither unanimity of perception nor uniformity are hallmarks of individual drivers' experiences. Something very close to a driver-by-driver analysis will be needed.

Although the effect of the Operating Agreement is a question common to the entire proposed class, that question does not predominate over the remaining

issues under Montana law. The court denies the Montana plaintiffs' motion for class certification.

The Mississippi plaintiffs' amended complaint asserts claims for fraud, rescission, constructive trust, injunctive relief, and declaratory judgment. They maintain the overarching issue in this litigation is the classification of certain package delivery drivers as independent contractors rather than employees. The Mississippi plaintiffs argue that through this classification, FedEx Ground has acted on grounds generally applicable to all of the proposed members of the Mississippi class of drivers. The Mississippi plaintiffs move to certify a class under Federal Rule of Civil Procedure 23(b)(3) for their claims for rescission of the Operating Agreement, constructive trust and other equitable relief, injunctive relief, and declaratory relief. The Mississippi plaintiffs also move to certify a class under Rule 23(b)(2) for their claims for injunctive and declaratory relief. They assert that these claims are legally and factually common and typical to the following class:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since July 26, 2002, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Mississippi.

In its supplemental briefing, FedEx Ground raises five issues that FedEx Ground says make the Mississippi scenario different from that presented in Kansas and weigh against class certification. First, unlike Kansas, Mississippi courts start with the premise that it is the parties' constitutionally protected right to contract as they please. Therefore, courts generally allow contracting parties to decide for themselves that they are creating an independent contractor relationship even if the facts traditionally would have been viewed as creating that of an employer/employee relationship. In support of this contention, FedEx Ground points to the Mississippi Supreme Court decision Richardson v. APAC-Mississippi, Inc., 631 So. 2d 143 (Miss. 1994).

In Richardson, the plaintiff was leaving a parking lot when a truck driven by McCandless struck her vehicle. The plaintiff filed suit against APAC for negligence based on the theory of *respondeat superior*. APAC countered that McCandless was not its employee, but rather was an independent contractor. The court stated that in Mississippi, the determination of whether a relationship is that of an employer/employee or is an independent contractor relationship "depends upon the power of control which the employer is entitled to exercise over the person in question." 631 So. 2d at 147. An independent contractor relationship is one "where it appears that a person employed to do such work is not, in the execution and performance of such work, subject to the control of the employer, but is free to execute the work without being subject to the orders of the employer with respect to the details thereof." Id. To aid in determining whether

one is an employee or a contractor, Mississippi courts look to a long list of factors.[1] The Richardson court added yet another factor, upon which FedEx Ground relies heavily, to that balancing test: "When a contract is made between two parties that as between themselves creates an independent contractor relationship and involves employment generally performed under a simple master/servant or employer/employee relationship, it will be upheld as between the parties." 631 So. 2d at 150. The Richardson court limited this freedom to contract by stating that when a third party is adversely affected, the "court will carefully scrutinize the contract to see if public policy should permit the transformation of an ordinarily employer/employee relationship into that of an independent contractor." Id.

While no case cited by FedEx Ground has been decided based on the parties' right to contract when third party rights are unaffected, the court's language has been referenced in several other decisions and still appears to be a factor that courts consider. See McKee v. Brimmer, 39 F.3d 94, 98 (5th Cir. 1994) ("The Mississippi Supreme Court in Richardson added an explicit factor which had

---

[1] Mississippi courts apply the following tests: "Whether the principal master has the power to terminate the contract at will; whether he has the power to fix the price in payment for the work, or vitally controls the manner and time of payment; whether he furnishes the means and appliances for the work; whether he has control of the premises; whether he furnishes the materials upon which the work is done and receives the output thereof, the contractor dealing with no other person in respect to the output; whether he has the right to prescribe and furnish the details of the kind and character of work to be done; whether he has the right to supervise and inspect the work during the course of the employment; whether he has the right to direct the details of the manner in which the work is to be done; whether he has the right to employ and discharge the subemployees and to fix their compensation; and whether he is obliged to pay the wages of said employees." Richardson v. APAC-Mississippi, 631 So. 2d at 148-149.

previously been implicit to the balancing test used in determining the nature of a relationship."); <u>McCary v. Wade</u>, 861 So. 2d 358, 362 (Miss. Ct. App. 2003) ("Looking further to <u>Richardson</u>, the appellants direct our attention to <u>Richardson's</u> addition of a 'public policy' test to determine liability."). Although, as the plaintiffs point out, this is just one factor in the balancing test, it is a significant one.

Deciding the parties' intent when they signed the Operating Agreement will require individualized analysis that is not consistent with class certification. As FedEx Ground points out, the Mississippi plaintiffs might refute an intention to enter into an independent contractor relationship by asserting that the contract was so long and confusing they didn't understand what they were agreeing to. Individual plaintiffs would have to testify as to their understanding and intent when they signed the Operating Agreement. This weighs heavily against certification of a class. Since the Mississippi plaintiffs' claims all hinge on whether the relationship between FedEx Ground and its drivers is an employer/employee relationship or an independent contractor relationship, the court must deny the Mississippi plaintiffs' motion for class certification.

ARKANSAS

The single named Arkansas plaintiff, David Harris, alleges violations of Arkansas's overtime statute and asserts claims for fraud, rescission, unjust enrichment, and declaratory judgment. Mr. Harris claims that the common issue

of whether FedEx Ground improperly labels its drivers as independent contractors is at the heart of each of the Arkansas claims. Mr. Harris asks this court to certify a class under Federal Rule of Civil Procedure 23(b)(3) for his declaratory judgment claim, his Arkansas Wage and Hour Law claim, his unjust enrichment claim, his conversion claim, and for his *quantum meruit* claim. Mr. Harris seeks certification of a class under Rule 23(b)(2) for his claims for declaratory judgment and injunctive relief. Mr. Harris asserts that these claims are legally and factually common and typical to the following class:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full time basis (meaning exclusive of time off for commonly excused employment absences) since Jan. 17, 2001, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Arkansas.

In its supplemental briefing, FedEx Ground says four issues make the Arkansas case different from the one presented in Kansas and weigh against class certification. FedEx Ground argues that, unlike in Kansas, the sole named Arkansas plaintiff is a former contractor who can only argue that he was improperly classified as an independent contractor in the past. As a former contractor, FedEx Ground says, Mr. Harris lacks standing because he has no stake in the future conduct at which claims for injunctive and declaratory relief are targeted. Additionally, as a former contractor, Mr. Harris only has an interest in financial gain and not in declaratory and injunctive relief. FedEx Ground argues that this conflicts with the interests of the putative class members who are

current contractors. The court addressed FedEx Ground's nearly identical objection to the Tennessee class certification and, for the reasons stated there, doesn't find that it weighs against class certification.

FedEx Ground next argues that in Arkansas the "control test" is not dispositive. Instead, FedEx Ground asserts, the Arkansas Supreme Court has "consistently held that no rule of unvarying application can be formulated for ascertaining whether a workman is a servant or an independent contractor, and each case must be determined upon its own particular facts." Massey v. Poteau Trucking Co., 254 S.W.2d 959, 961 (Ark. 1953). While FedEx Ground concedes that the "extent of control" is the principal factor to be considered, it isn't the only factor. Arkansas courts also consider the factors borrowed from the RESTATEMENT (SECOND) OF AGENCY § 220:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work; (b) whether the one employed is engaged in a distinct occupation or business; (c) the kind of occupation, with reference to whether in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (d) the skill required in the particular occupation; (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (f) the length of time for which the person is employed; (g) the method of payment, whether by the time or by the job; (h) whether the work is a part of the employer's regular business; (i) whether the parties believe they are creating the relation of master and servant; and (j) whether the principal is in business.

Blankenship v. Overholt, 786 S.W.2d 814, 815 (Ark. 1990).

FedEx Ground believes the court will need to go outside of the contract to utilize the RESTATEMENT factors. For example, whether the driver has a "distinct

business" may turn on whether the contractor is incorporated, which varies across drivers. The Operating Agreement doesn't indicate how long the driver has contracted with FedEx Ground, which will vary from several months to many years. FedEx Ground also contends that the court won't be able to determine from the Operating Agreement whether the driver supplied the instrumentalities. Lastly, FedEx Ground argues that weighing the parties' intent will vary from driver to driver.

When deciding whether an independent contractor or employer/ employee relationship exists under Arkansas law, "[t]he right to control, not the actual control, is the principal factor in determining the worker's status." Draper v. Conagra Foods, Inc., 212 S.W.3d 61, 67 (Ark. Ct. App. 2005); *see also* Dairy Farmers of America, Inc. v. Coker, No. CA 06-769, 2007 WL 1207221, at *5 (Ark. Ct. App. Apr. 25, 2007) ("The ultimate question in determining whether a person or entity is an independent contractor is not whether the employer actually exercises control over the doing of the work, but whether he has the right to control the work.").

As FedEx Ground indicated, the Draper court used the RESTATEMENT factors to guide its analysis and noted that "there is no fixed formula for determining whether an entity is an employee or an independent contractor, the determination must be made based on the particular facts of each case." 212 S.W.3d at 67. That language doesn't convince the court that the Arkansas analysis would vary substantially from that used in Kansas. Arkansas courts use the RESTATEMENT

factors as tools to help weigh the evidence. None but the right to control is determinative. As in the court's Kansas analysis, these RESTATEMENT factors will guide the determination of whether an employer/employee or independent contractor relationship exists between the drivers and FedEx Ground based primarily on the terms of the Operating Agreement. As for whether the drivers have a "distinct business", statistics of the incorporated drivers can be provided without requiring analysis of each driver's individual circumstances. The same holds true for the length of time each of the drivers has contracted with FedEx Ground (assuming the overall period, rather than the duration of the standard Operating Agreement, is the pertinent inquiry). The court held with respect to the Kansas certification motion that whether the drivers supply their own instrumentalities could be determined primarily from the agreement's terms.

Lastly, although intent is one of the RESTATEMENT factors it was rarely used in the cases the parties cite. The <u>Draper</u> court factored the parties' intent into its analysis, but also found that the parties' intent "is not determinative . . . except insofar as such belief indicates an assumption of control by the one and submission to control by the other." 212 S.W.3d at 69. Inquisition into the parties' intent at the time of signing would not, after years of litigation preparation, provide much guidance in the Arkansas case.

FedEx Ground's third objection is that in determining the extent of control, Arkansas courts look at the actual control exercised over the worker to discern the level of control to which the worker was subjected. In support of this contention,

FedEx Ground cites to <u>Draper v. Conagra Foods</u>, 212 S.W.3d at 67-69, in which, according to FedEx Ground, the court examined numerous extra-contractual aspects of the actual relationship between the parties, such as control over the route driven, drivers time and date requirements, and precautions for protecting deliveries, to determine whether summary judgment was appropriate.

The <u>Draper</u> court explicitly stated that the right to control, not the actual control, is the principal factor in the independent contractor/employee analysis: "The governing distinction is that if control of the work reserved by the employer is control not only of the result, but also of the means and manner of performance, then the relation of master and servant necessarily follows." 212 S.W.3d at 67. Control over the route and any time or date requirements could be determined by referring mainly to the Operating Agreement in this case.

Lastly, FedEx Ground alleges that by contending that there are "many terms in the contract that are open to many interpretations," plaintiff has placed contract interpretation squarely at issue in this case.[2] When contract interpretation is in issue, Fed Ex contends, class certification is improper. As stated in its Tennessee analysis, the court does not interpret the Arkansas plaintiff's argument as being that the contract is ambiguous. Instead the Arkansas

---

[2] FedEx Ground begins its fourth objection by stating that Arkansas courts look to control based on the "agreement of the parties." FedEx Ground then states that since the plaintiff's theory of the case is that he signed a contract of adhesion, Mr. Harris is challenging that he and FedEx Ground, in fact, agreed to the terms in the Operating Agreement. FedEx Ground provides no legal support for this contention and doesn't elaborate further. Since the court's research has disclosed no basis for this objection, the court will not address it further.

plaintiff asserts that although the agreement purports to establish an independent contractor relationship with its drivers the amount of control that FedEx Ground withholds throughout the contract makes the relationship one of an employer-employee. Neither this nor any of FedEx Ground's previous three objections weighs against class certification.

Kentucky

Kentucky plaintiffs John Coleman, William Cress, Barry Hindman, and George Sanders seek class certification of their claims for violations of Kentucky's wage deduction statute, rescission and unjust enrichment, and declaratory and injunctive relief. The Kentucky plaintiffs argue that these claims all depend on the predominant common question of whether FedEx Ground has improperly labeled these drivers as independent contractors, which will require the court to assess common evidence of FedEx Ground's programmatic retention and exercise of the right to direct and control its drivers. The Kentucky plaintiffs move for certification of a damages and unjust enrichment class under Federal Rule of Civil Procedure 23(b)(3) for their claims for violation of Kentucky Revised Statutes §§ 337.060 and 337.070, rescission, and declaratory relief. They also move the court to certify a class under Rule 23(b)(2) for their claims for declaratory relief and injunctive relief. The Kentucky plaintiffs contend that these claims are legally and factually common and typical among the following similarly situated class:

All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since September 13, 2000, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal located in Kentucky or provide(d) pick-up and delivery services within Kentucky.

In its supplemental briefing, FedEx Ground raises six issues, which it asserts make the Kentucky case different from the one presented in Kansas and weigh against class certification. One of those issues is that, in contrast to the Kansas class representatives who include current drivers, the Kentucky plaintiffs are all former drivers who can only argue that they were improperly classified as independent contractors in the past. FedEx Ground argues that as former drivers, these plaintiffs lack standing and their claims are not typical and conflict with the putative class, making them inadequate representatives. For the reasons stated in the Tennessee analysis, the court disagrees with FedEx Ground's position on the Kentucky plaintiffs' standing.

FedEx Ground also asserts that the named plaintiffs are inadequate representatives because they, unlike the vast majority of the putative class, drive out of an Indiana terminal. FedEx Ground argues that while Kentucky law will govern most of the putative class, Indiana law applies to the named Kentucky plaintiffs, who executed their Operating Agreements in Indiana and allegedly were controlled by terminal management in Indiana.

The Kentucky plaintiffs claim that all four named plaintiffs drove out of FedEx Ground's Louisville terminal, which relocated across the Ohio River to Jeffersonville, Indiana in 2000, but continues to be referred to as the "Louisville terminal." The Louisville terminal is subdivided between drivers who drive routes in Kentucky and drivers who drive routes in Indiana; all trucks and packages destined for Kentucky are on one side of the terminal and the Indiana trucks and packages are on the other side. The four named plaintiffs all were Kentucky residents while they worked for FedEx Ground, worked on the Kentucky side of the Louisville terminal, and drove routes located exclusively in Kentucky.

This case came from, and would return to, a federal court sitting in Kentucky, so Kentucky choice of laws rules apply. *See* Tanner v. Jupiter Realty Corp., 433 F.3d 913, 915 (7th Cir. 2006) ("When a district court sits in diversity, it must apply the choice of law principles of the forum state to determine which state's substantive law governs the proceeding."). When determining the appropriate state law to apply, Kentucky courts have "applied Kentucky substantive law *whenever possible."* Harris Corp. v. Comair, Inc., 712 F.2d 1069, 1071 (6th Cir. 1983). The Harris court when on to state that the Kentucky Supreme Court will apply Kentucky law "to a contract issue if there are sufficient contacts and no overwhelming interests to the contrary, even if the parties have voluntarily agreed to apply the law of a different state." Id.; *see also* Foster v. Leggett, 484 S.W.2d 827, 829 (Ky. 1972) ("We are now reaffirming our position taken in Wessling v. Paris, [417 S.W.2d 259 (Ky. 1967)], that if there are

significant contacts—not necessarily the most significant contacts—with Kentucky, the Kentucky law should be applied.").

In a case analogous to this case, <u>Davis v. Siemens Med. Solutions USA, Inc.</u>, 399 F. Supp. 2d 785 (W.D. Ky. 2005), Kentucky's inclination to apply forum law was again displayed. Mr. Davis, a product sales executive, brought suit against Siemens for additional commissions and benefits he thought were due to him under their compensation agreement, which contained a New Jersey choice of law provision. The court found that Mr. Davis was a Kentucky resident whose employment was focused there. 399 F. Supp. 2d at 791. The only facts connecting New Jersey to Mr. Davis's case was that the contract was negotiated in a New Jersey hotel and that the Siemens employee who sent Mr. Davis the contract to sign worked in New Jersey. Based on these facts, the <u>Davis</u> court rejected the choice of law provision and found that Kentucky had the most significant relationship to the dispute. <u>Id.</u>

In today's case, the Kentucky plaintiffs have significant contacts with both Kentucky and Indiana. The named Kentucky plaintiffs were all Kentucky residents who drove routes and delivered packages exclusively in Kentucky. The Kentucky plaintiffs' terminal is located in Indiana, so they loaded and unloaded packages, interacted with their supervisors, and some even signed their Operating Agreement in Indiana. These facts give both Kentucky and Indiana significant interest in the employment conditions of the plaintiffs. Based on the cases just

discussed, however, there are sufficient contacts for Kentucky courts to apply Kentucky law to the named plaintiffs.

Further, while FedEx Ground raised this choice of law objection by way of questioning the adequacy of the named plaintiffs, FedEx Ground hasn't stated how the substantive law of Indiana would differ from the law of Kentucky. As the court of appeals explained in Massachusetts Bay Ins. Co. v. Vic Koenig Leasing, Inc., 136 F.3d 1116, 1120 (7th Cir. 1998), "a federal court should apply the law of the forum state where the parties have not identified a conflict between two bodies of state law which might apply to their case." *Accord* Kochert v. Adagen Med. Int'l, Inc., 491 F.3d 674, 677 (7th Cir. 2007) ("Where the parties have not identified a conflict in state law, we will generally apply the law of the forum state."). Since Kentucky law will apply to both the named plaintiffs and the putative class, the court sees no problem with the adequacy of the named Kentucky plaintiffs' representation.

The Kentucky Administrative Regulations sets out a multi-factor test to determine whether an employment relationship exists. 803 KY. ADMIN. REGS. 1:005, § 4. FedEx Ground argues that many of the factors in this test are highly individualized. For example, the regulation lists four "significant" factors relevant to an individuals status, all of which, FedEx Ground contends, will require individualized proof. These factors include investment in facilities and equipment, opportunity for profit and loss, the extent to which the services in question are an integral part of the employer's business, and the amount of initiative, judgment,

or foresight in open market competition with others required for the success of the claimed independent enterprise. FedEx Ground further argues that many of the remaining factors also turn on individualized evidence, such as length of contract, whether the possible employer may discharge employees of the contractor, and the similarity of work done by contractor to work done by admitted employees.

FedEx Ground omits the first paragraph of the section, which states: "The principal test for determining whether an employment relation exists is whether the possible employer controls or has the right to control the work to be done by the possible employee to the extent of prescribing how the work shall be performed." 803 KY. ADMIN. REGS. 1:005, § 4(1). As for the other factors listed, many are similar to ones already discussed in this memorandum; none require such individualized analysis to make class certification inappropriate.

FedEx Ground posited a similar objection to the plaintiffs' claims that would be subject to Kentucky's common law test. FedEx Ground argues that Kentucky law presents a different scenario from the one presented in Kansas since the Kentucky Supreme Court expressly held that the control factor is of no greater importance than the others. Kentucky Unemployment Ins. Comm'n v. Landmark Cmty. Newspapers of Ky., Inc., 91 S.W.3d 575, 580 (Ky. 2002). Instead, the Landmark case held that not one of the factors is determinative and each case must be decided on its own particular facts. Id. FedEx Ground asserts that many of these factors will require individualized proof such as: the intent of the parties;

whether the instrumentalities, tools, and places of work are supplied by the driver; and the length of time the driver is employed.

Lastly, FedEx Ground argues that the "right to control" factor itself often is determined by reference to the parties' actual conduct. For support, FedEx Ground cites <u>Sturgill v. Barnes</u>, 300 S.W.2d 574 (Ky. 1957), in which the court focused exclusively on the actual working conditions of the coal miners to determine whether a "right to control" existed and concluded it did not because of the actual conduct of the miners. In reaching this conclusion, the court noted that the miners "were free to work at their convenience and on occasions did not work even though the loading bin was not full." 300 S.W.2d at 576. FedEx Ground also asserts that the <u>Landmark</u> court ignored the contract and instead relied on the parties' actual relationship. 91 S.W.3d at 581.

The court agrees that the <u>Landmark</u> decision, which abrogated <u>Sturgill</u>, changed the right to control from "the chief criterion" to a factor of no greater importance than the others, 91 S.W.3d at 580, but disagrees that this makes class certification inappropriate. The factors Kentucky courts consider when analyzing an employment relationship are those listed in the RESTATEMENT (SECOND) OF AGENCY § 220(2). These same factors are used by the Arkansas courts, and were found by this court to not require highly individualized analysis. That the right to control isn't the determinative factor doesn't change that analysis.

Nor does the court agree with FedEx Ground that the <u>Landmark</u> decision requires analysis beyond the contract's terms. In <u>Landmark</u>, the Kentucky

Supreme Court looked mainly to the contract between Landmark and its carriers to decide whether the newspaper carriers Landmark hired were independent contractors or employees. 91 S.W.3d at 581. The <u>Landmark</u> court's statement that "every case . . . needs to be resolved on its own facts" doesn't demand individualized analysis; a court can look to the employment relationship as set out in the contract between the parties to decide whether a worker is an independent contractor or employee.

FedEx Ground next raises the objection that plaintiffs' claims under Kentucky's wage deduction statute will require proof that each plaintiff did not agree to each deduction. The wage deduction statute makes it unlawful for an employer to withhold from any employee any part of the wage upon which the parties agreed. KY. REV. STAT. § 337.060. Statutory exceptions to this provision include when the employer is authorized to withhold wages "by local, state, or federal law, or when a deduction is expressly authorized in writing by the employee to cover insurance premiums, hospital and medical dues, or other deductions not amounting to a rebate or deduction from the standard wage arrived at by collective bargaining or pursuant to wage agreement or statute" or "for union dues when such deductions are authorized by joint wage agreements or collective bargaining contracts." KY. REV. STAT. § 337.060(1). This claim will require FedEx Ground to either point to a statute allowing the deduction in question or produce a written agreement between itself and the driver allowing the deduction that falls into one of the statute's stated exceptions. The court doesn't

read this statute to require each driver to testify as to what he or she agreed to in terms of deductions. This argument doesn't persuade the court that class certification is inappropriate.

Lastly, FedEx Ground again argues that since the plaintiffs take the position that there are "many terms in the contract that are open to many interpretations," the court will have to consider parol or extrinsic evidence. As already explained with respect to certification motions from other states, the court doesn't read the plaintiffs' position as FedEx Ground does. For all of these reasons, and the reasons stated in the Kansas ruling, the court will grant the Kentucky plaintiffs' motion for class certification.

TEXAS

Texas plaintiffs John Humphreys, David Meredith, Jeffrey Quebe, Tim Mershon, and Charles Campbell seek class certification of their claims for rescission and declaratory relief. They argue that common class-wide evidence will establish that FedEx Ground treated its package and delivery drivers as employees, systematically retaining and exercising far-reaching rights to direct and control the drivers in the performance of their work. Texas plaintiffs move for certification of a class under Federal Rule of Civil Procedure 23(b)(3) for their rescission and declaratory relief claim and under Rule 23(b)(2) for their declaratory relief claim. The Texas plaintiffs contend that these claims are legally and factually common and typical among the following similarly situated class:

All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since March 6, 2001, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Texas.

In its supplemental briefing, FedEx Ground raises three issues it asserts make the Texas case different from the one presented in Kansas and weigh against class certification. FedEx Ground contends that based on the Texas plaintiffs' own theory of the case, it will be necessary for the court to go beyond the terms of the Operating Agreement. For support, FedEx Ground quotes the Texas plaintiffs as stating that there are "many terms in the contract that are open to many interpretations" and that the Operating Agreement is contradictory. FedEx Ground argues that interpretation of these ambiguous or conflicting terms of the contract would have to be resolved through the use of individualized evidence regarding the parties' course of dealings. As the court has stated already in this opinion with respect to the Arkansas and Tennessee motions, it doesn't interpret the plaintiffs' argument to be that the Operating Agreement is ambiguous. Instead, the Texas plaintiffs are asserting that although the Operating Agreement purports to establish an independent contractor relationship with its drivers the amount of control that FedEx Ground withholds throughout the contract makes the relationship one of an employer-employee. Therefore, it doesn't appear the Texas plaintiffs will need to introduce parol evidence for support.

FedEx Ground's next objection to class certification is that unlike the Kansas named plaintiffs, the Texas named plaintiffs are all former contractors who can only argue that in the past, they were improperly classified as independent contractors. As former contractors, FedEx Ground says, the Texas plaintiffs all lack standing because they have no stake in the future conduct at which claims for injunctive and declaratory relief are targeted. FedEx Ground also argues that former contractors only have an interest in the financial gain and not in declaratory and injunctive relief. This conflicts with the interest of the putative class members who are current contractors. For the reasons stated in the Tennessee analysis, the court disagrees with FedEx Ground's position.

FedEx Ground's last objection is that in contrast to Kansas where the most important factor in determining independent contractor status was whether there existed a "right to control," Texas courts say that "the written contract is important, but the test remains right of control which may be shown by actual control exercised in derogation of a written contract." Space City Oil Co. v. McGilvray, 519 S.W.2d 257, 259 (Tex. Civ. App. 1975). In support of its contention that Texas courts determining the "right to control" look to the degree of actual control exercised over the individual, FedEx Ground cites to Limestone Prods. Distribution, Inc. v. McNamara, 71 S.W.3d 308 (Tex. 2002). In determining a delivery driver's status, the Limestone court analyzed evidence of actual control relating to assignment of work, paperwork, route driven, hours, and interactions with the putative employer. 71 S.W.3d at 312-313.

FedEx Ground asserts that it is particularly true that in this case the court will need to look outside the Operating Agreement, since the contract on its face doesn't resolve many of the factors to be addressed. For example, whether a driver has an "independent" business will turn on the nature of the business and whether the driver is incorporated, which varies across drivers. The court will also need to weigh whether the drivers supplied the tools, which might involve evidence of whether some drivers leased their trucks "at a reduced price" from an entity the Texas plaintiffs say is related to FedEx Ground. The Operating Agreement does not indicate how long the driver has contracted with FedEx Ground.

The test in Texas for determining whether one is acting as an independent contractor is to "measure the amount of control that the employer exerts or has a right to exert over the details of the work." Durbin v. Culberson County, 132 S.W.3d 650, 658 (Tex. App. 2004). Texas courts look to a number of factors to aid in this analysis, including: "(1) the independent nature of the worker's business; (2) the worker's obligation to furnish necessary tools, supplies, and materials to perform the job; (3) the worker's right to control the progress of the work except about final results; (4) the time for which the worker is employed; and (5) the method of payment, whether by unit of time or by the job." Limestone Prods. v. McNamara, 71 S.W.3d at 312. The fundamental factor is the right to control. Durbin v. Culberson County, 132 S.W.3d at 659.

When an employment contract exists and provides for an independent contractor relationship, it generally is controlling. *See* Durbin v. Culberson

County, 132 S.W.3d at 659 ("Generally, an agreement providing that a person shall be an independent contractor and providing for no right of control is controlling in determining the relationship between the parties."). The contract can be overcome, however, if extrinsic evidence is produced "indicating that the contract was a subterfuge or that the hiring party exercised control in a manner inconsistent with the contractual provisions." Ross v. Texas One Partnership, 796 S.W.2d 206, 210 (Tex. App. 1990); *see also* Space City Oil v. McGilvray, 519 S.W.2d at 258-259 ("When, however, the parties, as in this case, have entered into a definite contract that expressly provides for an independent contract relationship and does not vest in the principal or the employer the right to control the details of the work, evidence outside the contract must be produced to show that despite the terms of the primary contract the true operating agreement was one which vested the right of control in the alleged master. Under such circumstances, the exercise of control is evidentiary only. The true test remains the right of control.").

Class certification would be inappropriate if the Texas plaintiffs' position was that though the Operating Agreement purported to establish an independent contractor relationship, the actual relationship between FedEx Ground and its drivers is one of employer/employee. To prove that the agreement was a sham or that the actual relationship was inconsistent with the agreement, the court would be required to conduct individual analysis of the actual relationship between the parties. But the court understands the Texas plaintiffs' argument to be that

though the Operating Agreement labels the drivers as independent contractors, the Operating Agreement itself reserves to FedEx Ground the right to control, making the drivers employees of FedEx Ground. This determination will only require analysis of the Operating Agreement and generally applicable corporate policies, and so is suitable for class certification. Nor does the court find that the factors utilized by Texas courts to determine the right to control will require individualized analysis. These factors are similar to many of the states already discussed, where the court found class certification to be appropriate. For all of these reasons, and the reasons stated in the Kansas ruling, the court will grant the Texas plaintiffs' motion for class certification.

WISCONSIN

Like the Kansas plaintiffs, the Wisconsin plaintiffs assert claims under their state's wage payment statute, as well as claims for rescission and declaratory relief. The Wisconsin plaintiffs contend FedEx Ground uniformly misclassified all Wisconsin pickup and delivery drivers as independent contractors, and common factual and legal questions regarding their employment misclassification predominate as required for class certification under Rule 23(b)(3). Plaintiffs seek to certify the following class:

> All persons who: 1) entered or will enter into an FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since August 18, 1999, to provide

package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Wisconsin.

FedEx Ground argues that the court must look outside the parties' standard Operating Agreement to determine whether FedEx Ground is liable as an employer under Wisconsin's wage withholding statute. WIS. STAT. § 103.455. FedEx Ground maintains that class certification is inappropriate because the court must engage in an individualized examination of each plaintiff's employment relationship.

To succeed on their claim under the Wisconsin wage withholding statute, the Wisconsin plaintiffs must show that they are (or were) employees as defined by Wisconsin law. The Wisconsin statute defines an "employee" as "any person who may be required or directed by any employer, in consideration of direct or indirect gain or profit, to engage in any employment, or to go to work or be at any time in any place of employment." WIS. STAT. § 103.001(5). Although Wisconsin courts have yet to specifically address how to determine employee status for purposes of § 103.455, they have noted that the "dominant test in determining whether a person is an independent contractor or employee is who has the right to control the details of the work." Madison Newspapers, Inc. v. Wisconsin Dep't of Revenue, 599 N.W.2d 51, 60 (Wis. Ct. App. 1999); see also Pamperin v. Trinity Mem. Hosp., 423 N.W.2d 848, 852 (Wis. 1988) (noting that the "right to control is the dominant test in determining whether an individual is a servant" under the doctrine of respondeat superior); Snider v. Northern States Power Co., 260 N.W.2d 260, 263 (Wis. 1977) ("The most important single criterion in determining whether

a person is an independent contractor is the degree to which the owner, rather than the independent contractor, retains the right to control the details of the work.").

FedEx Ground argues that instead of focusing solely on its "right to control" the Wisconsin drivers, the court will utilize the "economic realties" test found in decisions interpreting Title VII. While the economic realties test considers a number of factors, the most important factor is the right to control the means and manner of performance. Moore v. Labor & Indus. Rev. Comm'n, 499 N.W.2d 288, 291 (Wis. Ct. App. 1993). FedEx Ground maintains that the court will need to look beyond the face of the Operating Agreement and focus on the degree of control that FedEx Ground actually exercised rather than the authority derived from the terms of the Operating Agreement.

The court reads Wisconsin law differently. The court need only determine the existence of control, rather than examining FedEx Ground's actual exercise of control over each individual driver. See Stafford Trucking, Inc. v. Wisconsin Dep't of Indus., Labor & Human Relations, 306 N.W.2d 79, 83 (Wis. Ct. App. 1981) ("It is immaterial whether the right or power to control is in fact exercised as long as the right to exercise such control exists."); Goldberg v. Department of Indus., Labor, and Human Resources, 484 N.W.2d 568, 573 (Wis. Ct. App. 1992) (holding that therapists associated with psychiatric clinic were "employees" within the meaning of Wisconsin's unemployment statute because the clinic retained the right to control or direct the therapists in fulfilling their responsibilities, even if the

clinic never exercised that right).This determination depends on an analysis of the Operating Agreement's terms as well as FedEx Ground's centralized practices and procedures that are systematically applicable to all of the Wisconsin plaintiffs. Any nuanced distinctions between the Wisconsin plaintiffs do not predominate over the many common questions that arise from FedEx Ground's efforts to standardize its relationship with the plaintiffs. *See* <u>Walker v. Bankers Life Ins. & Cas. Co.</u>, No. 06 C 6906, 2007 WL 2903180, at *8-9 (N.D. Ill. Oct. 1, 2007) (certifying class of insurance agents who contended that they were misclassified as independent contractors rather than employees based on the defendant's standardization of the agent position through a non-negotiable, form contract). Similar to the Kansas class, this evidence doesn't require the sort of individualized analysis that would make class certification inappropriate.

FedEx Ground also argues that even if the court decides to focus on the Operating Agreement to determine employee status, individualized extrinsic evidence is needed to interpret the provisions related to control. FedEx Ground relies heavily on two cases in which class treatment was inappropriate despite the existence of a standardized contract, neither of which applied Wisconsin law. *See* <u>Bowers v. Jefferson Pilot Fin. Ins. Co.</u>, 219 F.R.D. 578 (E.D. Mich. 2004); <u>Adams v. Kansas City Life Ins. Co.</u>, 192 F.R.D. 274 (W.D. Mo. 2000). In <u>Bowers v. Jefferson Pilot</u>, the plaintiffs sought class certification based on breach of contract claims involving disputed contract language. Unlike the Wisconsin class, the <u>Bowers</u> plaintiffs were domiciled in different states, leading to a significant

variation in the laws of the states with respect to the use of extrinsic evidence. *See* 219 F.R.D. at 583. The claims in this case don't invoke the type of choice of law considerations that rendered class certification inappropriate in <u>Bowers</u>.

Similarly, the court in <u>Adams v. Kansas City Life Ins.</u> rejected class certification of the plaintiffs' contract claims because those claims involved ambiguous contract terms that could only be interpreted by considering varying types of extrinsic evidence. 192 F.R.D. at 282. The Wisconsin plaintiffs don't contend that the terms of the Operating Agreement are ambiguous. Rather than asking the court to interpret the contract's meaning, the Wisconsin plaintiffs argue that FedEx Ground's right to control its drivers does not comport with the Operating Agreement's explicit term on employment status, so the use of individualized extrinsic evidence appears to be unnecessary. Accordingly, FedEx Ground's arguments in opposition to class certification are not persuasive.

ALABAMA

Named Alabama plaintiff Tina Floyd seeks certification of a statewide class under Rules 23(b)(2) and 23(b)(3) for claims of rescission, unjust enrichment, and declaratory and injunctive relief under Alabama law. The Alabama plaintiffs assert these claims are legally and factually common and typical to the following class:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since May 11, 2000, to provide package pick-

up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Alabama.

FedEx Ground responds with two principal arguments against class certification. First, FedEx Ground disputes the named plaintiff's adequacy as a representative of the class members as required under Rule 23(a)(4). Second, FedEx Ground argues that common issues of law and fact do not predominate over individual issues as required for certification under Rule 23(b)(3).

The named plaintiff must "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). FedEx Ground argues that Ms. Floyd is an inadequate class representative for several reasons. FedEx Ground claims that because Ms. Floyd is a former driver she cannot show a real or immediate threat of any alleged harm and so lacks standing to pursue declaratory and injunctive relief for current drivers. The court addressed, and rejected, that argument in conjunction with the Tennessee plaintiffs. FedEx Ground also claims Ms. Floyd can't represent the interests of all of the Alabama plaintiffs because she worked as a Home Delivery driver in a single work area and wasn't interested in expanding her business. FedEx Ground maintains Ms. Floyd's interests are divergent from Ground drivers and multiple work area drivers who have a long-term interest in being classified as either contractors or employees.

Ms. Floyd's interests are not so divergent that she can't adequately represent all of the drivers within the proposed Alabama class. While FedEx Ground focuses on the variances in control over Ms. Floyd versus other Alabama

drivers, these differences do not render Ms. Floyd unable or unlikely to fully represent class interests. *See* <u>Walker v. Bankers Life & Cas. Co.</u>, No. 06 C 6909, 2007 WL 2903180, at *6 (N.D. Ill. Oct. 1, 2007) (finding that a former agent was an adequate class representative even though factual differences existed between the named agent and class members). The entire Alabama class asserts the same legal theories based on the same general nucleus of operative facts. *See* <u>Duffin v. Exelon Corp.</u>, No. 06 C 1382, 2007 WL 845336, at *6 (N.D. Ill. Mar. 19, 2007). Ms. Floyd's claims are premised on that notion that she was misclassified under the same contract and subject to the same uniform employment policies as the other class members. Any distinctions between Ms. Floyd and Ground or multiple work area drivers are meaningless because each of the drivers signed nearly identical Operating Agreements. Ms. Floyd is not antagonistic to the class, *see* <u>Rosario v. Livaditis</u>, 963 F.2d 1013, 1018 (7th Cir. 1992), and there is no reason to believe she won't vigorously pursue the claims on behalf of the Alabama class as required by Rule 23(a)(4).

FedEx Ground also argues that the named Alabama plaintiff can't demonstrate that common questions of law and fact predominate over individual issues as required for class certification under Rule 23(b)(3). Like the Kansas plaintiffs, the named Alabama plaintiff asserts claims that hinge on whether the plaintiffs are deemed employees under Alabama law. While the plaintiff relies on the substance of the standard Operating Agreement, FedEx Ground contends the court must look outside the contract's terms and conduct an individualized

examination of each plaintiff's relationship with FedEx Ground. To this end, FedEx Ground offers testimony from a number of mid-level managers indicating their varied experience on issues such as the ability to control their schedule, routes, delivery methods, volume of packages, and income level.

The common question the named Alabama plaintiff presents is whether FedEx Ground misclassified its drivers as independent contractors instead of employees. Under Alabama law, the primary test in determining the existence of an employee-employer relationship is whether the employer maintains a right of control over the actions of the alleged employee. <u>Hester v. Brown</u>, 512 F. Supp. 2d 1228, 1234 (M.D. Ala. 2007); <u>Butler v. Aetna Fin. Co.</u>, 587 So. 2d 308, 310 (Ala. 1991) ("[I]t is axiomatic that for an agency relationship to exist, there must be a right of control by the principal over the agent."). The right of control test involves four factors: "(1) direct evidence of the right or exercise of control; (2) the method of payment used; (3) whether the alleged principal had the right to terminate employment; and (4) the right to control another's time." <u>Dickinson v. City of Huntsville</u>, 822 So. 2d 411, 416 (Ala. 2001).

FedEx Ground contends that the right of control test requires the court to examine the Alabama drivers' varied experiences, focusing on the actual exercise of control in determining contractor independence. As in Kansas, however, Alabama courts look to the reserved right of control rather than the actual exercise of control to establish employee status. <u>Turnipseed v. McCafferty</u>, 521 So. 2d 31, 32 (Ala. Civ. App. 1987) (*citing* <u>Weeks v. C.L. Dickert Lumber Co.</u>, 121 So.

2d 894 (Ala. 1960)). This analysis depends on the substance of the standard Operating Agreement and common practices and procedures standard to all of the Alabama plaintiffs. Even though individual differences may exist between the plaintiffs' actual work experience, these issues don't bar class certification. *See* Chun-Hoon v. McKee Foods Corp., No. C-05-620, 2006 WL 3093764, at *5 (N.D. Cal. Oct. 31, 2006) (finding that individual issues did not prevent the court from certifying the claims of drivers allegedly treated as independent contractors rather than employees based on the defendant's standard distribution agreement and uniform policies toward its drivers).

Moreover, FedEx Ground claims that even if the court relies on the standard Operating Agreement to determine employee status, individualized extrinsic evidence of each driver's course of dealing with FedEx Ground is necessary to interpret the contract provisions related to control. The court disagrees. The named Alabama plaintiff doesn't contend that the Operating Agreement's terms are ambiguous. Instead, she argues that FedEx Ground's treatment of its drivers is inconsistent with their purported definition as independent contractors. As such, common questions arising from FedEx Ground's standard treatment of its drivers predominate and satisfy the requisites for class certification under Rule 23(b)(2) or 23(b)(3).

NEW YORK

50

The New York plaintiffs allege violations of New York's wage statutes and unlawfulness of their Operating Agreement with FedEx Ground. The New York plaintiffs seek to certify a class of:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since October 27, 1998, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of New York.

The New York plaintiffs claim they meet the requirements of Rule 23(a). First, they claim the class is sufficiently numerous to make joinder impractical: there were 695 pickup and delivery drivers in New York at the time of briefing, and even more signed Operating Agreements during the proposed class period.

Second, the New York plaintiffs contend the class members share common questions of law or fact because FedEx Ground has engaged in standardized conduct towards each proposed class member. The New York plaintiffs say the class members' claims arise out of FedEx Ground's alleged nationwide policy of classifying its pickup and delivery drivers as independent contractors while treating them as employees. Accordingly, the New York plaintiffs say FedEx Ground violated New York Labor Law §§ 193(1) and 193(2) by deducting and withholding such things as vehicle expenses, cargo claims, and insurance claims not ordinarily chargeable to employees. The New York plaintiffs say their common law claims of unjust enrichment and *quantum meruit* also turn on whether the independent contractor classification was invalid. With respect to the declaratory

51

judgment claim, the New York plaintiffs say, the Operating Agreement's terms and FedEx Ground's procedures will require identical analysis for each class member.

Third, the named New York plaintiffs contend their claims arise from the same practice or course of conduct that gives rise to, and are based on the same legal theory as, other class members' claims. Each named plaintiff signed the standard Operating Agreement and underwent the same systematic control over the methods and means by which they accomplish their tasks.

Finally, as to the requirements of Rule 23(a), the named New York plaintiffs say they fairly and adequately protect the class's interests. They include current and former drivers from the Home Delivery and Ground divisions of FedEx Ground Ground. Their attorneys have extensive experience in the prosecution of class actions like this.

The New York plaintiffs argue their damage claims should be certified under Rule 23(b)(3) because each claim is based upon the common question of whether they have been improperly classified as independent contractors. That drivers differed in hours worked, packages delivered, and earnings, the plaintiffs reason, doesn't affect whether FedEx Ground's right to control them in the course of their work makes them employees or independent contractors.

The New York plaintiffs say a single class action is superior to individual actions because efficiencies of a class action will reduce litigation expenses and court resources. Fear of economic retaliation by an employer, the plaintiffs argue, weighs in favor of certification in an employment context.

The New York plaintiffs seek certification of their declaratory and equitable claims under Rule 23(b)(2) because the case seeks to define the relationship between FedEx Ground and the plaintiffs and the relief sought will benefit the entire class. FedEx Ground's use of standard Operating Agreements and standardized policies constitutes action on grounds generally applicable to the class, they say.

FedEx Ground opposes class certification. First, FedEx Ground argues that New York drivers vary substantially in the freedom they have had to operate their businesses, so several of the New York plaintiffs' claims, such as those for unjust enrichment, rescission, and reimbursement of wage deductions will turn on individualized inquiries. Second, FedEx Ground claims most New York drivers want to be independent contractors, so the named plaintiffs are out of step with the class they seek to represent. Third, FedEx Ground argues the class action device isn't the way to handle this case, since the plaintiffs haven't articulated a trial plan but have proffered a class definition that guarantees individual trials.

The second and third arguments mirror arguments the court rejected in the Kansas case, and FedEx Ground doesn't argue to the contrary. Instead, in the aftermath of the Kansas ruling, FedEx Ground points to differences in controlling state law as disfavoring class treatment. While the Kansas ruling stressed the putative employer's right to control as the central (and common) factor in determining employment status under Kansas law, FedEx Ground claims that

New York law looks primarily to the control and supervision actually exercised and indicia of control not memorialized in the agreement.

The court doesn't see the same distinction FedEx Ground perceives between Kansas law and New York law. The purported employer's right to control is "the critical inquiry" under New York law. Bynog v. Cipriani Group, Inc., 802 N.E.2d 1090, 1092-1093 (N.Y. 2003). New York law looks specifically to the right to control the contracted results and the means by which the results are to be obtained, with the latter more important than the former. Noel v. Life Alert Emergency Response, Inc., 38 A.D.3d 1082, 1083 (N.Y. App. Div. 2007); In re Claim of Cromer, 248 A.D.2d 773, 774 (N.Y. App. Div. 1998).

None of the cases FedEx Ground cites suggests that the inquiry can't be made through a common Operating Agreement, at least when the parties suggest few deviations from that agreement in the field. For example, in In re Claim of Tyner, 257 A.D.2d 922 (N.Y. App. Div. 1999), the court took a class-wide view of the degree of control a telephone directory distributor exercised over its delivery persons. Similarly, the issue was resolved in In re Claim of Rukh, 208 A.D.2d 1105 (N.Y. App. Div. 1994), through a class-wide discussion of the control a franchisor in radio-dispatched vehicles for hire exercised over its franchisees. The same approach was taken in In re Pepsi Cola Buffalo Bottling Corp., 144 A.D.2d 220 (N.Y. App. Div. 1988), which addressed franchised beverage delivery drivers.

Controlling New York law is not identical to Kansas law, but it is sufficiently similar that the court's reasoning in the Kansas class certification opinion applies equally to the New York class certification motion.

In its post-Kansas brief, FedEx Ground also presented essentially the same argument the court addressed in the Alabama discussion concerning the need to go beyond the Operating Agreement's terms based on the plaintiffs' arguments. For the reasons set forth in the Alabama discussion, the court finds that argument unpersuasive.

The New York plaintiffs' motion for class certification is granted.

MASSACHUSETTS

The Massachusetts plaintiffs seek injunctive and declaratory relief, claim damages because FedEx Ground is violating the state's independent contractor law and the state's wage law, and bring claims for unjust enrichment and *quantum meruit.* They seek certification of a class of all who (1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now called forms OP-149 and OP-149 RES); (2) drove or will drive a vehicle on a full-time basis since May 7, 1999 to provide package pick-up and delivery services pursuant to the Operating Agreement; and (3) were dispatched out of a terminal in the state of Massachusetts.

The Massachusetts plaintiffs contend the proposed class is so numerous that joinder is impractical. At the time of its original brief, there were 292 drivers

for FedEx Ground, and there would be many others who entered into Operating Agreements during the class period. They also contend questions of law and fact are common to the class because FedEx Ground treats all class members the same way. They note that controlling Massachusetts law requires FedEx Ground — not the plaintiffs — to prove that the class members are independent contractors. MASS. GEN. LAWS ch. 149, § 148B(a)(1-3). That law, they argue, creates a presumption (common to the class) against independent contractor status. *See* Coverall N. Am., Inc. v. Commissioner of the Div. of Unemployment Assistance, 857 N.E.2d 1083 (Mass. 2006). The plaintiffs suggest that the statute itself creates a right to bring a representative action even if all elements of Federal Rule 23 are not met. MASS. GEN. LAWS ch. 149, § 150; *see also* Moore v. Barnsider Mgmt. Corp., No. 04-1360, 2006 WL 2423328, at *7 (Mass. Super. Ct. Aug. 15, 2006).

The alleged misclassification of employees also, the plaintiffs say, provides a common issue for their common law *quantum meruit* claim, which focuses on enrichment to FedEx Ground rather than upon any individual plaintiffs. *See* Schumacher v. Tyson Fresh Meats, Inc., 221 F.R.D. 605, 612-613 (D.S.D. 2004); In re Terazosin Hydrochloride Antitrust Litig., 220 F.R.D. 672, 685-686 (S.D. Fla. 2004). A single analysis, plaintiffs say, will govern their claims for injunctive and declaratory relief.

The Massachusetts plaintiffs argue that the named representatives' claims have the same essential characteristics as the claims of the class at large, so the

Rule 23(a) typicality requirement is satisfied even if some factual distinctions exist. The named plaintiffs, like the putative class members, are present and former drivers who were parties to the Operating Agreement. They and their counsel have zealously represented and advocated on behalf of the class as a whole.

The Massachusetts plaintiffs argue that the common questions predominate because they center on the meanings and functions of standardized forms or contracts. *See* <u>Lucas v. GC Servs. L.P.</u>, 226 F.R.D. 337, 342 (N.D. Ind. 2005). FedEx Ground's similar treatment of the class will provide the basis for determining the class members' employment status. *See, e.g.,* <u>Flanagan v. Allstate Ins. Co.</u>, 228 F.R.D. 617 (N.D. Ill. 2005).

The Massachusetts plaintiffs argue that a class action is superior to other methods of adjudicating their controversy. They point to the efficiencies (and consequent reduced expenses) gained by use of a class action for common questions, and argue that most class members would be unable to pursue claims for relatively small awards. *See* <u>Deposit Guaranty Nat'l Bank v. Roper</u>, 445 U.S. 326, 339 (1980).

FedEx Ground argues the claims lack commonality because the putative class members have had varying experiences with FedEx Ground. The drivers are associated either with FedEx Ground Home Delivery or FedEx Ground Ground; some have multiple work areas, while others have single work areas. Massachusetts, FedEx Ground says, employs a nine-factor test taken from the

Second Restatement of Agency, <u>Yohn v. L.A. Ruiz Assocs., Inc.</u>, No. 97384, 2002 WL 3177206, at *4 (Mass. Super. Ct. Oct. 2, 2002), and each factor must be considered for each driver. The Operating Agreement can't provide a uniform answer, FedEx Ground contends, because the plaintiffs contend the Operating Agreement isn't being followed. FedEx Ground contends that drivers vary in their abilities to determine their own schedules, to choose supplemental drivers and helpers, to control delivery methods, to select vehicles and control maintenance, to control volume of packages, and to control appearance. FedEx Ground also contends the legal issue isn't quite as simple as the plaintiffs suggest. *See* <u>American Zurich Ins. Co. v. Department of Indus. Accidents</u>, No. 053469A, 2006 WL 2205085, at * 4 (Mass. Super. Ct. June 1, 2006). All in all, FedEx Ground argues, the Massachusetts plaintiffs' claims will turn on careful examination of individualized evidence.

FedEx Ground asserts several conflicts exist within the purported class. Only about a quarter of the Massachusetts drivers agree with the remedy the plaintiffs propose; current and former drivers may have divergent interests; and multiple work area drivers have considerably less interest than single work area drivers in being deemed employees.

Finally, FedEx Ground argues that the class action device is not a superior method by which to litigate this case. The class definition refers to drivers who are full time, but doesn't define the term. Since FedEx Ground doesn't view the drivers as employees, its records won't disclose who meets any definition that might be

chosen. For much the same reasons, FedEx Ground argues, the plaintiffs' equitable relief claims are unfit for class certification under Rule 23(b)(2)

The court rejected the second and third arguments in the Kansas case, and the arguments are no stronger in the Massachusetts case. As to the third, FedEx Ground seems to have had no difficulty in identifying class members for purposes of quantifying the number of putative class members who disagree with the remedies the Massachusetts plaintiffs seek. The court concludes the challenge of class identification is considerably less daunting than FedEx Ground fears. The proposed class definition is "sufficiently definite enough to permit class members to be ascertained. *See* Alliance to End Repression v. Rochford, 565 F.2d 975, 977-978 (7th Cir. 1977).

In its supplemental brief, FedEx Ground argues that Massachusetts employs a multi-factor test to determine employments status, *see* Yohn v. L.A. Ruiz Assocs., Inc., No. 97384, 2002 WL 31677206, at * 4 (Mass. Super. Ct. Oct. 2, 2002), so individual inquiries will predominate. FedEx Ground is correct.

The Massachusetts plaintiffs are correct that their law places upon an alleged employer the burden of proving independent contractor status and requires the alleged employer to prove three things:

> (1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and
> (2) the service is performed outside the usual course of business of the employer; and

> (3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.

MASS. GEN. LAWS ch. 149, § 148B(a)(1-3). Of necessity, then, FedEx Ground will be required to prove its drivers' freedom from control, not only under the drivers' contract, but also "in fact." Unlike the evidence that will be needed to resolve the claims in most of the states discussed so far, FedEx Ground will need to prove freedom from control in practice, as well as freedom from control under the Operating Agreement. The Massachusetts plaintiffs may believe that freedom in fact need never be reached because FedEx Ground will be unable to carry its burden of showing freedom from control under the Operating Agreement, making the plaintiffs employees. Perhaps so, but this is not the time for decision on the merits.

The Massachusetts plaintiffs also argue that Massachusetts law favors use of class actions both in this setting, MASS. GEN. LAWS ch. 149, § 150, and in other settings governed by Massachusetts class action laws. *See, e.g.,* Aspinall v. Philip Morris Cos., Inc., 813 N.E.2d 476, 484-485 (Mass. 2004); Baldasarri v. Public Fin. Trust, 337 N.E.2d 701, 706 (Mass. 1975) (superceded by statute on another point of law). Massachusetts procedural law, though, is not a matter to be considered in deciding whether common issues of fact or law predominate.

Massachusetts law doesn't look solely to the right to control in deciding employment status. It looks to the relationship between payor and payee in the field, regardless of what control might be given the payor in the contract. Because

a class action would require examination of the actual relationship — not just the relationship created by the Operating Agreement — between FedEx Ground and 292 drivers who would be class members, common questions do not predominate. Whether the Operating Agreement vests too much control in FedEx Ground is a common question, but is just one of several.

The Massachusetts plaintiffs' motion for class certification must be denied.

CALIFORNIA

The California plaintiffs seek certification of three classes. First, as to their FMLA claims, they seek certification of the following class:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since November 17, 2001, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the United States.

As to their claims under California law, they seek certification of the following class:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since November 17, 2000, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of California.

Finally, they seek certification of a sub-class for their overtime claim:

61

All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since November 17, 2001, to provide package pick-up and delivery services pursuant to the Operating Agreement; 3) were dispatched out of a terminal in the state of California; and 4) at any time during the class period operated a vehicle with a gross vehicle weight rating of less than 10,001 pounds.

The California plaintiffs argue that their proposed classes satisfy the numerosity requirement: the FMLA class would include some 12,000 active drivers across the nation, and the California class would include more than 1,000 active and former drivers, more than 100 of whom would be in the sub-class.

The California plaintiffs contend that the national FMLA claim raises several questions common to class members: whether class members are "eligible employees" under the FMLA, which turns on whether they are employees rather than independent contractors; whether FedEx Ground interfered with class members' FMLA rights through the standard form Operating Agreement, uniform company policies, and standard practices requiring drivers to forego FMLA leave unless they can provide approved substitute drivers at their own expense. The California plaintiffs argue that FedEx Ground teaches terminal managers to discourage drivers from taking time off and to insist that drivers make contingency plans to cover their routes in case of illness.

In applying the "economic realities test" applicable to FMLA claims, courts consider the nature and degree of the employer's control over the manner of performance; the alleged employee's opportunity for profit or loss based on his

managerial skill; the alleged employee's investment in equipment or materials, or his employment of workers; the degree of special skill required for the services rendered; the duration and permanence of the working relationship; and the extent to which the services rendered are integral to the alleged employer's business. Secretary of Labor v. Lauritzen, 835 F.2d 1529, 1534-1535 (7th Cir. 1987). The law applicable to the state law claims uses the same factors to determine whether the alleged employer "has the right to control the manner and means of accomplishing the result desired." S.G. Borello & Sons, Inc. v. Department of Indus. Relations, 769 P.2d 399, 404 (Cal. 1989).

The California plaintiffs claim they satisfy the requirement of typicality because their claims arise from FedEx Ground's practice of uniformly classifying drivers as independent contractors, thereby denying everyone rights under the FMLA, the California Labor Code, and the California unfair competition law. They contend their claims for injunctive and declaratory relief satisfy Rule 23(b)(2) because FedEx Ground has acted on grounds generally applicable to the class by classifying them as independent contractors. They contend the court should certify a hybrid class on the state law claims, with a Rule 23(b)(2) class for the declaratory and injunctive claims and a Rule 23(b)(3) class for the damages claims.

FedEx Ground contends individualized analysis is required with respect to the issues of the control FedEx Ground actually exercises over drivers, the parties' intent in signing an Operating Agreement that purports to establish an

independent contractor relationship, the extent of each driver's investment in his or her business, the drivers' opportunity to profit, whether a driver operates a distinct business, whether a driver has employees, the method of payment, whether the work ordinarily is performed under a supervisor or requires special skills, length of driver's experience, and whether a given classification is a subterfuge.

Further, FedEx Ground argues, individualized analysis will be required for some of its defenses and some of the plaintiffs' damages claims, such as whether expenses the plaintiffs say should have been reimbursed were reasonable, the amount of overtime a driver worked, what deductions should or could have been made from any employee paycheck, and whether certain purchases by drivers were coerced.

With respect to FMLA claims, FedEx Ground argues that the former drivers don't have standing to assert a claim for wrongful interference with their FMLA rights, while current drivers must prove both their status as "eligible employees" under the FMLA, and that FedEx Ground interfered with their FMLA rights. Given its view that determining employment status requires individualized analysis, FedEx Ground further opines that the FMLA claim doesn't involve common questions of fact or law. Finally, FedEx Ground says the proposed FMLA class members have impermissibly divergent interests because too few drivers want to be classified as employees.

FedEx Ground also argues that conflicts between the named plaintiffs and the purported class members preclude class certification. Most of the plaintiffs, they argue, are former drivers with no stake in injunctive relief, and the named plaintiffs alone present fraud claims. Further, FedEx Ground says single area contractors can't represent multiple area contractors. FedEx Ground argues that the class action is not a superior method for resolution: the plaintiffs haven't presented a trial plan or indicated how to decide which drivers were "full time."

Previous analyses have addressed, and rejected, FedEx Ground's arguments concerning standing of former drivers, the difficulty of identifying full time drivers, the superiority of the class action as a method for resolution, and the asserted conflict between class members. The court renews those conclusions here. The court does not read California law as does FedEx Ground. As the court understands the law that will govern the California plaintiffs' state law claims, whether a driver is an employee or an independent contractor will turn on FedEx Ground's right to control that driver, not on whether FedEx Ground fully exercised that control. *See* S.G. Borello & Sons v. Department of Indus. Relations, 769 P.2d at 408-410. Given the ubiquity of the Operating Agreement, FedEx Ground's right to control its drivers is a common question that predominates over all other questions with respect to the California claims.

With respect to the FMLA claim, though, the court agrees with FedEx Ground. To establish a violation of the FMLA, a driver will have to establish that (1) the driver was eligible for the FMLA's protections (in other words, an employee),

(2) FedEx Ground was covered by the FMLA, (3) the driver was entitled to leave under the FMLA, (4) the driver provided sufficient notice of his or her intent to take leave, and (5) FedEx Ground denied the FMLA benefits to which the driver was entitled. <u>Burnett v. LFW, Inc.</u>, 472 F.3d 471, 477 (7th Cir. 2006). Whether the Operating Agreement creates an employment relationship and whether FedEx Ground is covered by the FMLA plainly constitute common issues of law and fact, but the remaining elements present individual questions. Those individual questions — Was a particular driver entitled to FMLA leave? Did that driver give notice of intent to take leave? Did FedEx Ground deny that driver FMLA leave? — will predominate.

The court grants the California plaintiffs' motion for certification of a California class and sub-class, but denies the California plaintiffs' motion for certification of a national FMLA class.

NEW JERSEY

The New Jersey plaintiffs bring claims under New Jersey's Wage Payment Law, N.J. STAT. ANN. § 34:11-4.1, *et seq.*, and Consumer Fraud Act, N.J. STAT. ANN. § 56:8-1, *et seq.*, breach of the covenant of good faith and fair dealing within the Operating Agreement, rescission of the Operating Agreement, *quantum meruit* damages for services performed, and declaratory and injunctive relief. They seek certification of a class under Federal Rule of Civil Procedure 23(b)(3) for their

damages claims, and of a class Federal Rule of Civil Procedure 23(b)(2) for their

claim for declaratory relief. Their proposed class definition under both rules is:

> All persons who: 1) entered or will enter into a FXG Ground or
> FXG Home Delivery form Operating Agreement (now known as form
> OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a
> full-time basis (meaning exclusive of time off for commonly excused
> employment absences) since May 19, 1999, to provide package pick-
> up and delivery services pursuant to the Operating Agreement; and
> 3) were dispatched out of a terminal in the state of New Jersey.

The New Jersey plaintiffs say their proposed class meets the numerosity

requirement; 388 drivers currently are under contract with FedEx Ground (FedEx

Ground reports even more). As to commonality, the New Jersey courts look to §

220 of the RESTATEMENT (SECOND) OF AGENCY (1958) to distinguish employees from

independent contractors, <u>MacDougall v. Weichert</u>, 677 A.2d 162, 190-191 (N.J.

1966):

> (1) A servant is a person employed to perform services in the
> affairs of another and who with respect to the physical conduct in the
> performance of the services is subject to the other's control or right
> to control.
> (2) In determining whether one acting for another is a servant
> or an independent contractor, the following matters of fact, among
> others, are considered:
> a. the extent of control which, by the agreement, the master
> may exercise over the details of the work;
> b. whether or not the one employed is engaged in a distinct
> occupation or business;
> c. the kind of occupation, with reference to whether, in the
> locality, the work is usually done under the direction of the employer
> or by a specialist without supervision;
> d. the skill required in the particular occupation;
> e. whether the employer or the workman supplies the
> instrumentalities, tools, and the place of work for the person doing
> the work;
> f. the length of time for which the person is employed;

g. the method of payment, whether by the time or by the job;

h. whether or not the work is a part of the regular business of the employer;

i. whether or not the parties believe they are creating the relation of master and servant; and

j. whether the principal is or is not in business.

These constitute the common questions for purposes of Rule 23(a)(2), the New Jersey plaintiffs contend, because if they are employees, they are entitled to recovery under the New Jersey Wage Law of deductions that FedEx Ground took pursuant to the Operating Agreement, FedEx Ground's treatment of the drivers as independent contractors would amount to both an unconscionable commercial practice under the New Jersey Commercial Fraud Act and a breach of the covenant of good faith and fair dealing, and the drivers might be entitled to rescission on grounds of New Jersey public policy of protecting employees (and if the Operating Agreement is rescinded, they will be entitled to recover in *quantum meruit* for the value of the services they provided). The New Jersey plaintiffs say the preclusive effect of various administrative agency rulings also would amount to a common question of law.

The New Jersey plaintiffs maintain they are members of the class they seek to represent and are adequate class representatives; their counsel is experienced and competent.

FedEx Ground first contends that the New Jersey plaintiffs are not adequate representatives of the class. They filed incorrect interrogatory responses; their interests differ from the proposed class, most of whom want to be independent

contractors; the Teamsters are directing the litigation; the fee agreement between the New Jersey plaintiffs and their attorneys compromises the class; former drivers cannot represent current drivers; and the current driver, a single work area contractor, cannot represent multiple work area drivers.

Second, FedEx Ground contends that New Jersey law requires an individualized examination of each of the RESTATEMENT factors measured against each driver. These arguments are discussed below.

Third, FedEx Ground contends that individualized determinations will be needed for several of its defenses to the New Jersey plaintiffs' state law claims. FedEx Ground says it will be entitled to set off losses caused by any driver's negligence or conversion from any recovery under the Wage Payment Law. FedEx Ground says that any driver's success on a rescission claim for a completed contract will require proof that a given driver was deprived of the full benefit of those contracts. FedEx Ground contends that any plaintiff's recovery under the New Jersey Consumer Fraud Act requires proof of a causal nexus between the allegedly fraudulent practice and the resulting loss. The claims for breach of the duty of good faith and fair dealing, FedEx Ground says, will require an inquiry into the understandings and intent of each individual driver. Further, FedEx Ground says, its statute of limitations defense will require individualized inquiry into when any particular driver became aware, or should have become aware, of the fraudulent activity.

Fourth, FedEx Ground argues, as it has in most other cases in this docket, that a class action isn't the superior method for litigating each potential class member's claims because the plaintiffs haven't offered any trial plan and because putative class members have a strong interest in controlling the outcome of the litigation; these arguments are no more persuasive to the court than they have been in other cases. FedEx Ground also argues that the proposed class definition is unworkable because it doesn't define "full time" (this is the same argument found unpersuasive when raised in other cases in this docket) and because it would include future drivers within the class.

Fifth and finally, FedEx Ground argues that the New Jersey plaintiffs' equitable relief claims are unfit for class certification under 23(b)(2) because (1) the amended complaint doesn't identify the injunctive relief sought; (2) the proposed class isn't cohesive and homogeneous because most drivers don't want such relief; (3) the claims lack commonality under Rule 23(a)(2) because each class member's status will, for the reasons already set forth, turn on their individual circumstances; and (4) the claims are unfit for certification as a Rule 23(b)(2) class because the New Jersey plaintiffs' primary objective is money damages.

The court has addressed many of FedEx Ground's objections to the New Jersey plaintiffs' adequacy to represent the proposed class in conjunction with class certification rulings for other states, and those arguments concerning the New Jersey plaintiffs are no more persuasive. FedEx Ground's arguments about

incorrect interrogatory answers and what might be an unusual fee agreement are unique to New Jersey, but FedEx Ground doesn't persuade the court that those matters impair the abilities of the named plaintiffs or their attorneys to represent the class.

FedEx Ground contends that each driver's individual situation must be examined on its own merits under New Jersey law. FedEx Ground contends that its drivers differ with respect to their abilities to configure routes and take on routes they choose, their abilities to control income; their abilities to determine their own schedule; their abilities to choose supplemental drivers and helpers; their abilities to control the volume of packages; their abilities to select their own vehicle and control its maintenance; their abilities to control delivery methods; whether they are supervised or unsupervised; the degree of skill each driver must have; provision of equipment; length of time the driver worked for FedEx Ground; method of payment; manner of termination of the work relationship; whether a driver accrues annual leave; and the parties' intent.

The court doesn't read the cases FedEx Ground cites as providing support for its contention that these issues require driver-by-driver examination. <u>Millard's, Inc. v. United States</u>, 146 F. Supp. 385, 388 (D.N.J. 1956), presented the issue of whether roofers were employees for purpose of the Federal Insurance Contributions Act; the case appears to have presented no issue of New Jersey law at all. <u>DaBronzo v. Roche Vitamins, Inc.</u>, 232 F. Supp. 2d 306, 316 (D.N.J. 2002), involved analysis of whether an asbestos contractor was an employee or an

independent contractor, but the relationship in <u>DaBronzo</u> doesn't appear to have involved a contract as detailed as the FedEx Ground Operating Agreement. Finally, <u>Broussard v. Meineke Disc. Muffler Shops, Inc.</u>, 155 F.3d 331, 345 (4th Cir. 1998), involved a class action by franchisees claiming the franchisor had misused funds the franchisees had paid for advertising. The court of appeals held the class should not have been certified because it allowed the franchisees to create a "perfect plaintiff." The New Jersey plaintiffs, in contrast, contend that FedEx Ground has treated each driver the same: as an employee.

The New Jersey Supreme Court explained its test concisely: "The control test is satisfied whenever the employer retains the right of control, even if the employer may not exercise actual control over the worker." <u>Lowe v. Zarghami</u>, 731 A.2d 14, 20 (1999). Regardless of how FedEx Ground may have dealt with any given driver, its right to control the drivers may be determined by reference to the Operating Agreement and related company policies. Whether the class members are employees or independent contractors is a common issue of fact and law.

FedEx Ground also contends that individualized determinations will be necessary for several of its defenses to the New Jersey plaintiffs' state law claims. Again, the court reads the law differently. <u>Miller v. Director, Div. of Taxation</u>, 6 N.J. Tax 118, 133 (N.J. Tax Ct. 1983), provides no support at all for the proposition that FedEx Ground will be entitled to set off losses caused by any driver's negligence or conversion from any recovery under the Wage Payment Law. The law is to the contrary. <u>Male v. Acme Markets, Inc.</u>, 264 A.2d 245, 246 (N.J.

Super. Ct. App. Div. 1970). FedEx Ground is correct that causation is an element of recovery under the New Jersey Consumer Fraud Act, but the common issue needn't be the only issue in a class action. <u>Seidenberg v. Summit Bank</u>, 791 A.2d 1068, 1077 (N.J. Super. Ct. App. Div. 2002), doesn't support FedEx Ground's proposition that an inquiry into each driver's intent will be needed to resolve the claims for breach of the duty of good faith and fair dealing; <u>Seidenberg</u> addressed the methods of proof when an alleged breach of the implied covenant didn't violate a pertinent express term of the contract.

Even when considering the defenses available to FedEx Ground, the matter of FedEx Ground's right to control its drivers remains the predominant and common issue of fact and law.

Finally, FedEx Ground is factually correct that the New Jersey plaintiffs' declaratory relief claim is simply a predicate to their damage claims, but that is no impediment to certification of a class under Rule 23(b)(2). <u>Berger v. Xerox Corp. Ret. Income Guarantee Plan</u>, 338 F.3d 755, 764 (7th Cir. 2003) ("No one wants an empty declaration. As long as the concrete follow-on relief that is envisaged will if ordered (that is, if negotiations for relief consistent with the declaration break down) be the direct, anticipated consequence of the declaration, rather than something unrelated to it, the suit can be maintained under Rule 23(b)(2).").

The court agrees with FedEx Ground that as the class is proposed, its statute of limitations defense would require individualized inquiry into when any particular driver became aware, or should have become aware, of the fraudulent

activity. <u>Yarchak v. Trek Bicycle Corp.</u>, 208 F. Supp. 2d 470, 479 (D.N.J. 2002). The New Jersey plaintiffs recognize the potential merit in that argument, and suggested limiting class members to those who signed an Operating Agreement, for the first time, on or after May 19, 1999. The court will so modify the class definition.

With that modification, the court grants the New Jersey plaintiffs' motion for class certification.


MARYLAND

Thomas Westcott, a former driver for the Home Delivery section of FedEx Ground, is the sole named plaintiff in the Maryland case. He seeks certification of the following class for claims for violation of Maryland's wage statutes, unjust enrichment, and declaratory and injunctive relief:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since May 5, 2003, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Maryland.

Mr. Westcott seeks certification of a damages and unjust enrichment class under Federal Rule of Civil Procedure 23(b)(3) for the claims under the Maryland Wage Payment and Collection Act, MD. CODE ANN., LAB & EMPL. § 3-501, *et seq.*, and the unjust enrichment claims. He seeks certification under Federal Rule of Civil Procedure 23(b)(2) for the declaratory relief claim.

Mr. Westcott points to the 218 drivers in Maryland at the time of his motion in support of the numerosity requirement of Rule 23(a)(1). He contends that because he and the other Maryland drivers are employees rather than independent contractors under Maryland law, the deductions FedEx Ground made from the drivers' earnings violate the wage payment act. Alternatively, he seeks rescission of the Operating Agreement because it contravenes Maryland public policy against depriving an employee of a portion of the wages he has earned. In distinguishing between employees and independent contractors, the Maryland courts emphasize whether the alleged employer has the right of control over the alleged employee in respect to the work to be performed. <u>Baltimore Harbor Charters Ltd. v. Ayd</u>, 780 A.2d 303, 315-316 (Md. 2001). The right to control, Mr. Westcott argues, provides a common and predominant question of fact and law.

Mr. Westcott says he is a member of the class and his claims are essentially the same as those of other drivers, so his claims are typical of the class he seeks to represent. He points to his extensive participation in the case thus far as indicative of his adequacy as a class representative and to his attorneys' experience as indicative of their adequacy.

Mr. Westcott presents the same arguments as most other plaintiffs in the docket with regard to the requirements of Rule 23(b)(3) being satisfied by the damages claims because common issues of law and fact predominate and class adjudication is superior to other available methods of resolution, and with regard

to his request for declaratory judgment supporting certification of a class under Rule 23(b)(2).

FedEx Ground contends Mr. Westcott is an inadequate class representative. FedEx Ground notes that Mr. Westcott periodically violated FedEx Ground rules concerning acquisition of recipient's signatures, so his claims are subject to equitable defenses. Further, FedEx Ground contends that Mr. Westcott's work ethic (he would, according to FedEx Ground, "rather stop working at noon than have his business succeed") makes him an unacceptable representative of a class that contains hard-working drivers with entrepreneurial spirit. FedEx Ground also challenges Mr. Westcott's standing to represent current drivers since (to the apparent surprise of his attorneys) he quit his position as a FedEx Ground driver, and his adequacy, as a former Home Division driver, to represent Ground drivers.

FedEx Ground also contends that individual questions predominate over common questions. In deciding whether one is an independent contractor, Maryland courts consider factors including the power of control, selection and engagement of employees, payment of wages, power of dismissal, and whether the work is part of the regular business of the employer. FedEx Ground contends that each potential class member's situation must be evaluated on its own merits. Moreover, FedEx Ground argues, since *quantum meruit* smacks of fraud, the court will have to decide what was said, to whom it was said, and who relied on which statements, which are individual questions.

Finally, FedEx Ground argues, as it has in several other cases in this docket, that Mr. Westcott offers no trial plan, the proposed class definition is unmanageable because it doesn't define driving on "a full-time" basis, and putative class members have a strong interest in controlling the litigation's outcome. FedEx Ground also raises the same objections as it raises in other cases to certification of a 23(b)(2) class on the declaratory judgment claim. These objections are no more persuasive with respect to Mr. Westcott's class certification motion than in the other cases.

The court also disagrees with FedEx Ground that Mr. Westcott's assertedly unclean hands will doom his claims and make him an unsuitable class representative; there is no nexus between Mr. Westcott's allegedly improper conduct and the claims he brings. *See* Hicks v. Gilbert 762 A.2d 986, 990 (Md. Ct. Spec. App. 2000). The court addressed the standing concerns in conjunction with the Tennessee case in this opinion.

The *quantum meruit* claim won't require individual analysis. *See* Alternatives Unlimited, Inc. v. New Baltimore City Bd. of Sch. Comm'rs, 843 A.2d 252, 291 (Md. Ct. Spec. App. 2004); Mogavero v. Silverstein, 790 A.2d 43, 51-52 (Md. Ct. Spec. App. 2002)). Whether Maryland law creates a common question of law and fact or individualized issues with respect to employment status is more challenging. FedEx Ground cites L.M.T. Steel Prods., Inc. v. Peirson, 425 A.2d 242, 244 (Md. Ct. Spec. App. 1981), for the proposition that Maryland courts look to the parties' actual conduct in deciding whether the power of control exists. This

may be so in some circumstances; <u>L.M.T. Steel</u> dealt with liability for a purported employee's negligent use of the alleged employer's personal automobile. The Court of Appeals of Maryland specifically addressed the test under the wage act in <u>Baltimore Harbor Charters, Ltd. v. Ayd</u>, 780 A.2d 303 (Md. 2001), while noting that different definitions may apply in different settings, *see* 780 A.2d at 314 n.9, so the court needn't ponder the meaning of <u>L.M.T. Steel</u>. For purposes of today's issue, though, <u>Baltimore Harbor Charters</u> leaves ample room for pondering.

After reviewing case law and statutes from California and several other jurisdictions, and considering the RESTATEMENT test, the <u>Baltimore Harbor Charters</u> court held:

> The factors considered in this Court's opinions regarding the doctrine of *respondeat superior* and construction of the term "employee" under the principles enumerated in Restatement (Second) of Agency, as well as the case law interpreting the term "employee" under the wage act statutes of other jurisdictions provide an appropriate framework for determining whether an individual is an employee covered by the Maryland Wage Payment and Collection Act. Such factors include:
>
> 1. Whether the employer actually exercised or had the right to exercise control over the performance of the individual's work;
>
> 2. Whether the individual's service is [] outside all the usual course of business of the enterprise for which such service is performed;
>
> 3. Whether the individual is customarily engaged in an independently established trade, occupation, profession, or business;
>
> 4. Whether it is the employer or the employee who supplies the instrumentalities, tools, and location for the work to be performed;
>
> 5. Whether the individual receives wages directly from the employer or from a third party for work performed on the employer's behalf; and

6. Whether the individual held an ownership interest in the business such that the individual had the ability and discretion to affect the general policies and procedures of the business.

780 A.2d at 318-319. The first factor — whether the alleged employer "actually exercised or had the right to exercise control" — seems to present a need for individual analysis: it appears to be pertinent whether the employer had a right to control that was not "actually exercised."

The <u>Baltimore Harbor Charters</u> court went on, though, to offer guidance to the trial court on remand, explaining with respect to the first factor, "[t]he emphasis on the right to exercise control is whether Berman could have exercised control over Ayd, not whether he actually did." 780 A.2d at 319. Accordingly, as the court reads Maryland law, a plaintiff can prove himself an employee by showing a right to control or, in a different sort of case, actual control when no right to control actually exists.

The court understands Mr. Westcott to bring his claims based wholly on the right to control reserved to FedEx Ground under the Operating Agreement, not upon FedEx Ground's actual exercise (or forbearance) of control. If the court's understanding is correct, the Operating Agreement is all that will be needed to determine whether FedEx Ground has a right to control such as to support Mr. Westcott's claim of employee status. The remaining factors in the <u>Baltimore Harbor Charters</u> test can be resolved, too, without reference to differential treatment of individual drivers.

The court grants Mr. Westcott's motion to certify the Maryland classes.

MICHIGAN

The Michigan plaintiffs seek certification of the following class under Federal Rule of Civil Procedure 23(b)(3) for their claims of breach of implied contract, unjust enrichment, and declaratory judgment, and under Rule 23(b)(2) for their declaratory judgment claim. The proposed class includes:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since October 25, 1998, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Michigan.

The Michigan plaintiffs' arguments are nearly identical to those Mr. Westcott raised on Maryland class's behalf, with the necessary exception of the controlling state law. FedEx Ground responds with much the same arguments, augmented by a stronger assault on the role it perceives the Teamsters to be playing in Michigan — an argument no more persuasive with respect to the Michigan class than it was with respect to the New Jersey class certification motion. The propriety of class certification turns, then, on whether the issue of the class members' classification as independent contractors presents a common question under Michigan law.

To decide whether one party is another's employer, Michigan courts use an "economic reality test" that entails consideration of control, payment of wages,

80

hiring and firing, and responsibility for the maintenance of discipline. <u>Ashker v. Ford Motor Co.</u>, 627 N.W.2d 1, 3 (Mich. Ct. App. 2001). No single factor is controlling. <u>Wells v. Firestone Tire & Rubber Co.</u>, 364 N.W.2d 670, 673 (Mich. 1984).

The parties' disappointing citation choices slowed the court in resolving the Michigan motion. For example, FedEx Ground argues that by "control," Michigan courts mean actual control, a proposition for which they cite <u>Wells v. Firestone Tire</u>, 364 N.W.2d at 673-674. Whatever support <u>Wells</u> provides for FedEx Ground is not immediately apparent. The <u>Wells</u> court considered which of two corporations employed the plaintiff. The section cited by FedEx Ground doesn't seem to consider control in the slightest, though it notes a distinction between the organizational chart and actual practice when it came to hiring and firing. Another of the cases FedEx Ground cites, <u>Aero Taxi-Rockford v. General Motors Corp.</u>, No. 259565, 2006 WL 1479915, at *2 (Mich. Ct. App. May 30, 2006), neither applied nor discussed the economic reality test.

Similarly, the Michigan plaintiffs cite <u>Farrell v. Dearborn Mfg. Co.</u>, 330 N.W.2d 397, 400 (Mich. 1982), for the proposition that, "The 'control' element of the test subsumes the common law 'control test,'" but the court's several re-readings of that page (and the rest of the case) disclose nothing from which that principle appears to be drawn. The Michigan plaintiffs also cite <u>Goodchild v. Erickson</u>, 134 N.W.2d 191, 193 (Mich. 1965), for the proposition that courts are to look for the right to control, rather than actual control. The <u>Goodchild</u> case

contains such language, but the language is contained in a quotation from a 1918 case, Arnett v. Hayes Wheel Co., 166 N.E. 957 (Mich. 1918), explaining a test no longer used by the Michigan courts.

Mantei v. Michigan Pub. Sch. Employees Ret. Sys., 663 N.W.2d 486, 495-497 (Mich. Ct. App. 2003), is more instructive. Mantei considered whether a school principal was employed or retired for purposes of retirement benefits — a different sort of issue than in this case, but the court applied the economic realities test. When analyzing the control factor, the Mantei court discussed the contract under which one entity was to provide the school district with a qualified person to fill the principal position, and identified the work requirements the person was to satisfy. The school superintendent, though, testified that he didn't supervise or evaluate the plaintiff as he had when the school district employed him, and set forth specific areas in which that lesser supervision arose. The court went on to discuss only the right to control the principal, rather than actual control that was exercised, and concluded that the school district had some control over the principal because the contract with the other entity provided the right to control to some degree. Id. at 496-497.

Still more instructive is Kidder v. Miller-Davis Co., 564 N.W.2d 872 (Mich. 1997),[3] another case with a very different sort of issue, but governed by Michigan's

<hr>

[3] Even with respect to this case, FedEx Ground's citation is disappointing. In arguing that Michigan courts look to actuality rather than contractual right to control, FedEx Ground quotes the Kidder court as saying, "[j]ust as we have held that control is but one factor to consider under the economic-reality test, ***so is the contract but one factor***" (emphasis provided by FedEx Ground). The quote is accurate, but the Kidder court was discussing the portion of the contract

economic realities test. At issue in <u>Kidder</u> was whether the worker compensation law barred an injured worker's tort suit against the contractor on whose work site he was injured or the labor broker that sent him to that work site. The court applied the economic realities test and concluded that the worker was an employee of both. Most important to today's case, a contract existed between the labor broker and the construction contractor, *see* 564 N.W.2d at 879 n.8, but the court examined the control each potential employer actually exerted over the workers — not just the over plaintiff, but over all the workers at the site. <u>Id</u>. at 880.

<u>Sliter v. Cobb</u>, 200 N.W.2d 67 (Mich. 1972), involved a vehicular collision between the plaintiff and a newspaper deliverer. The newspaper sought summary judgment on the ground that the deliverer was an independent contractor rather than its employee. The supreme court looked only to the issue of control, but did so with respect to both contractual right to control and actual control. <u>Id</u>. at 207-208.

These cases persuade the court that while FedEx Ground's right to control its drivers under the Operating Agreement is an issue common to all class members, that common issue does not predominate because individual issues will

---

that disavowed any employer-employee relationship, not the contract's impact on the control analysis. *See* <u>Kidder</u>, 564 N.W.2d at 881.

    On a similar note, FedEx Ground accurately quotes <u>Roostertail, Inc. v. Patti Page, Pattack, Inc.</u>, 188 N.W.2d 224, 228 (Mich. Ct. App. 1971), as saying, "[t]he ***actual relationship*** of the parties, not merely their characterization of that relationship, is relevant" (emphasis provided by FedEx Ground), but the <u>Roostertail</u> court was discussing federal labor law, not Michigan law.

have to be considered — matters of actual control, not just the right to control —

for each of more than 350 class members. Class treatment is inappropriate in

light of governing Michigan law, so the court denies the Michigan plaintiffs' motion

for class certification.

MINNESOTA

The Minnesota plaintiffs allege violations of Minnesota's Illegal Deductions

from Wages Law, MINN. STAT. § 181.79, subd. 1, Failure to Keep Records Law,

MINN. STAT. § 177.30, and Consumer Fraud Act, MINN. STAT. § 325F.69, subd. 1.

They seek rescission of the Operating Agreement, *quantum meruit* damages for

services performed, and declaratory and injunctive relief. They seek certification

of the following class:

> All persons who: 1) entered or will enter into a FXG Ground or
> FXG Home Delivery form Operating Agreement (now known as form
> OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a
> full-time basis (meaning exclusive of time off for commonly excused
> employment absences) since April 5, 1999, to provide package pick-
> up and delivery services pursuant to the Operating Agreement; and
> 3) were dispatched out of a terminal in the state of Minnesota.

The Minnesota plaintiffs' wage deduction claim seeks reimbursement of

sums that FedEx Ground deducts or withholds from drivers' earnings to cover

FedEx Ground's ordinary business expenses. The record-keeping claim asserts

that the drivers are employees as to whom FedEx Ground has not kept records

required by statute. The consumer fraud claim appears to be based on FedEx

Ground's representation to the drivers that they are independent contractors.

Apart from the controlling law, the Minnesota plaintiffs make essentially the same argument Mr. Westcott made for the Maryland class. The Minnesota plaintiffs report that there were 355 drivers in Minnesota when they filed their class certification motion. The Minnesota plaintiffs say they will rely on common proof, including the Operating Agreement, FedEx Ground standard policies, and training and programmatic treatment of its drivers, to establish that the drivers are employees rather than independent contractors.

FedEx Ground raises many of the same arguments already rejected in this order with respect to the Minnesota plaintiffs. FedEx Ground says the named plaintiffs are inadequate class representatives because (as former drivers) they have no stake in any claim for injunctive or declaratory relief, because the class disagrees on the proposed remedy, and because the named plaintiffs have shown little interest in growing their businesses, they can't represent multiple work area drivers or even single work area drivers. FedEx Ground also argues that a class action is not the superior method for litigating each potential class member's claims because the plaintiffs offer no trial plan, don't define "full time," and putative class members have a strong interest in controlling the outcome of the litigation.

The Minnesota plaintiffs and FedEx Ground generally agree that Minnesota courts apply the following factors to decide whether a person is an employee or independent contractor: (1) the right to control the means and manner of performance; (2) the mode of payment; (3) the furnishing of material or tools; (4)

the control of the premises where the work is done; and (5) the right of the employer to discharge. Minn. R. 3313.0555; Boily v. Commissioner of Econ. Sec., 544 N.W.2d 295, 296 (Minn. 1996). The right to control the means and manner of performance "generally carries the greatest weight in a determination of the worker's status." Boily v. Commissioner, 544 N.W.2d at 296. If the first five factors don't produce an answer, Minnesota courts then consider (1) availability to public, (2) compensation on job basis, (3) realization of profit or loss, (4) obligation, (5) substantial investment, (6) simultaneous contracts, (7) responsibility, and (8) services in the course of the employing unit's organization, trade, or business. Minn. R. 3315.0555, subd. 2.

FedEx Ground contends that Minnesota law requires examination of each factor with respect to each driver. FedEx Ground notes that in Boily v. Commissioner, 544 N.W.2d at 296, the court looked to the putative employer's opportunity in addition to the right to control. As this court reads the opinion, though, the look to opportunity was merely an observation on the way to a holding, and formed no part of the Boily court's reasoning or holding:

> Inasmuch as Dr. Boily is a resident of California, it is apparent that his opportunity to control the manner and means of the three dentists whose status is in question would be extremely limited even if the right of control had been reserved. It appears, however, that Dr. Boily did not reserve to himself the right to control the manner in which the dentists practice their profession.

Id. FedEx Ground also cites Broussard v. Meineke Disc. Muffler Shops, 155 F.3d 331, 345 (4th Cir. 1998), for the proposition that each potential class member's

situation must be evaluated on its own merits; the inapplicability of <u>Broussard</u> was discussed with reference to the New Jersey class.

Thus, even if FedEx Ground actually allowed variations between drivers with respect to such things as choosing supplemental drivers, delivery methods, determining schedule, controlling package volume, reconfiguring routes, taking on routes of the driver's choice, controlling income, selecting vehicles and controlling maintenance, and controlling appearance, FedEx Ground cites no authority for the proposition that such variations matter if — as the drivers claim — FedEx Ground had the authority to control such things. FedEx Ground argues that there also are variations between drivers as to mode of payment, furnishing of materials or tools, control of the premises where the work is done, and the right to discharge cannot be evaluated on the basis of classwide proof.

The differences as to payment appear to deal with calculation of payment, rather than mode of payment. Similarly, the differences FedEx Ground cites with respect to furnishing (or acquisition) of tools do not appear germane to whether the drivers are employees; it appears from FedEx Ground's argument that FedEx Ground gives all drivers the same choices. FedEx Ground doesn't appear to dispute that it has control over the terminals, though it posits that the terminals are not where the drivers do most of their work.

As to the specific state law claims, FedEx Ground argues that individual inquiry will be required as to some of its defenses, such as waiver and estoppel. FedEx Ground also says it might raise a laches defense to the rescission claim.

The variety of individual defenses, though, doesn't eliminate the presence of a predominant common question of fact. *See* LaFlamme v. Carpenters Local No. 370 Pension Plan, 212 F.R.D. 448, 455 (N.D. N.Y. 2003); Gaspar v. Linvatec Corp., 167 F.R.D. 51, 58 (N.D. Ill. 1996). As to the record-keeping claims, FedEx Ground says it kept the required information as to at least some drivers, but that millions of pages of weekly settlement statements and daily settlement records will need to be reviewed to identify those drivers. This seems more in the nature of an admission than a reason not to certify a class, since Minnesota law appears to require such records as to each employee — if the drivers are employees.

FedEx Ground says a showing of reliance is essential for Consumer Fraud Act cases seeking damages, for which FedEx Ground quotes Group Health Plan, Inc. v. Philip Morris, Inc., 621 N.W.2d 2, 14 (Minn. 2001), as saying a "showing of reliance . . . *must be made*." (emphasis by FedEx Ground). FedEx Ground's use of this case as authority for this proposition is nothing short of astonishing. The quoted words are taken from the following paragraph, which makes abundantly clear that no individual inquiry need be made into reliance under the Minnesota Consumer Fraud Act:

> More to the point, in cases such as this, where the plaintiffs' damages are alleged to be caused by a lengthy course of prohibited conduct that affected a large number of consumers, the showing of reliance that must be made to prove a causal nexus need not include direct evidence of reliance by individual consumers of defendants' products. Rather, the causal nexus and its reliance component may be established by other direct or circumstantial evidence that the district court determines is relevant and probative as to the relationship between the claimed damages and the alleged prohibited

conduct. Further, in the context of the certified question, we reject the view expressed in two federal court decisions that our misrepresentation in sales laws require proof of individual reliance in all actions seeking damages. To impose a requirement of proof of individual reliance in the guise of causation would reinstate the strict common law reliance standard that we have concluded the legislature meant to lower for these statutory actions. Moreover, we are confident that the legislature would not have authorized private damages actions such as this, where the alleged misrepresentations are claimed to have affected a large number of consumers, while retaining a strict burden of proof that depends on evidence of individual consumer reliance.

Group Health Plan v. Philip Morris, 621 N.W.2d at 14-15 (internal citations omitted).

Whether the Minnesota drivers were employees or independent contractors is a common question of fact that can be decided on a class-wide basis. The court grants the Minnesota plaintiffs' motion for class certification.

PENNSYLVANIA

Derek Willis asks the court to certify a class under Federal Rule of Civil Procedure 23(b)(3) for his claims for injunctive and declaratory relief, for damages for violation of the Pennsylvania Wage Payment and Collection Law, and for rescission of the Operating Agreement. Mr. Willis also seeks certification under Rule 23(b)(2) for his injunctive and declaratory relief claims. He seeks to certify the following class:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused

employment absences) since July 25, 2001, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the commonwealth of Pennsylvania.

The parties make essentially the same arguments as those presented in the other states. Mr. Willis says the proposed Pennsylvania class is so numerous (571 Pennsylvania drivers at the time of the motion) that joinder is impractical, that the question of employee or independent contractor is common to the proposed class and can be resolved without analysis of individual drivers, that his claim (he is a former FedEx Ground driver who worked under the standard Operating Agreement) is typical of absent class members, and that he is an adequate class representative. With respect to his request to certify a class under Rule 23(b)(3) for the damages claims, Mr. Willis says the common issue (employee v. independent contractor) predominates, and a class action is superior to other methods of resolving the claims. With respect to his request to certify a class under Rule 23(b)(2) for the injunctive and declaratory claims, Mr. Willis argues that through its use of the Operating Agreement, FedEx Ground has treated the class as a whole in the same way.

FedEx Ground's argument that Mr. Willis lacks standing because he no longer drives for FedEx Ground is no stronger than in other cases already discussed, though it is more interesting because FedEx Ground fired Mr. Willis after he filed this suit and gave his deposition. *See* Wetzel v. Liberty Mut. Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975). FedEx Ground also argues, as it has with

respect to named plaintiffs from other states, that Mr. Willis can't adequately represent FedEx Ground HD drivers, multiple work area contractors, or single work area contractors who want to expand their businesses; the putative class doesn't want the remedy Mr. Willis seeks and has a strong interest in controlling the litigation's outcome; Mr. Willis offers no trial plan; the class definition is unmanageable because it doesn't define "full time driver;" and the declaratory claim is unsuitable for Rule 23(b)(2) certification because Mr. Willis's primary objective is money damages. The court has considered and rejected each of those arguments already in this opinion.

The remaining class certification issues turn on whether Pennsylvania law allows the central issue of employee vs. independent contractor to be resolved without examining each individual driver.

> In determining whether a relationship is one of employer-employee or independent contractor, ". . . the basic inquiry is whether such person is subject to the alleged employer's control or right to control with respect to his physical conduct in the performance of the services for which he was engaged. The hallmark of an employee-employer relationship is that the employer not only controls the result of the work but has the right to direct the manner in which the work shall be accomplished; the hallmark of an independent contractee-contractor relationship is that the person engaged in the work has the exclusive control of the manner of performing it, being responsible only for the result."

Urbano v. STAT Courier, Inc., 878 A.2d 58, 61 (Pa. Super. Ct. 2005) (*quoting* Valles v. Albert Einstein Med. Ctr.*, 758 A.2d 1238, 1244 (Pa. Super. Ct. 2000)). Pennsylvania courts consider (1) the control of the manner that work is to be done; (2) responsibility for result only; (3) terms of the parties' agreement; (4) the

nature of the work or occupation; (5) skill required; (6) whether engaged in a distinct occupation or business; (7) which party supplies the tools; (8) whether payment is by the time or by the job; (9) whether the work is part of the regular business of the employer; and (10) the right to terminate the employment at any time. Morin v. Brassington, 871 A.2d 844, 850 (Pa. Super. Ct. 2005) (*citing* Lynch v. WCAB, 554 A.2d 159, 160 (Pa. Commw. Ct. 1989)); Shay v. Flight C Helicopter Servs., Inc., 822 A.2d 1, 13-14 (Pa. Super. Ct. 2003). The right to control the manner in which another's work is to be accomplished is paramount. Morin v. Brassington, 871 A.2d at 850.

With respect to these factors, whether and to what extent FedEx Ground has the right of control can be resolved by reference to the Operating Agreement and FedEx Ground policies. The extent to which FedEx Ground exercised its right to control with respect to a given employee or terminal won't change the analysis: while one might become an employer by exercising more authority than is contractually granted, *see, e.g.*, Urbano v. STAT Courier, 878 A.2d 58, neither side has cited a Pennsylvania case in which forbearance of the exercise of contractually granted power to control affects the analysis. *See* JFC Temps, Inc. v. Workmen's Comp. Appeal Bd. (Lindsay), 680 A.2d 862, 864 (Pa. 1996).

That common question — whether the Operating Agreement and FedEx Ground policies based on the Operating Agreement vest in FedEx Ground such right to control the manner of the drivers' performance of their work that FedEx Ground is the drivers' employer — predominates over all other issues in the sense

that it is the keystone to each of Mr. Willis's claims. Whether the Wage Payment and Collection Law allowed the challenged deductions from the drivers' pay turns on whether the drivers are employees. If the Operating Agreement properly classifies the drivers as independent contractors, the rescission claim must fail.

For these reasons, the court grants Mr. Willis's motion to certify a class of drivers dispatched from Pennsylvania terminals.

New Hampshire

The New Hampshire plaintiffs assert claims under New Hampshire law for failure to pay overtime, N.H. Rev. Stat. Ann. § 279:21 VIII, and to provide meal breaks, N.H. Rev. Stat. Ann. § 275:30-a, unauthorized deductions from compensation, N.H. Rev. Stat. Ann. § 275:48, failure to reimburse expenses, N.H. Rev. Stat. Ann. § 275:57, violation of the Unfair Business Practices Act, N.H. Rev. Stat. Ann. ch. 358-A, *et seq.*, rescission, failure to reimburse employee expenses, and also seek declaratory relief. They seek certification of the following class:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since April 27, 2002, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of New Hampshire.

For the most part, the New Hampshire plaintiffs and FedEx Ground raise the same arguments that already have been address in the Kansas certification opinion and this opinion. The New Hampshire plaintiffs point to 80 drivers in New

Hampshire as proof of numerosity. FedEx Ground raises arguments already considered concerning the putative class's minority position within the workforce as far as remedy and the general unsuitability of these claims for class treatment. The parties disagree as to the controlling state law.

The New Hampshire plaintiffs contend the drivers are employees. If this is so, they argue, they are entitled to unpaid compensation, breaks, standard deductions, and unpaid business expenses, including business expenses such as truck payments, vehicle insurance, vehicle maintenance, deductions for workers' compensation insurance, and any wages withheld other than what New Hampshire statutes allow.

FedEx Ground first argues that New Hampshire law effectively precludes class certification of these claims. N.H. REV. STAT. ANN. § 275:53 provides that actions asserting claims such as the New Hampshire plaintiffs' statutory claims may only be brought "by any one or more employees for and in behalf of himself or themselves, or such employee or employees may designate an agent or representative to maintain such action." Given that provision, FedEx Ground reasons, only the person claiming employee status or someone that person has designated has standing to assert claims.

FedEx Ground cites Trezvant v. Fidelity Employer Servs. Corp., 434 F. Supp. 2d 40 (D. Mass. 2006), in support of its reading of N.H. REV. STAT. ANN. § 275:53, but that case contains no holding of help to FedEx Ground. The Trezvant court acknowledged the possible construction that FedEx Ground advances here

— "The New Hampshire statute may contain such an express limitation. The wording of the statute and the lack of class action employee wage lawsuits in New Hampshire leaves a significant degree of doubt as to whether class actions are allowed," 434 F. Supp. 2d at 57 — but went on to hold that the Trezvant plaintiffs' Fair Labor Standards Act claim subsumed their state law claim. N.H. REV. STAT. ANN. § 279:21 specifically excludes overtime claims covered by the FLSA. 434 F. Supp. 2d at 57-58.

This court doesn't read N.H. REV. STAT. ANN. § 275:53 to prohibit class actions. As this court reads the statute, § 275:53 broadens the class of persons who may bring specified suits to include designated agents or representatives. FedEx Ground hasn't persuaded the court that the statute limits standing rather than broadening it.

For purposes of the statutory claims, an "employee" is defined as:

> . . . every person who may be permitted, required, or directed by any employer, in consideration of direct or indirect gain or profit, to engage in any employment, but shall not include any person exempted from the definition of employee as stated in Rev. Stat. Ann. 281-A:2, VI(b)(2), (3), or (4), or Rev. Stat. Ann. VII(b), . . . or any person who meets all of the following criteria:
> (a) The person possesses or has applied for a federal employer identification number . . . .
> (b) The person has control and discretion over the means and manner of performance of the work in [achieving] the result of the work . . . .
> (c) The person has control over the time when the work is performed, and the time of performance is not dictated by the employer. . . .
> (e) The person holds himself or herself out to be in business for himself or herself. . . .

> (l) The person is not required to work exclusively for the employer.

N.H. REV. STAT. ANN. § 275:42(II). With respect to their common law claims, the New Hampshire plaintiffs say their status turns on whether FedEx Ground controls or has the right to control the manner of the task they are to perform, citing Harper v. Healthsource New Hampshire, Inc., 674 A.2d 962, 966 (N.H. 1996), and Boissonnault v. Bristol Federated Church, 642 A.2d 328, 329 (N.H. 1994).

FedEx Ground reads New Hampshire law differently. FedEx Ground says New Hampshire courts look beyond control to the "totality of the circumstances" of the alleged employment in deciding whether a person is an independent contractor. FedEx Ground cites four cases for its position: Boissonnault v. Bristol Federated Church, 642 A.2d 328, 329 (N.H. 1994) (which the plaintiffs also cite); Royal Burnham v. Downing, 480 A.2d 128, 130 (N.H. 1984); Merchants Ins. Group v. Warchol, 560 A.2d 1162, 1165 (N.H. 1989); and Walker v. Charles DiPrizio & Sons, Inc., 348 A.2d 355 (N.H. 1975).

The court doesn't read New Hampshire law as FedEx Ground does. Until 1970, New Hampshire looked only to the purported employer's right to control, so one without a right to control the alleged employee could never be an employer. Boissonnault v. Bristol Federated Church, 642 A.2d at 329. In 1970, the New Hampshire Supreme Court broadened its test to one examining the totality of the circumstances and held that a regular employee who was sent on a specific

errand, was using his own car with the employer's knowledge and permission, and was acting within the scope of his employment when he collided with the plaintiffs, was an "employee" for purposes of tort liability, even though the employer may not have had the "right to control the manner and means (the details, in other words) of operating the car." Hunter v. R. G. Watkins & Son, Inc., 265 A.2d 15, 17 (N.H. 1970).

The court parts ways with FedEx Ground's reading of the law at the point FedEx Ground implicitly concludes that one with right to control the manner and means of the task's execution can shed its employer status under New Hampshire law if it can marshal enough of the factors from the RESTATEMENT (SECOND) OF AGENCY § 220. None of the New Hampshire cases that FedEx Ground cites found an independent contractor relationship notwithstanding the hiring party's right to control the method and means of the other's work. This is consistent with the New Hampshire court's understanding that the Hunter court adopted a "more expansive view of the relationship and its determination," Boissonnault v. Bristol Federated Church, 642 A.2d at 329.

Individual analysis of each driver might well be required if the New Hampshire plaintiffs claimed the other RESTATEMENT (SECOND) OF AGENCY § 220 factors made them employees despite a lack of FedEx Ground control over the manner and means by which drivers are to complete their work. But that is not this case. The New Hampshire plaintiffs contend that the Operating Agreement vests such right to control in FedEx Ground as to make the drivers employees.

97

The individual RESTATEMENT factors that FedEx Ground analyzes in its response appear quite unlikely to affect that contention.

Both the statutory and common law claims may be resolved solely by reference to FedEx Ground policies and the Operating Agreement. The court will grant the New Hampshire plaintiffs' motion for class certification.

SOUTH CAROLINA

The South Carolina plaintiffs seek certification of classes under Rule 23(b)(2) and 23(b)(3) for statutory claims for unlawful wage deductions under South Carolina Labor Law, S.C. CODE ANN. § 41-10-40, common law claims for rescission and unjust enrichment, and a claim for declaratory relief. S.C. CODE ANN. § 15-53-20. They seek certification of the following class:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since September 6, 2002, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of South Carolina.

The South Carolina plaintiffs report that there were 162 active drivers in South Carolina when they filed their class certification motion. Apart from issues dependent on South Carolina law, neither the South Carolina plaintiffs nor FedEx Ground raised any arguments on this motion that the court hasn't already resolved in favor of driver plaintiffs and against FedEx Ground.

The South Carolina plaintiffs assert that the state's statutes don't define "employee," so to distinguish between employees and independent contractors, South Carolina courts look to the hiring party's right and authority to control and direct the manner or means by which the undertaking is to be accomplished, not the actual control the hiring party exercised. The South Carolina plaintiffs cite Dawkins v. Jordan, 534 S.E.2d 700, 704 (S.C. 2000), for that proposition, and further cite Nelson v. Yellow Cab Co., 538 S.E.2d 276, 280 (S.C. Ct. App. 2000), for the proposition that the right to control makes the hired party an employee even if the hiring party doesn't exercise that control.

FedEx Ground reads South Carolina's test as one requiring a fact-specific determination based on four factors: "(1) direct evidence of the right or exercise of control; (2) method of payment; (3) furnishing of equipment; and (4) right to fire." South Carolina Workers' Comp. Comm'n v. Ray Covington Realtors, Inc., 459 S.E.2d 302, 303 (S.C. 1995). FedEx Ground says the parties' intent is the primary test of whether a contract forms an independent contractor relationship, and that South Carolina courts look to actions as well as the contract in determining the parties' intent, citing Young v. Warr, 165 S.E.2d 797, 805 (S.C. 1969), and Fulton by Fulton v. Westvaco Corp., 930 F. Supp. 1115 (D.S.C. 1995) .

The court finds no ambiguity at all in South Carolina law: the right to control the manner and means of performance creates an employer-employee relationship. Whether the control is exercised does not affect the nature of the relationship. For example, in Dawkins v. Jordan, 534 S.E.2d 700, 703 (S.C. 2000),

the court of appeals had held that the putative employer did not exercise control over the project; the supreme court explained, "The Court of Appeals misinterpreted the testimony and misapplied the law on the right to control. Both Dawkins and Jordan testified Dawkins supervised the McEntire project *because Dawkins was more experienced.* For purposes of establishing an employer-employee relationship, the question is not whether the employer actually exercised control, but whether the alleged employer had the *right* to control and direct the particular work or undertaking."

The South Carolina Supreme Court also distinguished between the right to control and actual control in <u>Young v. Warr</u>, 165 S.E.2d 797, 802 (S.C. 1969)):

> The general test applied is that of control by the employer. It is not the actual control then exercised, but whether there exists the right and authority to control and direct the particular work or undertaking, as to the manner or means of its accomplishment. . . . [T]he right of power of control retained by the person for whom the work is being done is uniformly regarded as the essential criterion for determining whether the workman is an employee or an independent contractor.

The South Carolina Court of Appeals explained in <u>Nelson v. Yellow Cab Co.</u>, 538 S.E.2d 276 (S.C. Ct. App. 2000), that an unused right to control remains a right to control for purposes of determining the nature of an agency relationship:

> The fundamental test of the employment relationship is the right of the employer to control the details of the employee's work. It is not the actual control exercised, but whether there exists the right and authority to control and direct the particular work or undertaking, as to the manner or means of its accomplishment.
> The test is based on the right to control, not the exercise. By an "exercise test," the employee would seem to be uncontrolled; yet, "it will often be found that the employer, in any showdown, would have

the ultimate right to dictate the method of work if there were any occasion to do so." The right to control does not require the dictation of the thinking and manner of performing the work. It is enough if the employer has the right to direct the person by whom the services are to be performed, the time, place, degree, and amount of said services.

538 S.E.2d at 280 (citations omitted).

The four factors to which FedEx Ground points don't add to the inquiry into control; they steer the determination of whether the alleged employer has the right of control. *See* South Carolina Workers' Comp. Comm'n v. Ray Covington Realtors, 459 S.E.2d at 303 ("In determining the control issue, this Court has looked at four factors: (1) direct evidence of the right or exercise of control; (2) method of payment; (3) furnishing of equipment; and (4) right to fire."); Wilkinson v. Palmetto State Transp. Co., 638 S.E.2d 109, 113-114 (S.C. Ct. App. 2006) ("The test to determine whether a claimant is an employee or an independent contractor is if the alleged employer has the right and authority to control and direct the particular work or undertaking, as to the manner or means of its accomplishment. Four factors determine the right of control." (internal citation and quotation omitted)). FedEx Ground cites no case in which any or all of those factors outweighed a contractually created right to control the manner and means of performance of the contracted undertaking. *Compare* Kilgore Group, Inc. v. South Carolina Empl. Sec. Comm'n, 437 S.E.2d 48 (S.C. 1993) (no contract; court looked to extrinsic evidence to determine agency relationship); Gamble v. Stevenson, 406 S.E.2d 350, 352 (S.C. 1991) (contract declared relationship to be one of independent contractor, but other evidence supported finding of employment);

Fulton by Fulton v. Westvaco Corp., 930 F. Supp. 1115, 1118-1119 (D.S.C. 1995) (contract declared independent contractor relationship, so other factors were addressed, as well).

Whether the FedEx Ground drivers are employees can be determined from the Operating Agreement and corporate documents, without reference to individual circumstances. Whether the drivers are employees is the predominant issue for each of the South Carolina plaintiffs' claims. The court will grant the South Carolina plaintiffs' motion for class certification.

MISSOURI

The Missouri plaintiffs seek certification of the following class under Rule 23(b)(2) and 23(b)(3) to prosecute their statutory claim for unauthorized wage deductions, MO. REV. STAT. § 290.010, their common law claim for rescission and unjust enrichment, and their claim for declaratory relief:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP- 149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since March 6, 2001 to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Missouri.

Apart from arguments dependent on Missouri law, the parties present arguments already discussed in this opinion and in the Kansas class certification opinion. The Missouri plaintiffs argue that they satisfy the requirements of Rule 23(a) because there are so many drivers that joinder is impractical (there were 221

drivers in Missouri when the motion was filed), there are questions of law and fact common to the class (whether the drivers are employees or independent contractors), their claims are typical of missing class members (all of whom signed the Operating Agreement), and the Missouri plaintiffs are adequate class representatives (they are members of the class). The Missouri plaintiffs argue, too, that their damage claims are appropriate for class treatment under Rule 23(b)(3) because the issue of employment status predominates over individual issues and because the cost savings of a class action (and the risk of retaliation individual drivers might face) make it the superior method of resolving the case. Finally, they argue their claims for declaratory judgment and injunctive relief are appropriate for class certification under Rule 23(b)(2) because FedEx Ground, by miscategorizing each driver as an independent contractor, is acting on grounds generally applicable to the class.

FedEx Ground argues that the Missouri plaintiffs — all former single work area drivers out of a single Home Delivery terminal — lack standing, can't represent current multiple work area or Ground drivers, and don't represent the aspirations of most Missouri drivers. FedEx Ground argues that Missouri's test for agency status requires individualized analysis, class certification is inappropriate when contractor status is at issue, and the Missouri plaintiffs offer no trial plan and too inexact a class definition (because of the limitation to full-time drivers).

Each of those arguments has been resolved in favor of class certification when presented with respect to certification motions from other states, and the parties present nothing to lead to a different ruling with respect to the Missouri motion. FedEx Ground also raises a unique argument about some of the named Missouri plaintiffs having given deposition testimony that FedEx Ground finds unconvincing, but the court does not see the cited testimony as making any of the named plaintiffs inadequate representatives.

The class certification issue, then, comes down to whether Missouri law is (as the Missouri plaintiffs argue) amenable to class determination of the drivers' agency status or requires (as FedEx Ground argues) a driver-by-driver analysis.

It appears to the court that while the right to control determines whether one is an employee or independent contractor, *see, e.g.,* Cloninger v. Wolfe, 477 S.W.2d 440, 443 (Mo. Ct. App. 1972) ("[t]he ultimate test in determining whether a person is a servant or bears some other relationship to the supposed master is whether the latter had the right to exercise control over the details of the servant's work"), the concept of "right to control" is more intricate in Missouri than in most states. Whether the "right to control" exists in Missouri's sense requires analysis of eight factors:

> The factors to consider in determining whether or not the requisite right to control exists are: "(1) the extent of control, (2) the actual exercise of control, (3) the duration of the employment, (4) the right to discharge, (5) the method of payment, (6) the degree to which the alleged employer furnished equipment, (7) the extent to which the work is the regular business of the employer, and (8) the employment contract."

Leach v. Board of Police Comm'rs, 118 S.W.3d 646, 649 (Mo. Ct. App. 2003) (*quoting* Phillips v. Par Elec. Contractors, 92 S.W.3d 278, 282 (Mo. Ct. App. 2002), and State v. Turner, 952 S.W.2d 354, 357 (Mo. Ct. App. 1997)). Thus, for example, in Nunn v. C.C. Midwest, 151 S.W.3d 388 (Mo. Ct. App. 2004), a written agreement governed the relationship between Mr. Nunn and CC Mid West, and that agreement established a right to control, but the court analyzed each of the eight factors. At the second factor, the court concluded that CC Mid West actually exercised control; despite having found both a contractual right to control and the actual exercise of control — which would end the inquiry in most states — the court went on to evaluate the remaining factors. 151 S.W.3d at 400-402.

Nothing in the other cases the parties cited is inconsistent with the court's understanding that Missouri defines the "right to control " concept differently than do other states. *See* Talley v. Bowen Constr. Co., 340 S.W.2d 701, 705 (Mo. 1960); Summer Chase Second Addition Subdivision Homeowners Ass'n v. Taylor-Morley, Inc., 146 S.W.3d 411, 417 (Mo. Ct. App. 2004); Phillips v. Par Elec. Contractors, 92 S.W.3d 278, 282 (Mo. Ct. App. 2002), *overruled on other grounds,* Hampton v. Big Boy Steel Erection, 121 S.W.3d 220 (Mo. 2003); Hinton v. Bohling Van & Storage Co., 796 S.W.2d 87, 90 (Mo. Ct. App. 1990).

Whether FedEx Ground has the right to control its drivers within the meaning of Missouri agency law cannot be resolved by simple reference to the Operating Agreements and corporate policies. Missouri courts define the "right to control" with reference to the actual exercise of control, Leach v. Police Comm'rs,

118 S.W.3d at 649, which will require a driver-by-driver, terminal-by-terminal, supervisor-by-supervisor analysis that is unnecessary in most other states. Thus, while the question of law is common to the class, it isn't the predominant question. It consists of too many other issues that cannot be decided on a class-wide basis.

Accordingly, the court denies the Missouri plaintiffs' motion for class certification.

OREGON

The Oregon plaintiffs in the *Slayman* case seek certification of a class under Federal Rule of Civil Procedure 23(b)(3) for their claims for illegal deductions from wages, OR. REV. STAT. § 652.610, and rescission of the Operating Agreement, and under Federal Rule of Civil Procedure 23(b)(2) for their claim for declaratory relief. These plaintiffs don't seek injunctive relief, though another set of plaintiffs seek injunctive relief in another case (<u>Jon Leighter, et al. v. FedEx Ground Ground Package System, Inc.</u>, Civil No. 3:07-CV-328-RLM-CAN (OR)). The Oregon *Slayman* plaintiffs seek certification of the following class:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since July 20, 1999, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Oregon.

The parties' arguments over class certification track those from other states and, to the extent the arguments are the same, are no more or less persuasive with respect to the Oregon *Slayman* plaintiffs than they have been with respect to other class certification motions. Apart from differences in governing state law, the argument unique to this case relates to named plaintiff Dennis McHenry, who has a separate state court suit pending against FedEx Ground, in which he makes allegations that FedEx Ground reads as inconsistent with the allegations in this case. The court does not perceive such inconsistencies as to make Mr. McHenry an inadequate class representative.

The Oregon *Slayman* plaintiffs say Oregon courts use the common law "right to control" test to decide whether a worker is an employee or an independent contractor, considering (1) the right to, or the exercise of, control; (2) the method of payment; (3) the furnishing of equipment; and (4) the right to fire. Under Oregon law, any contractual characterization of the relationship is not controlling, and the fact-finder is entitled to look beyond the terms of any contract and at the parties' behavior to determine the true nature of the relationship. The Oregon *Slayman* plaintiffs say the right to control inquiry can be resolved solely by reference to the Operating Agreement and FedEx Ground policies and procedures.

In their unjust enrichment claim, the Oregon *Slayman* plaintiffs say the Operating Agreement is illegal because it treats drivers as employees but calls them independent contractors, and a party to an illegal contract that is not equally at fault or blameworthy may repudiate the bargain and recover for the

107

value of the party's performance. They say they will have to show a benefit conferred upon FedEx Ground, awareness by FedEx Ground that it has received a benefit, and that it would be unjust under the circumstances to allow FedEx Ground to retain the benefit without paying for it. They say that to show an injustice, they will have to show one of the following: (1) the driver had a reasonable expectation of payment; (2) FedEx Ground reasonably should have expected to pay; or (3) nonpayment would defeat society's reasonable expectations of security of person and property.

To prove the drivers to be employees, FedEx Ground says, the Oregon *Slayman* plaintiffs will have to demonstrate that FedEx Ground had the right to control the manner and means of accomplishing the result, a decision that considers the right to, or the exercise of, control; the method of payment; the furnishing of equipment; the right to fire; and the terms of any contract between the parties. No single factor is dispositive, so FedEx Ground says each driver's individual situation must be evaluated.

FedEx Ground also says that some of the Oregon *Slayman* plaintiffs' claims, such as the unpaid wage, are governed by Oregon's "economic realities" test, which requires analysis of the degree of control the alleged employer exercised, the extent of the worker's investment, the worker's chance for profit or loss, skill and initiative the work requires, and the relationship's permanence.

As the court reads the parties' cited cases, Oregon law might vary somewhat depending on the nature of the claim, but would not require individual, driver-by-

driver analysis to determine whether the drivers are employees or independent contractors. *See* Schaff v. Ray's Land & Seafood Co., Inc., 45 P.3d 936, 941-942 (Or. 2002) (tort suit against driver's alleged employer: applying RESTATEMENT (SECOND) AGENCY § 220); Wallowalla Valley Stages, Inc. v. Oregonian Publ'g Co., 386 P.2d 430, 433-434 (Or. 1963) (same); Presley v. Bureau of Labor and Indus., 112 P.3d 485, 487-488 (Or. Ct. App. 2005) (claim for unpaid wages: court applied "economic reality" test only because no one objected to its use by state agency); Perri v. Certified Languages Int'l, LLC, 66 P.3d 531, 535-536 (Or. App. 2003) (alleged violation of wage and overtime laws: "Oregon courts generally have used a common law "right to control" test in determining the status of a worker. The principal factors under that test are (1) the right to, or the exercise of, control; (2) the method of payment; (3) the furnishing of equipment; and (4) the right to fire. No one factor is dispositive; they are to be viewed in their totality." (internal citations omitted)); Chard v. Beauty-N-Beast Salon, 941 P.2d 611, 613-614 (Or. Ct. App. 1997) (suit for unpaid wages; using state agency's eleven questions to determine whether requisite right to control existed); HDG Enters. v. National Council on Comp. Ins., 856 P.2d 1037, 1040 (Or. Ct. App. 1993) (liability for workers compensation premiums: "We conclude, under the facts found, that employer had the right to exercise control over how the installations were done, and in most cases exercised that control through the use of specifications in the work order."); Nichols v. Baggarley, 719 P.2d 914, 915-916 (Or. Ct. App. 1985) (defense to foreclosure of construction lien: "In Oregon, the principle common law

test for ascertaining whether an individual is an employee or an independent contractor is the employer's right to exercise control over the manner and means of accomplishing the result."); Lockard v. Murphy Co., 619 P.2d 283, 284 (Or. Ct. App. 1980) (personal injuries at work site: "The critical inquiry is whether the right of control exists and not whether the control is actually exercised. The principal factors demonstrating right of control are (1) direct evidence of right or exercise of control; (2) method of payment; (3) the furnishing of equipment; and (4) the right to fire." (internal citations omitted)).

FedEx Ground further says Oregon law doesn't allow rescission of an executed contract without a showing of actual fraud, accident, mistake, or insolvency. Even if a contract has been fully executed, though, Oregon courts allow a party who is not equally blameworthy to repudiate the bargain and recover for the value of the party's performance that was already provided. Mt. Joseph Cattle Co. v. Makin Farms, Inc., 42 P.3d 331, 334 (Or. Ct. App. 2003).

The court grants the Oregon *Slayman* plaintiffs' motion for class certification.

SOUTH DAKOTA

The South Dakota plaintiffs bring statutory claims for failure to indemnify, S.D. CODIFIED LAWS § 60-2-1, and unfair labor practices, S.D. CODIFIED LAWS § 60-9A-12, common law claims for rescission of the Operating Agreement and an accounting. They seek damages and injunctive and declaratory relief. The South

Dakota plaintiffs report there were 46 drivers in South Dakota when they filed their motion; FedEx Ground says that when former drivers are included, the class would consist of about 84 members. The South Dakota plaintiffs seek certification of the following class:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since March 16, 1999, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of South Dakota.

In addition to arguments common to other state class certification motions that already have been discussed in the Kansas ruling and this order, the parties disagree about whether South Dakota law will require individualized analysis and whether the proposed class is sufficiently numerous as to make joinder impractical.

FedEx Ground is correct that several courts have rejected proposed classes with less than 100 members as insufficiently numerous, *see, e.g.*, Spectrum Fin. Cos. v. Marconsult, Inc. 608 F.2d 377, 382 (9th Cir. 1979); Roman v. ESB, Inc., 550 F.2d 1343, 1349 (4th Cir. 1976), and the assumed geographical concentration of the proposed class adds another ingredient against class certification. Garcia v. Gloor, 618 F.2d 264, 267 (5th Cir. 1980). The issue under Rule 23, though, isn't whether joinder is impossible; the issue is whether joinder would be impractical, and the concept of impracticality encompasses inconvenience. Robidoux v. Celani,

987 F.2d 931, 935 (2d Cir. 1993). If the South Dakota plaintiffs are correct that each driver's employment status can be ascertained by reference to the Operating Agreement and FedEx Ground policies, there would be nothing practical about four score individual suits each presenting the same issue.

The court cannot agree with the South Dakota plaintiffs, though, that South Dakota law demands no individual inquiry.

South Dakota applies a two-part test to determine whether a person is an employee or an independent contractor. The first part of the test is whether the worker is free, both under any contract and in fact, from control or direction over how the services are performed. Egemo v. Flores, 470 N.W.2d 817, 821 (S.D. 1991); In re Hendrickson's Health Care Serv., 462 N.W.2d 655, 658-659 (S.D. 1990). South Dakota courts look to a variety of factors in resolving this issue. *See, e.g.,* Davis v. Frizzell, 504 N.W.2d 330, 331 (S.D. 1993) ("The right of control test includes consideration of the following factors: '(1) Direct evidence of the right of control; (2) The method of payment; (3) The furnishing of major items of equipment; and (4) The right to terminate the employment relationship at will and without liability.'" (*quoting* Egemo v. Flores, 470 N.W.2d 817, 821 (S.D. 1991))); Steen v. Potts, 61 N.W.2d 825, 826-828 (S.D. 1953) (considering contract's existence, fixed price, employment of assistance, furnishing of tools, control of progress, and other factor listed in RESTATEMENT, AGENCY, § 220). As is true of most of the other states discussed today, that part of the South Dakota test can

be resolved by looking solely at the Operating Agreement and FedEx Ground policies.

The second part of the South Dakota test, though, poses an inquiry that may be unique to South Dakota. The courts ask whether the worker or workers are customarily engaged in an independently established trade, occupation, profession or business. <u>Davis v. Frizzell</u>, 504 N.W.2d at 331; <u>Egemo v. Flores</u>, 470 N.W.2d at 82. For the worker to be so "customarily engaged" requires "an enterprise created and existing separate and apart from the relationship with the particular employer; an enterprise that will survive the termination of that relationship. The individual must have a proprietary interest in the enterprise to the extent that she can operate it without [hindrance] from any other individual." <u>In re Hendrickson's Health Care</u>, 462 N.W.2d at 659 (internal citation omitted).

This issue cannot be resolved on a class-wide basis; it requires driver-by-driver examination. In <u>Hendrickson's Health Care</u>, the court considered whether the workers held themselves out to the public as engaged in an independent business, whether they advertised their health care services, whether they had any separate clientele, and whether they had business premises or business cards. 462 N.W.2d at 659. In <u>Egemo v. Flores</u>, the court considered such things as whether the worker sought unemployment benefits upon termination and whether the worker had a proprietary interest in his equipment. 470 N.W.2d at 823.

To defend the South Dakota plaintiffs' claim of employee status, then, FedEx Ground must be allowed to present evidence of which drivers purchased their own equipment, drove their own equipment before (or after) signing the Operating Agreement, were incorporated, and so on. The common question — whether the Operating Agreement leaves the drivers free from control or direction over how the services are performed — does not predominate over other questions affecting other members of the proposed class within the meaning of Federal Rule of Civil Procedure 23(b)(3). Because of the role individualized findings may play in determining the requests for declaratory and injunctive relief, certification of a class also is improper under Federal Rule of Civil Procedure 23(b)(2).

Accordingly, the court denies the South Dakota plaintiffs' motion for class certification.


INDIANA

Indiana plaintiffs Roger Riewe, David Stacy, Jeff Shelton, Harold Bennett, and Rodney Owens, all former FedEx Ground Ground pickup and delivery drivers, seek certification of a statewide Indiana class under Federal Rules of Civil Procedure 23(b)(2) and (b)(3) to pursue claims for compensatory damages under Indiana's wage payment statutes, IND. CODE §§ 22-2-4-4 and 22-2-6-1, *et seq.*, for

rescission of the Operating Agreement, and for declaratory and injunctive relief.[4]

Their proposed class definition under both rules is:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since June 28, 1999, to provide package pick–up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the State of Indiana.

The Indiana plaintiffs contend the court's Rule 23(a) analysis in the Kansas order applies equally to their motion for class certification; their claims under the Indiana wage payment statutes and Indiana common law satisfy the requirements of Rule 23(b)(3) for the same reasons that the Kansas drivers asserting similar statutory and common law claims satisfied the requirements; and their claims for declaratory and injunctive relief satisfy the requirements of Rule 23(a) and (b)(2). They contend their claims are premised on the same fundamental common questions of law and fact as the Kansas plaintiffs because they all signed Operating Agreements with FedEx Ground that identify them as independent contractors and they all challenge the agreements' interpretation, execution, and enforceability. Like the Kansas plaintiffs, the Indiana plaintiffs assert that all of their claims hinge on whether they are employees under state law and that Indiana determines the employment relationship by the existence of the right to exercise control, not the actual control FedEx Ground exercised over some

___

[4] The plaintiffs asserted a fraud claim on behalf of the class in their amended complaint, but didn't include that claim in their motion for class certification or address it in their supporting and supplemental memoranda.

employees. Expressway Dodge, Inc. v. McFarland, 766 N.E.2d 26, 30 (Ind. Ct. App. 2002). The plaintiffs argue that while Indiana's substantive law on rescission diverges from Kansas law and doesn't require a showing of fraudulent misrepresentation or substantial performance, their position on class certification doesn't differ from the position addressed in the Kansas Order.

FedEx Ground argues two issues distinguish the Indiana plaintiffs from the Kansas plaintiffs and weigh against class certification: (1) the named plaintiffs lack standing to assert claims for injunctive and declaratory relief and are inadequate class representatives, O'Shea v. Littleton, 414 U.S. 488, 495-496 (1974); Robinson v. Chicago, 868 F.2d 959, 968 (7th Cir. 1989); and (2) individual questions predominate over common questions in determining employment status for purposes of the plaintiffs' statutory and common law claims. Moberly v. Day, 757 N.E.2d 1007, 1009-1010 (Ind. 2001); Mortgage Consultants, Inc. v. Mahaney, 655 N.E.2d 493, 496 (Ind. 1995). FedEx Ground also contends its defenses require individualized treatment and class certification is not a superior method for litigating the claims because there is no trial plan, the class definition is unmanageable, and the class members have a strong interest in controlling the outcome.

The court addressed and rejected FedEx Ground's challenges to certification of a class with respect to the plaintiffs' equitable claims in its ruling on the Tennessee plaintiffs' motion for class certification, and those challenges are no more persuasive in this case. FedEx Ground's arguments with respect to the need

116

for extrinsic evidence and individualized analysis are similar to those raised and rejected by the court in numerous other cases (including New Jersey, Tennessee, and Wisconsin) and are equally unpersuasive here.

FedEx Ground argues that the right to control is but one factor to be considered in determining employment status under Indiana law, "on par" with intent of the parties, and the extent of control, intent, and other fact-intensive factors (such as length of employment, kind of occupation, and who supplies the instrumentalities, tools, and place of work ) can't be resolved by reference to the Operating Agreement alone. Mortgage Consultants v. Mahaney, 655 N.E.2d at 496. When the Indiana plaintiffs have put contract interpretation "squarely in issue," as FedEx Ground contends they have in this case, extrinsic evidence will be required. *See* First Fed. Sav. Bank of Indiana v. Key Markets, Inc., 559 N.E.2d 600, 603 (Ind. 1990) (where a contract is ambiguous or uncertain in its terms, the intent of the parties must be determined by extrinsic evidence). Because the Indiana plaintiffs' claims turn on a multitude of common law factors that vary materially among class members, FedEx Ground concludes that class certification is inappropriate. Reich v. Homier Distrib. Co., 362 F. Supp. 2d 1009, 1013-1014 (N.D. Ind. 2005) (denying certification because "liability depended on an individual determination of each employee's duties"). The court disagrees.

Whether one acts as an employee or an independent contractor generally is a question of fact. Moberly v. Day, 757 N.E.2d at 1009; Mortgage Consultants v. Mahaney, 655 N.E.2d at 496. When the applicable statutes don't define the

term "employee," Indiana courts interpret the term in accordance with the common law definition and use the ten-factor analysis outlined in RESTATEMENT (SECOND) OF AGENCY § 220(2) (1958) to distinguish employees from independent contractors. Moberly v. Day, 757 N.E.2d at 1009-1010. Those factors include:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
> (b) whether or not the one employed is engaged in a distinct occupation or business;
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
> (d) the skill required in the particular occupation;
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
> (f) the length of time for which the person is employed;
> (g) the method of payment, whether by the time or by the job;
> (h) whether or not the work is a part of the regular business of the employer;
> (i) whether or not the parties believe they are creating the relation of master and servant; and
> (j) whether the principal is or is not in business.

757 N.E.2d at 1010 (quoting RESTATEMENT (SECOND) OF AGENCY § 220(2) (1958)).

While no single factor is dispositive, the right to control is the most important factor and is given the greatest weight in determining employment status. Moberly v. Day, 757 N.E.2d at 1010; GKN Co. v. Magness, 744 N.E.2d 397, 402 (Ind. 2001); Carter v. Property Owners Ins. Co., 846 N.E.2d 712, 718 (Ind. Ct. App. 2006); Jennings v. St. Vincent Hosp. and Health Care Ctr., 832 N.E.2d 1044, 1052 (Ind. Ct. App. 2005). It is the right, and not the actual exercise of control, that is significant. Stone v. Pinkerton Farms, Inc., 741 F.2d 941, 943 (7th Cir.

1984); Expressway Dodge v. McFarland, 766 N.E.2d at 30; Dague v. Fort Wayne Newspapers, Inc., 647 N.E.2d 1138, 1140 (Ind. Ct. App. 1995); Gibbs v. Miller, 283 N.E.2d 592, 595 (Ind. Ct. App. 1972).

In Moberly and Reich, two of the cases upon which FedEx Ground relies, there was no employment contract or formal agreement, so it was necessary to consider other evidence in determining liability. But when a formal contract exists, as it does in this case, the right of control and other relevant factors pertaining to employment status often can best be determined by the contract's terms. *See* GKN Co. v. Magness, 744 N.E.2d at 401; Myers v. Myers, 560 N.E.2d 39, 44 (Ind. 1990); Jennings v. St. Vincent Hosp. and Health Care Ctr., 832 N.E.2d at 1052.

Mortgage Consultants v. Mahaney, 655 N.E.2d 493 (Ind. 1995), doesn't hold otherwise or support FedEx Ground's assertion that Indiana law requires the court to engage in an individual analysis of each driver in determining employment status. Mortgage Consultants involved a statutory claim under one of Indiana's wage payment statutes, IND. CODE § 22-2-5-2, by an individual who executed an "Independent Contractors Agreement," but alleged that he was an employee entitled to benefits under the statute. The trial court found that Mr. Mahaney was an employee as a matter of law and granted summary judgment in his favor. The Indiana Court of Appeals affirmed, and the mortgage company petitioned for transfer. The Indiana Supreme Court held that "while the parties' clear expression of intent normally controls in questions involving employment contracts, it is but one factor of many considered in determining whether a hired

party is entitled to statutory benefits, unless the statute indicates otherwise." 655 N.E.2d at 496. The court agreed generally "that an employer-employee relationship may be found despite intent to create only an independent contractor relationship if enough indicia of an employer-employee relationship exist," but found the contract itself evidenced an express intent to create an independent contractor-principal relationship and provided for payment by commission (factors favoring independent contractor status) and created genuine issues of fact precluding the entry of summary judgment in Mr. Mahaney's favor. 655 N.E.2d at 496-497. The court accordingly reversed and remanded for further proceedings.

The court grants the Indiana plaintiffs' motion for class certification with respect to their claims for compensatory damages under Indiana's wage payment statutes, rescission, and declaratory and injunctive relief.

## Iowa

Iowa plaintiffs Tim Johnson and Aaron Ver Steeg, former FedEx Ground Ground pickup and delivery drivers dispatched out of terminals in Iowa, seek certification of a statewide Iowa class under Federal Rule of Civil Procedure 23(b)(2) and (b)(3) to pursue claims for violations of Iowa's wage deduction statute, IOWA CODE § 91A.5, rescission, unjust enrichment and *quantum meruit*, and declaratory and injunctive relief.[5] The proposed class definition is:

---

[5] The Iowa plaintiffs assert a claim of fraud on behalf of the class as their Second Cause of Action, but didn't include that claim in the motion for class certification.

All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since August 16, 1999, to provide package pick–up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the State of Iowa.

Like their counterparts, the Iowa plaintiffs' claims hinge on whether they are employees under state law — a determination the Iowa plaintiffs contend turns on whether FedEx Ground had the right to control the drivers' work, not the actual control FedEx Ground exercised over some employees, Iowa Mut. Ins. Co. v. McCarthy, 572 N.W.2d 537, 542 (Iowa 1997); Nelson v. Cities Serv. Oil Co., 146 N.W.2d 261, 264-265 (Iowa 1966), and that determination can be made on the basis of the terms of the agreement and common objective criteria. See Breedlove v. Tele-Trip Co., No. 91 C 5702, 1993 WL 284327 (N.D. Ill. July 27, 1993); LaFleur v. LaFleur, 452 N.W.2d 406, 409 (Iowa 1990). The Iowa plaintiffs contend the Kansas Order also provides the complete framework for rejecting FedEx Ground's challenges to the Iowa plaintiffs' adequacy of representation and standing to pursue claims for declaratory and injunctive relief.

In response, FedEx Ground reasserts its position that: (1) as former contractors, the named plaintiffs have no stake in the future conduct at which claims for injunctive and declaratory relief are targeted, and so lack standing to pursue those claims and are inadequate class representatives, O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974); Robinson v. City of Chicago, 868 F.2d 959, 968 (7th Cir. 1989); and (2) individual questions predominate over common questions in

determining employment status, wage deductions, and statute of limitations defenses and can't be resolved by reference to the Operating Agreement alone. FedEx Ground contends that Iowa courts consider multiple factors, including the parties' intent, Iowa Mut. Ins. Co. v. McCarthy, 572 N.W.2d at 543; D & C Express, Inc. v. Sperry, 450 N.W.2d 842, 844 (Iowa 1990); no single factor is determinative, Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323-324 (1992); Peterson v. Pittman, 391 N.W.2d 235, 237 (Iowa 1986); and the fact-finder will need to go beyond the Operating Agreement's terms and conduct an individualized inquiry into the parties' intent, method of payment, degree of independence, extent to which drivers furnish their own tools, and right to control. Clinton Physical Therapy Servs., P.C. v. John Deere Health Care, Inc., 714 N.W.2d 603, 615 (Iowa 2006); Iowa Mut. Ins. Co. v. McCarthy, 572 N.W.2d at 543-544; LaFleur v. LaFleur, 452 N.W.2d at 408-409.

The court addressed and rejected FedEx Ground's arguments about the plaintiffs' standing and adequacy of representation in its ruling on the Tennessee plaintiffs' motion for class certification, and the arguments are no more persuasive here.

Iowa courts apply a multi-factor test in determining whether an individual is an employee or an independent contractor, but the number of factors and the importance of those factors varies. See Iowa Mut. Ins. Co. v. McCarthy, 572 N.W.2d at 542-43; Peterson v. Pittman, 391 N.W.2d at 237; Caterpillar Tractor Co. v. Shook, 313 N.W.2d 503, 505 (Iowa 1981). In Peterson v. Pittman, 391 N.W.2d

at 238, the court considered the nature of the purported employee's business, who had the right to control the work, who was responsible for payment of wages, and who provided the equipment to accomplish the work. In Caterpillar Tractor Co. v. Shook, 313 N.W.2d 503 (Iowa 1981), the court considered:

> (1) the right of selection, or to employ at will, (2) responsibility for payment of wages by the employer, (3) the right to discharge or terminate the relationship, (4) [the] right to control the work, and (5) the identity of the employer as the authority in charge of the work or for whose benefit it is performed.

313 N.W.2d at 505. In Nelson v. Cities Serv. Oil Co., 146 N.W.2d 261 (Iowa 1966), and Iowa Mut. Ins. Co. v. McCarthy, 572 N.W.2d 537 (Iowa 1997), the five factors just quoted were considered, as well as eight more factors bearing on independent contractor status:

> (1) the existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price; (2) independent nature of the business or distinct calling; (3) his employment of assistants, with the right to supervise their activities; (4) his obligation to furnish necessary tools, supplies, and materials; (5) his right to control the progress of the work, except as to final results; (6) the time for which the workman is employed; (7) the method of payment, whether by time or by job; (8) whether the work is part of the regular business of the employer.

Iowa Mut. Ins. Co. v. McCarthy, 572 N.W.2d at 543 (*quoting* Nelson v. Cities Serv. Oil Co., 146 N.W.2d at 264-265). While the parties' intent is yet another factor to be considered, "the primary focus is on the extent of control by the employer over the details of the alleged employee's work." Iowa Mut. Ins. Co. v. McCarthy, 572 N.W.2d at 542-543; *see also* LaFleur v. LaFleur, 452 N.W.2d at 408; Nelson v. Cities Service Oil Co., 146 N.W.2d at 265.

As is true in South Dakota and most of the other states, a determination of employment status using the five-factor test identified in <u>Caterpillar Tractor Co. v. Shook</u> could be made solely on the basis of the Operating Agreement and generally applicable FedEx Ground policies. *See* <u>LaFleur v. LaFleur</u>, 452 N.W.2d at 407-410.. Inquiry into the additional factors considered in <u>Nelson v. Cities Serv. Oil Co.</u> and <u>Iowa Mut. Ins. Co. v. McCarthy</u>, however, would require a driver-by-driver examination and could not be resolved on a class-wide basis. To defend the plaintiffs' claim of employee status, FedEx Ground must be allowed to present evidence of which drivers were incorporated, purchased and used their own equipment, hired and supervised assistants, and so on. The common question — whether the Operating Agreement leaves the drivers free from control or direction over how the services are performed — does not predominate over other questions affecting members of the proposed class within the meaning of Federal Rule of Civil Procedure 23(b)(3). Certification of a class with respect to the claims for declaratory and injunctive relief under Federal Rule of Civil Procedure 23(b)(2) would also be improper, given the role individualized findings may play in determining the type of relief available.

Accordingly, the court denies the Iowa plaintiffs' motion for class certification.

WEST VIRGINIA

The West Virginia plaintiffs — two former Home Delivery drivers — bring claims for damages under the West Virginia Consumer Credit and Protection Act, W. VA. CODE § 46A-1-101, *et seq.*, and under W. VA. CODE § 21-5-1, *et seq.* involving wage deductions, and a claim for unjust enrichment. They also seek the Operating Agreement's rescission, an accounting, and declaratory and injunctive relief. They seek certification of the following class under Rule 23(b)(2) for their declaratory and injunctive claims and under Rule 23(b)(3) for the remaining claims:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since September 25, 2001 to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of West Virginia.

The West Virginia plaintiffs' arguments for class certification parallel those of the plaintiffs in most other states: (1) the class is sufficiently numerous, with 56 active drivers at the time of their motion; (2) the issue of their employment status under the Operating Agreement and FedEx Ground policies (employees or independent contractors) is common to the class; (3) the West Virginia plaintiffs' claims are typical of the absent class members; (4) the West Virginia plaintiffs are adequate class representatives; (5) the issue of their employment status under the Operating Agreement and FedEx Ground policies predominates over other issues; (6) the class action is superior to other methods of resolution of the West Virginia drivers' claims; and (7) with respect to treatment of the drivers as employees or

independent contractors, FedEx Ground has acted on grounds generally applicable to the class. Apart from the provisions and impact of West Virginia law, the West Virginia plaintiffs' arguments are identical to those raised in other states.

FedEx Ground responds with the same arguments it used in other states: (1) the plaintiffs, former single-work-area Home Delivery drivers from the same terminal (a) are situated differently than other putative class members, (b) lack standing to seek prospective relief, (c) cannot represent multiple work area drivers and have interests at odds with other single work area drivers, and (d) cannot represent Ground drivers or drivers from other terminals; (2) the class is too ill-defined because it requires individualized determination of who was "full-time"; (3) the class (which FedEx Ground calculates as including 73 former drivers, as well) is insufficiently numerous; (4) West Virginia law requires a driver-by-driver determination of status as employee or independent contractor, and (if the drivers are found to be employees) individual determination of the state law claims; (5) class certification isn't appropriate where contractor status is at issue; and (6) a class action is not a superior method of proceeding because (a) the West Virginia plaintiffs offer no trial plan, and (b) putative class members have a strong interest in controlling the litigation's outcome. Apart from the provisions and impact of West Virginia law, FedEx Ground's arguments against a West Virginia class are identical to those raised in other states.

This opinion (in tandem with the Kansas ruling) already has addressed the parties' arguments to the extent they are not based on West Virginia law, and those discussions needn't be repeated.

FedEx Ground bases its position on the proposition that, when determining whether a worker is an employee, West Virginia law gives the right to control strong, but not dispositive, weight and requires analysis of each of the four factors in the common law test under a case's individual facts. The West Virginia plaintiffs argue that the power of control — not the exercise of control or the other factors in the common law test — is the determinative inquiry.

The court's reading of West Virginia law matches that of the West Virginia plaintiffs. West Virginia courts look to four factors in deciding the issue — selection and engagement of the servant, the method of compensation, the right to fire, and the power of control — but the power of control is "determinative." Burless v. West Virginia Univ. Hosps., Inc., 601 S.E.2d 85, 91 (W. Va. 2004). FedEx Ground says West Virginia courts don't view the right to control as determinative, and says that in Mountain Lodge Ass'n v. Crum & Forster Indem. Co., 558 S.E.2d 336, 344 (W. Va. 2001), the court explained that the language in cases that the right to control is the "controlling" factor means that it is the "major" factor. Mountain Lodge says no such thing. In the cited passage, the court wrote, largely quoting an earlier case (Myers v. Workmen's Comp. Comm'r, 148 S.E.2d 664 (W. Va. 1966)), that:

This Court has stated that "[t]o ascertain whether a workman is an employee or an independent contractor each case must be resolved on its own facts and ordinarily no one feature of the relationship is controlling, but all must be considered together." Syl. Pt. 1, *Myers,* 150 W.Va. at 563, 148 S.E.2d at 665. However, we have identified the major factor: "In determining whether a workman is an employee or an independent contractor, the controlling factor is whether the hiring party retains the right to control and supervise the work to be done." Syl. Pt. 2, *Myers,* 150 W.Va. at 563, 148 S.E.2d at 665.

Mountain Lodge Ass'n v. Crum & Foster, 558 S.E.2d at 344.

The Mountain Lodge court had no need to offer FedEx Ground's hypothesized explanation to square its holding with the Myers case. The Myers court had provided its own explanation:

The controlling factor in determining the status of a workman is whether the hiring party retains the right to control and supervise the work to be done. Whether the control is actually exercised is unimportant. The right to exercise control and supervision is the determinative element.

Myers v. Workmen's Comp. Comm'r, 148 S.E.2d at 667. Other cases in which FedEx Ground finds hopeful language are to the same effect. Sipple v. Starr, 520 S.E.2d 884, 888 (W. Va. 1999) ("'If the right to control or supervise the work in question is retained by the person for whom the work is being done, the person doing the work is an employee and not an independent contractor, and the determining factor in connection with this matter is not the use of such right of control or supervision but the existence thereof in the person for whom the work is being done.'"); Spencer v. Travelers Ins. Co., 133 S.E.2d 735, 739 (W. Va. 1963) ("If the right to control or supervise the work in question is retained by the person

for whom the work is being done, the person doing the work is an employee and not an independent contractor. The determining factor to be considered in connection with this case or any other of like nature is whether the right of control or supervision over the work done existed in the person for whom the work was done, and not the use of such control or supervision." (internal citations omitted)); *accord* Fitzwater v. Harding, 510 S.E.2d 286, 288 (W. Va. 1998) ("'[T]he fourth [factor], the power of control, is determinative.'" (*quoting* Paxton v. Crabtree, 400 S.E.2d 245, 252 (1990))).

FedEx Ground cites C & H Taxi Co. v. Richardson, 461 S.E.2d 442, 446 (W. Va. 1995), for the proposition that West Virginia courts analyzing the right of control "often" look beyond the parties' contract to see what the parties do in the real world. C & H Taxi, though, was a worker's compensation case. In worker's compensation cases in West Virginia, "[i]t is ordinarily considered when one person is retained to render a service for another that the relationship of employer and employee exists. To overcome this presumption it is incumbent upon the one who hired the workman to show that the latter is an independent contractor." Myers v. Workmen's Comp. Comm'r, 148 S.E.2d at 666 (internal citations omitted). This case is not a worker's compensation case.

Nor can the court find anything in the cited cases to persuade it that if the West Virginia plaintiffs prevail on their contention that the Operating Agreement and generally applicable FedEx Ground policies make the drivers employees,

individual analysis will be required on the West Virginia plaintiffs' state law claims.

One additional point needs to be addressed. In most of its class certification briefs, FedEx Ground argues that fully executed contracts cannot be rescinded. FedEx Ground offers but a single, hilariously imaginative citation of West Virginia authority for that proposition: Washington v. Burnett, 4 W. Va. 84 (W. Va. 1870). Supreme court decisions don't expire of their own terms, and can have remarkable shelf lives if not limited or overturned by a statute, rule, or subsequent judicial opinion. One would not expect an inconsistent statute, rule, or judicial opinion to threaten the cited case's holding. Washington was a suit to rescind a bond that could be paid in Confederate dollars — an arrangement that became less favorable to the bondholder after General Lee surrendered at Appomattox Court House. The court held:

> The doctrine, therefore, clearly deducible from this case is, that whenever a contract in confederate currency has been executed between the parties, it will leave them to rest in the condition in which they have placed themselves.

Washington v. Burnett, 4 W. Va. at 95. The court doesn't understand FedEx Ground to have paid any of its West Virginia drivers in Confederate money.

Whether the West Virginia drivers are employees or independent contractors under West Virginia law can be resolved solely by reference to the Operating Agreement and generally applicable FedEx Ground policies. That common issue predominates over all other issues. This holding, combined with the earlier

dispositions in this opinion and the Kansas opinion of the parties' other arguments, leads the court to conclude that the West Virginia's class certification motion should be granted.

VIRGINIA

The Virginia plaintiffs seek class certification under Federal Rule of Civil Procedure 23(b)(3) for their common law claims for rescission and *quantum meruit* recovery for services rendered and their claim for declaratory relief. The plaintiffs also ask the court to certify a class under Rule 23(b)(2) for their declaratory relief claims. They seek certification of the following class under both rules:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since July 3, 1998, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Virginia.

The Virginia plaintiffs say their proposed class meets the numerosity requirement. Three hundred sixty-eight drivers currently are under contract with FedEx Ground, and even more drivers entered into agreements during the class period but no longer drive for FedEx Ground. As to commonality, the Virginia plaintiffs argue that the categorical determination of whether they are employees rather than independent contractors under Virginia law raises common questions of law and fact. The Virginia plaintiffs claim they are entitled to rescission and may recover compensation under the principle of *quantum meruit* because the

standard form Operating Agreement violates Virginia's public policy against knowingly coercing an individual to falsely declare employment status. VA. CODE ANN. § 58.1- 485.1. Similarly, the Virginia plaintiffs seek a declaration that they have been misclassified as independent contractors under Virginia law. The named plaintiffs say they are members of the class and their claims are typical of the class they seek to represent. They also claim they are adequate class representatives and their counsel is experienced and competent.

The Virginia plaintiffs present the same arguments as most other plaintiffs in the docket with regard to the requirements of Rule 23(b)(3): they argue that common issues of law and fact predominate and class adjudication is superior to other available methods of resolution; they also argue their request for declaratory judgment supports certification of a class under Rule 23(b)(2).

FedEx Ground raises several arguments against class certification. First, FedEx Ground claims the Virginia named plaintiffs are inadequate representatives. FedEx Ground notes that both named plaintiffs worked as Home Delivery, rather than Ground, drivers, and FedEx Ground contends that Ground and Home Delivery drivers operate different delivery networks, interact with different management, and are subject to different Operating Agreements. Specifically, Home Delivery drivers have a proprietary interest by zip code, while Ground drivers are interested in entire geographic regions, leaving large areas in which no Home Delivery driver has a proprietary interest. Home Delivery drivers don't participate in the Flex Program, and Ground drivers don't experience driver

audits. FedEx Ground also maintains the named plaintiffs are inadequate because both are single area contractors who can't represent the interests of multiple area contractors, whose business differs from that of a single area contractor in terms of investment in the business, hiring of employees, and ability to profit. The court addressed a nearly identical objection made by FedEx Ground to the Alabama class certification, finding that the differences between Ground and Home Delivery drivers and between single work area and multiple work area contractors are not so significant as to weigh against class certification. For the reasons previously stated, there is no reason to believe the named Virginia plaintiffs will not vigorously pursue their claims on behalf of the class as required by Rule 23(a)(4).

FedEx Ground also argues Virginia law requires individualized evidence to resolve the issue of independent contractor status. FedEx Ground claims that while the right to control is one factor to consider, courts ultimately must look beyond the employment contract to the parties' actual conduct to determine employment status. In its supplemental memorandum on class certification, FedEx Ground cites Atkinson v. Sachno, 541 S.E.2d 902, 905 (Va. 2001), for this proposition, noting that "the individual circumstances of each case play an important part in answering" whether the relationship in question is that of an independent contractor or an employee. While the Atkinson court noted the use of four factors to resolve the employment issue: "(1) selection and engagement; (2) payment of compensation; (3) power of dismissal; and (4) power to control the work of the individual," the court explained that "[i]t is well established that the

fourth factor, the power of control, is determinative." Id. (*citing* Hadeed v. Medic-24, Ltd., 377 S.E.2d 589, 594-595 (Va. 1989)). Despite this holding, the court looked beyond the detailed consulting contract and examined the intent of the parties as well as their actual conduct. Atkinson v. Sachno, 541 S.E.2d at 906 ("It is only by consideration of all the facts pertaining to the relationship in any case, including provisions of the contract, the actual conduct of the parties, and the conditions of the business in which they are engaged, that it can be determined whether the [individual] is endowed with that control over his own methods and means of doing work which is the test of an independent contractor.").

FedEx Ground also points to Richmond Newspapers, Inc. v. Gill, 294 S.E.2d 840 (Va. 1982), in which the court considered whether a route carrier for the plaintiff newspaper corporation was an employee or an independent contractor for workmen's compensation purposes. Similar to Atkinson, the court noted that the "power of control is the most significant indicium of the employment relationship; other factors merely help to elucidate the manner and degree of control." 294 S.E.2d at 843. In examining the newspaper's power to control, the court looked not only at the written contract between the parties but also at "the evidence concerning performance under that contract," including the testimony of several witnesses. Id. Although the court found the contract was indicative of the newspaper's power to control the result sought to be accomplished, it concluded that the circumstances surrounding the parties' actual conduct revealed that the newspaper exercised virtually no control over the means and methods employed

by the route carrier. Id. at 845. Specifically, the court addressed the newspaper's control over when and where deliveries were made, work hours, and the engagement of helpers and found that the route carriers were operating as independent contractors.

Similarly, the parties' written contract was not dispositive in McDonald v. Hampton Training Sch. for Nurses, 486 S.E.2d 299 (Va. 1997), in which the court concluded that a physician was an independent contractor rather than an employee of the defendant hospital. In addition to reciting the four factor test for establishing employment status, the McDonald court added that "[i]t is immaterial whether the employer exercises this control; the test is whether the employer has the power to exercise such control." Id. at 301 (citing Smith v. Grenadier, 127 S.E.2d 107, 111-112 (Va. 1962)); see also Virginia Empl. Comm'n v. A.I.M. Corp., 302 S.E.2d 534, 539-540 (Va. 1983) ("The potential power of control, not the actual exercise of control, is the important element."). Instead of focusing solely on the contractual right to control, however, the court considered other factors, such as payment, and concluded that employment status was a question of fact properly left to the jury for determination. McDonald v. Hampton Training Sch., 486 S.E.2d at 304; see also Intermodal Servs., Inc. v. Smith, 364 S.E.2d 221, 224 (Va. 1988) ("The extent of the reserved right of control may be determined by examining the performance of the parties in the activity under scrutiny.")

More recently, the Virginia Supreme Court reiterated "that there are abundant tests and criteria that can be used to determine whether the

relationship between the individual and [the alleged employer] is that of an independent contractor or an employee." Ogunde v. Prison Health Servs., Inc., 645 S.E.2d 520, 523 (Va. 2007) (*citing* Atkinson v. Sachno, 541 S.E.2d at 905)). Virginia federal courts have applied this same reasoning and turned to actual conduct in determining employment status. In Stith v. Thorne, 488 F. Supp. 2d 534, 550-551 (E.D. Va. 2007), for example, the court relied heavily on the parties' written contract, but also took into consideration that the alleged employer did not monitor its employees' behavior or establish guidelines for how they were to meet their goals even though it had the power to do so.

While a determination of employment status could be made solely on the basis of the standard Operating Agreement, Virginia law requires a driver-by-driver examination in light of the circumstances of the particular case — an examination that cannot be resolved on a class-wide basis. Under the Virginia standard, FedEx Ground must be allowed to present evidence of who sets the drivers' schedules, ownership of equipment, and so on, which may necessitate the use of extrinsic evidence. The common question of whether the standard Operating Agreement provides FedEx Ground the right to control the work of its drivers does not predominate over other questions affecting members of the class within the meaning of Rule 23(b)(3). Given the role of extra-contractual evidence in determining employment status under Virginia law, certification of a class with respect to the plaintiffs' claims under 23(b)(2) would also be improper. Accordingly, the court denies the Virginia plaintiffs' motion for class certification.

The named Illinois plaintiffs — former drivers for Ground and Home Delivery — bring claims for damages for violations of the Illinois Wage Act, 820 ILL. COMP. STAT. 115/1, *et seq.*, and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILL. COMP. STAT. 505/1, *et seq.*, and claims for rescission, declaratory judgment, and injunctive relief. They seek to certify a class under Rule 23(b)(2) for the declaratory and injunctive relief claims, and a class under Rule 23(b)(3) for their statutory and rescission claims. They seek to certify the following class under both rules:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since April 20, 1999, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Illinois.

The Illinois plaintiffs raise familiar arguments in support of their certification motion: the class is sufficiently numerous (443 active drivers when the motion was filed, with more former drivers); joinder is impractical; questions of law and fact (whether the Operating Agreement makes drivers employees or independent contractors) are common to the class and predominate over individual questions; the named plaintiffs' claims are typical of absent class members because the named plaintiffs have suffered the same types of injury, and the named plaintiffs are adequate representatives; a class action is superior to other methods of resolution because it provides a single forum to determine the

drivers' status, makes resolution feasible for those with small claims, and protects drivers who might fear retaliatory termination; and through use of the Operating Agreement, FedEx Ground has acted on grounds generally applicable to the class. Other than the state law-sensitive arguments, these arguments are identical to those raised in other cases in this docket.

FedEx Ground, too, raises familiar arguments — identical to those raised in other cases in this docket — in opposition to class certification: as former drivers, the named plaintiffs lack standing to seek (and so cannot represent a class seeking) prospective relief and have differing interest from current drivers that would be in the class; as single work area drivers, the named plaintiffs are inadequate representatives for multiple work area drivers; Illinois law will require driver-by-driver analysis to determine whether any drivers are employees; class certification is inappropriate when contractor status is at issue; the Illinois plaintiffs offer no trial plan and, by failing to define "full time," have offered an unmanageable class definition. As with the Illinois plaintiffs' arguments, FedEx Ground's arguments (other than those dependent on state law and one discussed in the next paragraph) are identical to those raised in other cases in this docket. All of the arguments mentioned to this point concerning certification of an Illinois class have been discussed in this opinion or the Kansas class certification order and resolved in favor of class certification. Those rulings apply to the Illinois motion, as well.

FedEx Ground also argues that named plaintiff Diane Gordon gave false interrogatory responses and erstwhile named plaintiff Michael Griffin turned out not to work for FedEx Ground. As with the false interrogatory answers given (and corrected) by the New Jersey plaintiffs, FedEx Ground's argument about Ms. Gordon's responses don't persuade the court that the she can't represent the class adequately. Mr. Griffin's situation would be a matter of far more serious concern were Mr. Griffin seeking to represent the Illinois class (he apparently deceived even his attorney), but he is no longer a named plaintiff.

The Illinois class certification issue, then, turns on whether the drivers' status as employees or independent contractors can be determined solely by reference to the Operating Agreement and FedEx Ground policies. The Illinois plaintiffs' claims trigger two different tests for determining whether one is an employee.

The Illinois Wage Act contains its own definition of employee. It provides that "any individual permitted to work by an employer in an occupation" is an employee, and then creates an exemption to the Act's coverage for any person who is free — both under the contract and in practice — from control and direction over the work's performance, whose work is performed either outside the employer's usual course of business or outside the employer's places of business, and who is in an independently established business. 820 ILL. COMP. STAT. 115/2. Each element of the exemption must be present for the service provider to be an independent contractor for purpose of the Wage Act. Novakovic v. Samutin, 820

N.E.2d 967, 973 (Ill. App. Ct. 2004); <u>Byung Moo Soh v. Target Mktg. Sys., Inc.</u>, 817 N.E.2d 1105, 1109 (Ill. App. Ct. 2004). Because the putative employer must demonstrate the exemption's applicability, the Wage Act creates a near-presumption that a worker is an employee rather than an independent contractor. *See* <u>Adams v. Catrambone</u>, 359 F.3d 858, 864 (7th Cir. 2004)

The Illinois plaintiffs' other claims rely on the state's common law definition of employee. "Common-law factors to consider in examining a worker's potential status as an employee include 'the amount of control and supervision, the right of discharge, the method of payment, the skill required in the work to be done, the source of tools, material or equipment, and the work schedule.' Of these, control of the manner in which work is done is considered the most important." <u>Mitchell v. Department of Corr.</u>, 856 N.E.2d 593, 598 (Ill. App. Ct. 2006) (internal citations omitted); *see also* <u>Roberson v. Industrial Comm'n</u>, 866 N.E.2d 191, 200 (Ill. 2007) ("whether the employer may control the manner in which the person performs the work; whether the employer dictates the person's schedule; whether the employer pays the person hourly; whether the employer withholds income and social security taxes from the person's compensation; whether the employer may discharge the person at will; and whether the employer supplies the person with materials and equipment. [W]e have also considered whether the employer's general business encompasses the person's work." (internal citation omitted)); <u>Warren v. Williams</u>, 730 N.E.2d 512, 518 (Ill. App. Ct. 2000) ("Many factors in the relationship of the parties are to be considered in making the decision, and no

single one is determinative. The most important factor is the right to control the manner in which the work is done. Others include the method of payment, the work schedule, the right to discharge, who provides the tools, materials or equipment, the skill required in the work to be done, whether the worker's occupation is related to that of the employer, and who deducts or pays for insurance, social security and taxes." (internal citations omitted)).

In the context of other states, this opinion has noted that courts looking for either a right to control or actual exercise of control reasonably look beyond the "employment" agreement for actual control if the agreement doesn't establish a sufficient right to control, but needn't look further if the agreement creates a right to control. Such situations are among the Illinois cases the plaintiffs and FedEx Ground cited.

For example, In Roberson v. Industrial Comm'n, 866 N.E.2d at 200-201, the agreement didn't create an employment relationship, but the court found ample actual exercise of control to uphold the finding that Roberson was an employee. Similarly, in Mitchell v. Department of Corrections, 856 N.E.2d at 601-602, the agreement between the Department of Corrections and Mitchell's employer (Prison Health Services) provided the Department with a right to exercise considerable control over Mitchell's training, conduct of examinations, hours, and absences, but didn't provide enough control over the manner in which Mitchell performed his duties to make him the Department's employee. The court examined non-contractual aspects of the relationship between the Department and Mitchell to

evaluate the control actually exercised. In <u>Warren v. Williams</u>, 730 N.E.2d at 517-518, a village attorney's contract with the village provided too little control over the attorney to establish an employment relationship, so the court examined whether the attorney had other clients, whether the attorney had his own office, how the attorney billed the village, and how much control the village actually exercised over the manner or detail used in the attorney's work for the village.

But unlike the laws of several other states already discussed in this opinion, Illinois law seems to contemplate that even when the "employment" agreement vests enough control in the hiring party to create an employment relationship, the inquiry still must extend into the parties' extracontractual relationship.

For example, in <u>Wenholdt v. Industrial Comm'n</u>, 447 N.E.2d 404, 406 (Ill. 1983), Wenholdt claimed to be an employee because a clause of his contract gave the hiring party "the right to control the manner, means and details of the performance of services by the musicians including the leader as well as the ends to be accomplished." The court examined the actual working relationship nonetheless, and upheld the Industrial Commission's finding that Wenholdt was an independent contractor. Similarly, in <u>Area Transp. Co. v. Industrial Comm'n</u>, 465 N.E.2d 533, 536-537 (Ill. App. Ct. 1984), the court noted that the agreement (an equipment lease) "clearly place[d] the right to control in" the hiring party, but still went beyond the equipment lease in finding evidence sufficient to support the Commission's finding that Fiedler was an employee.

Further, the structure of the Illinois Wage Act virtually requires a court to go beyond the terms of an agreement claimed to create an employment relationship. As already noted, the Wage Act creates something akin to a presumption of employment, *see* <u>Adams v. Catrambone</u>, 359 F.3d at 864, and casts upon the hiring party the burden to establish three requisite facts to rebut the presumption. Those requisite facts include the nature of the hired party's business or profession, which is unlikely to be determined by the contract itself. As was true in Massachusetts, Illinois law broadens the scope of relevant evidence by placing a burden on the party claiming not to be an employer.

Illinois law poses questions upon which FedEx Ground must be allowed to present driver-by-driver evidence. When the inquiry broadens beyond whether the right to control is established in the FedEx Ground Operating Agreement, analysis under Illinois law might deem some, but not all, drivers to be employees. Or it may deem some, but not all, drivers to be employees under the statutory test that governs the Wage Act claim but not under the common law test that covers the Consumer Fraud Act and rescission claims.

The effects of the Operating Agreement's terms do not predominate over the individual circumstances of 400 to 1,000 present and former drivers in Illinois. The Illinois plaintiffs' motion for class certification must be denied.

FLORIDA

The Florida plaintiffs seek class certification under Federal Rule of Civil Procedure 23(b)(3) of their claims for actual damages for violation of the Florida Deceptive and Unfair Trade Practices Act, rescission of the standard Operating Agreement, and declaratory relief. They further seek certification of a class under Rule 23(b)(2) for injunctive relief under the Trade Practices Act and declaratory judgment. They seek certification of the following class under both rules:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since June 28, 2000, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Florida.[6]

The Florida plaintiffs' arguments in support of class certification are similar to those in most other states. The Florida plaintiffs assert that the proposed class is sufficiently numerous, as there are 744 current drivers in Florida, not including additional proposed class members who drove in Florida during the class period but have since left. They further contend the issue of their employment status presents questions of law and fact common to the class under each of their theories of recovery, namely: rescission, declaratory and injunctive relief, and actual damages under the Trade Practices Act. The named plaintiffs say their claims are typical of the absent class whom they seek to represent, and they are adequate class representatives.

---

[6] The plaintiffs propose a class period that begins four years prior to the commencement of this lawsuit based on the statute of limitations applicable to their claims under the FDUTPA.

The Florida plaintiffs also present the same arguments as most other plaintiffs in the docket with regard to the requirements of Rule 23(b)(3), maintaining that common issues of law and fact predominate over other issues and class adjudication is superior to other available methods of resolution of the Florida drivers' claims. They argue their request for declaratory judgment and injunctive relief under the Trade Practices Act supports certification of a class under Rule 23(b)(2).

In response, FedEx Ground argues that the plaintiffs' Trade Practices Act claims raise issues that will require individualized evidence. Specifically, the Florida plaintiffs allege that FedEx Ground classified its drivers as independent contractors in the standard Operating Agreement, but treated them as employees, constituting deceptive or unfair trade practices as defined by the Trade Practices Act. FedEx Ground contends the plaintiffs must show an actual injury to recover under the Trade Practices Act, which would require driver-specific evidence regarding whether FedEx Ground's alleged misclassification deceived a particular driver. Relying on <u>Hutson v. Rexall Sundown, Inc.</u>, 837 So. 2d 1090, 1091-1092 (Fla. Dist. Ct. App. 2003), FedEx Ground argues that because they read the provisions of the standard Operating Agreement, the Florida plaintiffs had actual knowledge of the facts and circumstances surrounding FedEx Ground's alleged deception and so suffered no loss under the Trade Practices Act.

The Florida plaintiffs correctly state that proof of reliance is not required under the Trade Practices Act. <u>Davis v. Powertel, Inc.</u>, 776 So. 2d 971, 974 (Fla.

Dist. Ct. App. 2000) ("[T]he question is not whether the plaintiff actually relied on the alleged deceptive trade practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances."); *see also* Turner Greenberg Assocs., Inc. v. Pathman, 885 So. 2d 1004, 1009 (Fla. Dist. Ct. App. 2004) (A "demonstration of reliance by an individual consumer is not necessary in the context of FDUTPA."). Contrary to FedEx Ground's suggestion, Hutson "did not apply a reliance standard," but, rather, clarified that class members who understood the allegedly deceptive product label at issue would be unable to prove actual damages. 837 So. 2d at 1092-1093.

In contrast to Hutson, the Florida plaintiffs could not have read the standard Operating Agreement and made an appropriate conclusion regarding their true employment status. Further, the Davis court held that class actions for damages under the Trade Practices Act don't require an allegation that individual members of the class relied on the allegedly unlawful practice. 776 So. 2d at 974. In Davis, the court reversed the denial of class certification, finding that because all of the plaintiffs' claims involved damages based on the same defective practice, "the plaintiffs' inability to show reliance in every case cannot be used to justify a finding that individual issues will predominate over the class claims." Id at 975. Similarly, in this case, all of the Florida drivers claim FedEx Ground's systematic misclassification damaged them. As such, the Florida plaintiffs' Trade Practices Act claims will turn on common questions relating to causation, damages, and whether FedEx Ground's actions constitute unfair trade practices.

146

FedEx Ground also reasserts its position that individualized evidence is needed to resolve independent contractor status. FedEx Ground argues that while Florida frames employment status in terms of the right to control, that factor isn't dispositive, and the parties' actual conduct is essential to determining whether, and to what extent, such a right exists. FedEx Ground also claims the Florida plaintiffs have alleged that many of the standard Operating Agreement's terms are open to interpretation, requiring the court to examine the course of dealing between the parties as well as their intent.

Under Florida law, courts examine several criteria, as formulated by the RESTATEMENT (SECOND) OF AGENCY § 220, to determine whether an individual is an employee or an independent contractor, including: "(1) the extent of the employer's control over the details of the work; (2) whether the person employed is engaged in a distinct occupation or business; (3) the kind of occupation involved, and whether the work is done under the direction of the employer or by a specialist without supervision; (4) the skill required in the particular occupation; (5) whether the employer supplies the instrumentalities, tools, and the place of work; (6) the length of time the person is employed; and (7) whether the work is part of the employer's regular business." Goodwin v. Blu Murray Ins. Agency, Inc., 939 So. 2d 1098, 1103 (Fla. Dist. Ct. App. 2006) (citing Carroll v. Kencher, Inc., 491 So. 2d 1311, 1312 (Fla. Dist. Ct. App. 1986)). Although Florida courts look at numerous factors, "[i]t is well-established that the main test in determining the existence of an employer-employee relationship is whether the employer has

direction and control over the employee." <u>Verchick v. Hecht Inves., Ltd.</u>, 924 So. 2d 944, 946 (Fla. Dist. Ct. App. 2006); <u>4139 Mgmt., Inc. v. Department of Labor and Employment</u>, 763 So. 2d 514, 517 (Fla. Dist. Ct. App. 2000) ("The first element of the <u>Cantor [v. Cochran</u>, 184 So. 2d 173 (Fla. 1966)] test, control, is a primary indicator of status."). In fact, "[a]t common law, four elements were considered in making a determining whether a master and servant relationship exists—the selection and engagement of the servant, the payment of wages, the power of dismissal, and the control of the servant's conduct—the essential element being the right of control and the right to direct the manner in which the work shall be done ." <u>Saudi Arabian Airlines Corp. v. Dunn</u>, 438 So. 2d 116, 120 (Fla. Dist. Ct. App. 1983).

Similar to Kansas, "it is the right to control, rather than actual control, that may be determinative" of employment status under Florida law. <u>Villazon v. Prudential Health Care Plan, Inc.</u>, 843 So. 2d 842, 853 (Fla. 1997); *see also* <u>Nazworth v. Swire Florida, Inc.</u>, 486 So. 2d 637, 638 (Fla. Dist Ct. App. 1986) ("The standard for determining whether an agent is an independent contractor is the degree of control exercised by the employer or owner over the agent. More particularly, it is the *right* of control, and not *actual* control, which determines the relationship between the parties." (internal citations omitted; emphasis in original)). Although FedEx Ground contends the right to control depends upon all of the circumstances between the parties, the Florida Supreme Court clarified that employment status should be determined by "initially look[ing] to the agreement

148

between the parties, if there is one, and honor[ing] that agreement, unless other provisions of the agreement, or the parties' actual practice, demonstrate that it is not a valid indicator of status." Keith v. News & Sun Sentinel Co., 667 So. 2d 167, 171 (Fla. 1995). There is a distinction between the Keith case, in which the parties' written contract vested no right to control in the defendant, and this case, in which the Florida plaintiffs argue that the standard Operating Agreement vests such right to control in FedEx Ground as to make the drivers employees. Unlike the Keith court, which looked to evidence of actual control because a sufficient right did not exist in the contract, the court in this case need not examine the parties' actual practice to find a right to control. *See* Id. at 172 (holding that there was no evidence to suggest that the actual practice of the parties was inconsistent with their intent to form an independent contractor relationship).

FedEx Ground's argument that the court must look beyond the right to control to the other RESTATEMENT (SECOND) OF AGENCY factors is unpersuasive. As noted when addressing the New Hampshire class certification motion, individual analysis of these factors is unnecessary because the Florida plaintiffs don't contend that these factors make them employees, but, rather, maintain that employment status may be determined primarily based on the terms of the Operating Agreement. The additional RESTATEMENT factors cannot affect that contention.

Based on this standard, the extent of FedEx Ground's control over its drivers depends on an analysis of the terms of the standard Operating Agreement,

as well as FedEx Ground's centralized practices and procedures that are systematically applicable to all of the Florida plaintiffs. The common questions regarding FedEx Ground's right to control the work of its drivers predominates over other questions affecting members of the class within the meaning of Rule 23(b)(3). Likewise, certification of a class with respect to the plaintiffs' claims under 23(b)(2) would be proper. Accordingly, the Florida plaintiffs' motion for class certification is granted.

RHODE ISLAND

The Rhode Island plaintiffs (former and current drivers for Home Division) seek certification of the following class for their claims for rescission of the Operating Agreement (under Rule 23(b)(3)) and for declaratory relief (under both Rules 23(b)(2) and 23(b)(3)):

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since May 19, 1999, to provide package pickup and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Rhode Island.

The Rhode Island plaintiffs make no arguments for class certification (other than those dependent on state law) that have not already been discussed in this opinion. FedEx Ground argues the class is too vaguely defined ("full time") and insufficiently numerous (FedEx Ground estimates the class would consist of 58 current and 66 former drivers) to satisfy Rule 23(a)(1); the named plaintiffs aren't

representative of the class because too few of the class want to be categorized as employees, none of the named plaintiffs drove for FedEx Ground rather than Home Division, and the interests of multiple work area drivers conflict with those of single work area drivers; the class action is not superior to individual litigation because the Rhode Island plaintiffs haven't offered a trial plan and putative class members have a strong interest in controlling the litigation's outcome; and the declaratory relief claim is unfit for class certification under Rule 23(b)(2). Each of those arguments has been found unpersuasive elsewhere in this opinion; none is more persuasive with respect to Rhode Island.

The parties disagree as to whether a classwide determination can be made of whether the drivers are independent contractors or employees or whether a driver-by-driver analysis will be needed. Rhode Island courts decide the nature of the relationship based on the hiring party's power to exercise control over the method and means of performing the work. *See* Absi v. State Dep't of Admin., 785 A.2d 554, 556-557 (R.I. 2001); Pasetti v. Brusa, 98 A.2d 833, 834 (R.I. 1953) ("The petitioner contends correctly that the test whether a person is an independent contractor is based on the employer's right or power to exercise control over the method and means of performing the work and not merely the exercise of actual control."). In deciding whether such a power to control exists, Rhode Island courts consider the ten factors found in the RESTATEMENT (SECOND), AGENCY § 220. Estate of Perry v. Green Card, Inc., No. PC/03-4671, 2006 WL 3479056, at *4 (R.I. Super. Dec. 1, 2006). It is the right, not the exercise of the power that matters,

Shore v. Steinhauser, No. NC860157, 1990 WL 10000357, at *1 (R.I. Super. Feb. 14, 1990), though surrounding circumstances are examined to decide whether a contract purporting to yield the power of control truly surrendered the power. Croce v. Whiting Milk Co., 228 A.2d 574, 576-577 (R.I. 1967).

FedEx Ground cites Absi v. State Dep't of Admin., 785 A.2d 554, for the proposition that the failure to exercise a right to control may produce an independent contractor relationship, but Absi involved a different body of law. Absi involved application of Rhode Island's Merit System Act, R.I. GEN. LAWS § 37-2-72, and the state's authority to enter into procurement contracts.

For purposes of class certification, Rhode Island law compels driver-by-driver analysis no more than other states that employ the RESTATEMENT (SECOND) § 220 test, such as Arkansas, Kentucky, New Jersey, Maryland, New Hampshire, Oregon, Indiana, and Florida. For the reasons set forth in the discussion of the motions to certify classes of drivers in those states, as well as the other discussions in this opinion and the Kansas opinion rejecting FedEx Ground's other objections to certification of a Rhode Island class, the court grants the Rhode Island plaintiff's motion for class certification.

C.

As noted throughout this opinion, in each class certification motion, the plaintiffs seek certification of a class under Rule 23(b)(2) for their claims for injunctive and declaratory relief (and in a few cases, for accounting), and

certification of the same class under Rule 23(b)(3) for their damages claims and declaratory relief claims. In each instance (other than the California FMLA claim, as to which no class was certified), the claimed damages flow directly from FedEx Ground's asserted liability to the class as a whole on the claims forming the basis for injunctive or declaratory relief. As such, the damages claims are incidental to the dominant claims for injunctive and declaratory relief, within the meaning of Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir. 1998). Accordingly, as in the Kansas opinion, certification under Rule 23(b)(2) alone is preferable.

## D.

Two more points must be made before setting forth the orders to be entered. First, FedEx Ground expressed concern in its briefing of these motions that once classes are certified, the plaintiffs will turn their focus from the Operating Agreement to anecdotal evidence and the experiences of individual drivers. The court boasts no ability to divine a party's unexpressed intent, and so assumes the plaintiffs have no such intent, that (for example) mention in briefs that the individual plaintiffs believed themselves to be treated as employees was nothing more than fighting FedEx Ground's class certification fire with fire.

Based on that assumption, the court has resolved these motions with the correlative assumption that the plaintiffs will not, at the summary judgment or trial stages, present evidence other than the Operating Agreements and generally applicable FedEx policies. If this correlative assumption is mistaken, several of

today's rulings must be reconsidered. The court affords the plaintiffs 20 days from the date of this order within which to inform the court if this correlative assumption is mistaken.

Second, in case after case in which these rulings are made, the court has marveled at the elasticity of the holdings in the cases FedEx Ground cited for various propositions. Today's opinion sets forth several of the most remarkable examples. Based on this experience of reviewing 40 pages of FedEx Ground briefs in each of 29 cases, the court urges whatever counsel signs future FedEx Ground briefs to carefully read both the authorities cited in those briefs and Rule 11 of the Federal Rules of Civil Procedure.

E.

For the foregoing reasons, the court ORDERS as follows:

1. In Cause No. 3:05-CV-600 [Tennessee], the court GRANTS IN PART the plaintiffs' motion for class certification [doc. # 599] and certifies the following class under Federal Rule of Civil Procedure 23(b)(2) for purposes of the plaintiffs' claims for violations of Tennessee's Consumer Protection Act of 1977 and seek an accounting, rescission, and declaratory and injunctive relief:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since June 22, 1999, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Tennessee.

2. In Cause No. 3:06-CV-393 [Montana], the court DENIES the plaintiffs' motion for class certification [doc. # 600].

3. In Cause No. 3:05-CV-593 [Mississippi], the court DENIES the plaintiffs' motion for class certification [doc. # 598].

4. In Cause No. 3:06-CV-209 [Arkansas], the court GRANTS IN PART the plaintiffs' motion for class certification [doc. # 603] and certifies the following class under Federal Rule of Civil Procedure 23(b)(2) for purposes of the plaintiffs' claims for violations of Arkansas's overtime statute and asserts claims for fraud, rescission, unjust enrichment, and declaratory judgment:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since January 17, 2001, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Arkansas.

5. In Cause No. 3:05-CV-666 [Kentucky], the court GRANTS IN PART the plaintiffs' motion for class certification [doc. # 602] and certifies the following class under Federal Rule of Civil Procedure 23(b)(2) for purposes of the plaintiffs' claims for violations of Kentucky's wage deduction statute, rescission and unjust enrichment, and declaratory and injunctive relief:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since September 13, 2000, to provide package pick-up and delivery services pursuant to the Operating Agreement;

and 3) were dispatched out of a terminal located in Kentucky or provide(d) pick-up and delivery services within Kentucky.

6. In Cause No. 3:05-CV-540 [Texas], the court GRANTS IN PART the plaintiffs' motion for class certification [doc. # 601] and certifies the following class under Federal Rule of Civil Procedure 23(b)(2) for purposes of the plaintiffs' claims for rescission and declaratory relief:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since March 6, 2001 to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Texas.

7. In Cause No. 3:05-CV-601 [Wisconsin], the court GRANTS IN PART the plaintiffs' motion for class certification [doc. # 582] and certifies the following class under Federal Rule of Civil Procedure 23(b)(2) for purposes of the plaintiffs' claims for wage payment statute, rescission, and declaratory relief:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since August 18, 1999, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Wisconsin.

8. In Cause No. 3:06-CV-428 [Alabama], the court GRANTS IN PART the plaintiffs' motion for class certification [doc. # 583] and certifies the following class under Federal Rule of Civil Procedure 23(b)(2) for purposes of the plaintiffs' claims for rescission, unjust enrichment, and declaratory and injunctive relief:

All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since May 11, 2000, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Alabama.

9. In Cause No. 3:05-CV-538 [New York], the court GRANTS IN PART the plaintiffs' motion for class certification [doc. # 548] and certifies the following class under Federal Rule of Civil Procedure 23(b)(2) for purposes of the plaintiffs' claims for New York's wage statutes and unlawfulness of the Operating Agreement:

All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since October 27, 1998, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of New York.

10. In Cause No. 3:05-CV-531 [Massachusetts], the court DENIES the plaintiffs' motion for class certification [doc. # 553 and 563 (corrected version)].

11. In Cause No. 3:05-CV-528 [California], the court GRANTS IN PART AND DENIES IN PART the plaintiffs' motion for class certification [doc. # 547 and 561 (corrected version)] as follows:

a. the court DENIES the motion to the extent it seeks to certify a class under the Family Medical Leave Act;

b. the court certifies the following class under Federal Rule of Civil Procedure 23(b)(2) for purposes of the plaintiffs' claims under California law:

All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since November 17, 2000, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of California.

c. the court certifies the following sub-class under Federal Rule of Civil Procedure 23(b)(2) for purposes of the plaintiffs' claims for overtime:

All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since November 17, 2001, to provide package pick-up and delivery services pursuant to the Operating Agreement; 3) were dispatched out of a terminal in the state of California; and 4) at any time during the class period operated a vehicle with a gross vehicle weight rating of less than 10,001 pounds.

12. In Cause No. 3:05-CV-595 [New Jersey], the court GRANTS IN PART the plaintiffs' motion for class certification [doc. # 552] and certifies the following class under Federal Rule of Civil Procedure 23(b)(2) for purposes of the plaintiffs' claims under New Jersey's Wage Payment Law, N.J. STAT. ANN. § 34:11-4.1, *et seq.*, and Consumer Fraud Act, N.J. STAT. ANN. § 56:8-1, *et seq.*, breach of the covenant of good faith and fair dealing within the Operating Agreement, rescission of the Operating Agreement, *quantum meruit* damages for services performed, and declaratory and injunctive relief:

All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES) for the first time on or after May 19,

1999; 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since May 19, 1999, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of New Jersey.

13. In Cause No. 3:06-CV-485 [Maryland], the court GRANTS IN PART the plaintiffs' motion for class certification [(doc. # 546] and certifies the following class under Federal Rule of Civil Procedure 23(b)(2) for purposes of the plaintiffs' claims for violation of Maryland's wage statutes, unjust enrichment, and declaratory and injunctive relief:

All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since May 5, 2003, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Maryland.

14. In Cause No. 3:05-CV-532 [Michigan], the court DENIES the plaintiffs' motion for class certification [doc. # 581].

15. In Cause No. 3:05-CV-533 [Minnesota], the court GRANTS IN PART the plaintiffs' motion for class certification [doc. # 576] and certifies the following class under Federal Rule of Civil Procedure 23(b)(2) for purposes of the plaintiffs' claims under Minnesota's Illegal Deductions from Wages Law, MINN. STAT. § 181.79, subd. 1, Failure to Keep Records Law, MINN. STAT. § 177.30, and Consumer Fraud Act, MINN. STAT. § 325F.69, subd. 1, for rescission, *quantum meruit*, and declaratory and injunctive relief:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since April 5, 1999, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Minnesota.

16. In Cause No. 3:05-CV-597 [Pennsylvania], the court GRANTS IN PART the plaintiffs' motion for class certification [doc. # 579] and certifies the following class under Federal Rule of Civil Procedure 23(b)(2) for purposes of the plaintiffs' claims  claims for injunctive and declaratory relief, damages for violation of the Pennsylvania Wage Payment and Collection Law, and for rescission:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since July 25, 2001, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the commonwealth of Pennsylvania.

17. In Cause No. 3:05-CV-534 [New Hampshire], the court GRANTS IN PART the plaintiffs' motion for class certification [doc. # 580] and certifies the following class under Federal Rule of Civil Procedure 23(b)(2) for purposes of the plaintiffs' claims  for failure to pay overtime, 3 N.H. REV. STAT. ANN. § 279:21 VII, and to provide meal breaks, 2 N.H. REV. STAT. ANN. § 275:30-a, unauthorized deductions from compensation, 4 N.H. REV. STAT. ANN. § 275:48, failure to reimburse expenses, 5 N.H. REV. STAT. ANN. § 275:57, violation of the Unfair Business

Practices Act, N.H. REV. STAT. ANN. ch. 358-A, *et seq.*, rescission, failure to reimburse employee expenses, and declaratory relief:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since April 27, 2002, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of New Hampshire.

18. In Cause No. 3:05-CV-668 [South Carolina], the court GRANTS IN PART the plaintiffs' motion for class certification [doc. # 578] and certifies the following class under Federal Rule of Civil Procedure 23(b)(2) for purposes of the plaintiffs' claims  for unlawful wage deductions, S.C. CODE ANN. § 41-10-40, rescission and unjust enrichment, and declaratory relief:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since September 6, 2002, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of South Carolina.

19. In Cause No. 3:06-CV-337 [Missouri], the court DENIES the plaintiffs' motion for class certification [doc. # 577].

20. In Cause No. 3:05-CV-596 [Oregon], the court GRANTS IN PART the plaintiffs' motion for class certification [doc. # 557] and certifies the following class under Federal Rule of Civil Procedure 23(b)(2) for purposes of the plaintiffs' claims

for illegal deductions from wages, OR. REV. STAT. § 652.610, rescission, and declaratory relief:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since July 20, 1999, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Oregon.

21. In Cause No. 3:05-CV-539 [South Dakota], the court DENIES the plaintiffs' motion for class certification [doc. # 555].

22. In Cause No. 3:05-CV-390 [Indiana], the court GRANTS IN PART the plaintiffs' motion for class certification [doc. # 556] and certifies the following class under Federal Rule of Civil Procedure 23(b)(2) for purposes of the plaintiffs' claims for compensatory damages, IND. CODE §§ 22-2-4-4 and 22-2-6-1, *et seq.*, rescission, and declaratory and injunctive relief:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since June 28, 1999, to provide package pick–up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the State of Indiana.

23. In Cause No. 3:05-CV-652 [Iowa], the court DENIES the plaintiffs' motion for class certification [doc. # 554].

24. In Cause No. 3:06-CV-826 [West Virginia], the court GRANTS IN PART the plaintiffs' motion for class certification [doc. # 595] and certifies the following class under Federal Rule of Civil Procedure 23(b)(2) for purposes of the plaintiffs'

claims for damages for unjust enrichment and under W. VA. CODE § 46A-1-101, *et seq.,* and W. VA. CODE § 21-5-1, *et seq.,* for rescission, an accounting, declaratory and injunctive relief:

>All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since September 25, 2001 to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of West Virginia.

25. In Cause No. 3:05-CV-541 [Virginia], the court DENIES the plaintiffs' motion for class certification [doc. # 597].

26. In Cause No. 3:05-CV-529 [Illinois], the court DENIES the plaintiffs' motion for class certification [doc. # 575].

27. In Cause No. 3:05-CV-664 [Florida], the court GRANTS IN PART the plaintiffs' motion for class certification [doc. # 584] and certifies the following class under Federal Rule of Civil Procedure 23(b)(2) for purposes of the plaintiffs' claims for damages for violation of the Florida Deceptive and Unfair Trade Practices Act, rescission, declaratory and injunctive relief:

>All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since June 28, 2000, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Florida.

28. In Cause No. 3:05-CV-599 [Rhode Island], the court GRANTS IN PART the plaintiffs' motion for class certification [doc. # 596] and certifies the following

class under Federal Rule of Civil Procedure 23(b)(2) for purposes of the plaintiffs'

claims for rescission and declaratory relief:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since May 19, 1999, to provide package pickup and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Rhode Island.

SO ORDERED.

ENTERED:   March 25, 2008


    /s/ Robert L. Miller, Jr.
Robert L. Miller, Jr., Chief Judge
United States District Court