UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DONALD E. CARLSON, ET AL.,

      Plaintiffs,

v.                                       Case No.  8:05-cv-1380-T-24 TGW

FEDEX GROUND PACKAGE
SYSTEM, INC.,

      Defendant.
_____/

## ORDER

This cause comes before the Court on three motions: (1) Defendant's Motion for

Summary Judgment (Doc. No. 131, 162), which Plaintiffs oppose (Doc. No. 143, 160); (2)

Defendant's Motion for Leave to Amend its Defenses (Doc. No. 140), which Plaintiffs initially

opposed[1] (Doc. No. 145); and (3) Defendant's Motion to Strike McArthur's Expert Report (Doc.

No. 119), which Plaintiffs oppose (Doc. No. 130).  The Court heard oral argument on these

motions on July 17 and 18, 2013.

## I.  Procedural Background

This case was originally filed on June 28, 2005 and pertains to the business relationship

between Defendant FedEx Ground Package Systems, Inc. and its drivers.  The case was

transferred to multi-district litigation ("MDL") on October 25, 2005.  When the MDL court

remanded this case back to this Court, two claims remained: (1) False Information Negligently

Provided (Count III) and (2) Breach of Contract (Count IV).  Only three plaintiffs remain in this

---

[1]At the hearing on this motion, Plaintiffs' counsel stated that Plaintiffs no longer opposed
Defendant's motion to amend.

case: Sheree Harting, Troy Upman, and David Mosher (collectively referred to as "Plaintiffs").[2]

Defendant filed the instant motion for summary judgment, and the Court granted it in part and deferred ruling in part.  (Doc. No. 164).  The Court deferred ruling, in large part, on Plaintiffs' breach of contract claim.  The Court granted, in large part, Defendant's motion for summary judgment on the false information negligently supplied claim.  All that remains with respect to the false information negligently supplied claim is Harting's claim that Defendant negligently misrepresented the amount of the van availability payment.  Plaintiffs moved for reconsideration of parts of the Court's summary judgment order, which this Court denied.  (Doc. No. 169).

**II.  Factual Background**

Plaintiffs each entered into Operating Agreements ("OA's") with Defendant.  Upman and Harting entered into Home Delivery OA's with Defendant, which gave them a proprietary interest in delivering to and picking up packages from a specific zip code.  Mosher entered into a Ground Delivery OA with Defendant, which gave him a proprietary interest in delivering to and picking up packages from a specifically described geographic area.  The areas in which Plaintiffs had a proprietary interest were referred to as their Primary Service Area ("PSA").

Plaintiffs' OA's provided that as the customer base and package volume in their PSA increased, the geographic size of the area that they would be able to serve would be expected to decrease.  (Doc. No. 132-7, Ex. G, p. 359-61; Doc. No. 132-4, Ex. D, p. 226-27; Doc. No. 132-6, Ex. F, p. 316-17).  The OA's provided that this increase in package volume would likely create

---

[2]Plaintiffs Donald Carlson, Charles House, and Stephen Renberg have settled their remaining claims against Defendant.

the opportunity to complete a greater number of package pick-ups and deliveries with less expense, due to the smaller area to be covered. (Doc. No. 132-7, Ex. G, p. 359-61; Doc. No. 132-4, Ex. D, p. 226-27; Doc. No. 132-6, Ex. F, p. 316-17). Therefore, the OA's provided that Defendant could reconfigure their PSA's to take into account customer service requirements after first giving Plaintiffs an opportunity to continue to serve their entire PSA. (Doc. No. 132-7, Ex. G, p. 359-61; Doc. No. 132-4, Ex. D, p. 226-27; Doc. No. 132-6, Ex. F, p. 316-17). However, if Defendant decided to reconfigure their PSAs, the OA's gave Plaintiffs the right to receive a specified payment for the reconfiguration. (Doc. No. 132-7, Ex. G, p. 359-61; Doc. No. 132-4, Ex. D, p. 226-27; Doc. No. 132-6, Ex. F, p. 316-17).

In addition to delivering to and picking up packages from their PSA's, Plaintiffs' OA's specified that they could be asked to deliver to and pick up packages from other areas outside of their PSA's. (Doc. No. 132-4, Ex. D, p. 213; Doc. No. 132-6, Ex. F, p. 303; Doc. No. 132-7, Ex. G, p. 345). Conversely, Plaintiffs' OA's specified that if the volume of packages available for delivery or pick-up on a specific day in their PSA exceeded the volume that they could reasonably handle that day, then Defendant could reassign a portion of such packages to another contractor for the day. (Doc. No. 132-4, Ex. D, p. 213; Doc. No. 132-6, Ex. F, p. 303; Doc. No. 132-7, Ex. G, p. 346).

All three plaintiffs contend that Defendant breached the reconfiguration provisions of their OA's. Additionally, Mosher and Upman each identify an additional breach that is specific to their situation, which the Court will more fully address when analyzing their claims. In addition to her breach of contract claim, Harting asserts that in 2004, Defendant negligently supplied false information to her regarding the amount of the van availability payment if she

purchased a larger van to use for her pickups and deliveries.

### III.  Motion for Summary Judgment

Defendant moves for summary judgment on both the breach of contract and false information negligently supplied claims.  Accordingly, the Court will analyze Defendant's motion as it applies to each plaintiff.

#### A.  Mosher

Mosher asserts a breach of contract claim based on Defendant's alleged breaches of Sections 1.15 and 5 of his OA.[3]  However, as explained below, his entire breach of contract claim fails.

##### 1.  Section 1.15

Section 1.15 of Mosher's OA provides the following:

> It is specifically understood and agreed by both parties that [Mosher] shall be responsible for exercising independent discretion and judgment to achieve the business objectives and results specified above, and no officer, agent or employee of [Defendant] shall have the authority to direct [Mosher] as to the manner or means employed to achieve such objectives and results. For example, no officer, agent or employee of [Defendant] shall have the authority to prescribe hours of work, whether or when [Mosher] is to take breaks, what route [Mosher] is to follow, or other details of performance.

(Doc. No. 132-7, Ex. G, p. 349).  Mosher contends that Defendant violated this provision "every morning" by dictating the time that he was allowed to leave Defendant's terminal by locking the

---

[3]At oral argument, Plaintiffs' counsel conceded that to the extent Mosher's breach of contract claim was based on Defendant's alleged breaches of Sections 1.1 (being required to lease his vehicle from Bush Leasing) and 9 (being required to participate in the Flex Program) of his OA, his claim failed because he could not show that he suffered any damages.  The Court also notes that these alleged breaches are time-barred, as they occurred in 1999—outside of the four-year limitations period.  Therefore, Defendant is entitled to summary judgment on these claims.

terminal gates and not allowing him to leave until Defendant unlocked the terminal gates. (Doc. No. 161-1, Ex. P, p. 274-75).

Defendant responds that this claim fails for three reasons: (1) it is barred by the statute of limitations; (2) to the extent that the claim is not barred by the statute of limitations, Mosher does not have standing to assert the claim; and (3) there is no evidence of damages. As explained below, the Court agrees with Defendant.

### a. Statute of Limitations

In this Court's prior summary judgment order, the Court concluded that Pennsylvania's four-year limitations period applied to Plaintiffs' breach of contract claim. This case was filed on June 28, 2005, so any breaches that occurred prior to June 28, 2001 are time-barred.

Mosher entered into his OA on February 15, 1999. As such, assuming that Defendant's locking of its terminal gates could be considered a breach of Section 1.15 of Mosher's OA,[4] such conduct would be time-barred to the extent that it occurred prior to June 28, 2001.

### b. Standing

Defendant contends that Mosher assigned his interest in his OA to a corporation that he formed, D. Mosher Inc., in March of 2000, and as such, to the extent that this alleged breach occurred after June 28, 2001 and is not time-barred, Mosher lacks standing to pursue relief. Instead, Defendant argues that D. Mosher Inc. is the proper party to assert such a claim. The Court agrees with Defendant.

---

[4]The Court doubts that Defendant's locking of its own gates on its own property could be considered an attempt to dictate the hours of Mosher's work, and thus, a breach of Section 1.15 of Mosher's OA. However, even assuming that such could be considered a breach, his claim would still fail.

There is no dispute that there does not exist a written document that formalizes the assignment of Mosher's interest in his OA to D. Mosher Inc.  However, the evidence before the Court regarding the parties' course of performance establishes that an assignment did, in fact, occur.

"An effective assignment . . . must evidence a present intent by the assignor, at the time of assignment, to divest himself of his rights."  In re Bradstreet, 2002 WL 1349588, at *7 (E.D. Pa. June 3, 2002).  Such an intent can be evidenced through a definitive act.  See id. at *8.  For example, in the case of In re Marker, 142 B.R. 734, 736-37 (Bankr. W.D. Pa.1992), the defendants (the debtor and his brother) held an exclusive option to purchase their father's equal one third interest in the stock of GEM during the first year after his death.  Despite the lack of a formal written assignment between the defendants and GEM, the court found that the defendants had assigned their purchase option to GEM.  See id. at 740-41.  Specifically, the court found that there was a clear intent by the defendants to divest themselves of their personal right to exercise the option when the debtor drafted a check from GEM's bank account to their father's widow.  See id. at 741.

Likewise, in the instant case, there is an abundance of evidence that Mosher assigned his interest in his OA to D. Mosher Inc. in March of 2000.  (Doc. No. 132-19, Ex. R, p. 721-22, 745; Doc. No. 132-13, Ex. M, p. 488; Doc. No. 162-22, Ex. 22, p. 260-65; Doc. No. 162-16, Ex. 16, p. 185; Doc. No. 162-17, Ex. 17, p. 200; Doc. No. 162-18, Ex. 18, p. 211; Doc. No. 162-19, Ex. 19, p. 222; Doc. No. 162-20, Ex. 20, p. 234; Doc. No. 162-21, Ex. 21, p. 245).  For example, Mosher testified at his deposition that once he incorporated D. Mosher Inc., the corporation became the contracting entity with Defendant.  (Doc. No. 132-19, Ex. R, p. 721-22).  From that

point forward, Defendant made payments that were due under the OA to D. Mosher Inc.  (Doc.

No. 132-19, Ex. R, p. 722).  D. Mosher Inc.'s tax returns reflect the payments that were made by

Defendant.  (Doc. No. 162-22, Ex. 22, p. 260-65; Doc. No. 162-16, Ex. 16, p. 185; Doc. No.

162-17, Ex. 17, p. 200; Doc. No. 162-18, Ex. 18, p. 211; Doc. No. 162-19, Ex. 19, p. 222; Doc.

No. 162-20, Ex. 20, p. 234; Doc. No. 162-21, Ex. 21, p. 245).  Finally, Mosher and Defendant

entered into a Signature Page Amendment that changed the identity of the contractor in the OA

from Mosher to D. Mosher Inc.  (Doc. No. 132-19, Ex. R, p. 745).  Thus, there is overwhelming

evidence that Mosher assigned his interest in his OA to D. Mosher Inc. in March of 2000.

Given the assignment, Mosher cannot pursue a breach of contract claim against

Defendant for an alleged breach that occurred after he assigned his interest under the OA to D.

Mosher Inc. in March of 2000.  "[U]nder Pennsylvania law, a contracting party that has assigned

its contract rights to a third party does not have standing to enforce that contract."  In re

Bradstreet, 2002 WL 1349588, at *7 (citing Sanford Investment Co. v. Ahstrom Machinery

Holdings, Inc., 198 F.3d 415, 420 (3d Cir.1999)).  As such, to the extent that this alleged breach

occurred after June 28, 2001 and is not time-barred, Mosher lacks standing to pursue relief.

### c.  Damages

Finally, Defendant argues that there is no evidence of damages in the record regarding

this alleged breach.  For example, in his Rule 26 disclosure of damages, there is no mention of

damages for this alleged breach.  (Doc. No. 167-20, Ex. 20, p. 170-74).  Likewise, there is no

mention of damages for this alleged breach in his answers to Defendant's interrogatories.  (Doc.

No. 132-13, Ex. M, p. 484-88).  Thus, in addition to the reasons set forth above for why this

alleged breach of contract fails, it fails for the additional reason that there is no evidence of

damages for this breach in the record.  Accordingly, the Court grants summary judgment on

Mosher's claim that Defendant breached Section 1.15 of his OA.

### 2.  Section 5

Section 5 of Mosher's OA provided that Defendant could reconfigure his PSA to take

into account customer service requirements after first giving him an opportunity to continue to

serve his entire PSA.  However, if Defendant decided to reconfigure his PSA, Mosher's OA gave

him the right to receive a specified payment for the reconfiguration.  Mosher contends that

Defendant violated these provisions by: (1) reconfiguring his PSA five times between 2002 and

2005, (2) failing to give him notice for each of the reconfigurations and the opportunity to retain

his entire PSA, and (3) failing to pay him for the reconfigurations.

Defendant responds that Mosher cannot pursue relief for this alleged breach, because it

occurred after Mosher assigned his interest in his OA to D. Mosher Inc.  The Court agrees with

Defendant.  Accordingly, the Court grants summary judgment on Mosher's claim that Defendant

breached Section 5 of his OA.

### B.  Upman

Upman asserts a breach of contract claim based on Defendant's alleged breaches of

Sections 2.2 and 6 of his OA.  However, as explained below, Upman's breach of contract claim

fails to the extent that it is based on a breach of Section 6 but will proceed to the extent that it is

based on a breach of Section 2.2.

### 1.  Section 2.2

Upman contends that Defendant's refusal to allow him to hire his wife as a driver was a

breach of Section 2.2 of his OA, which provides that Upman may employ drivers to assist him,

as long as the driver is qualified under Defendant's Safe Driving Program Standards. (Doc. No.

132-6, Ex. F, p. 307). This alleged breach occurred in 2002, and as such, the claim is timely.

Furthermore, Upman has shown damages resulting from the breach; specifically, he contends

that his damages consist of the $20,503.93 that he spent on a second van that he could not use for

two years while Defendant would not approve of his wife as a driver. (Doc. No. 167-21, Ex. 21,

p. 195). Accordingly, the Court will allow Upman's breach of contract claim to proceed to the

extent that it is based on Section 2.2 of his OA.

### 2.  Section 6

Section 6 of Upman's OA provided that Defendant could reconfigure his PSA to take

into account customer service requirements after first giving him an opportunity to continue to

serve his entire PSA. However, if Defendant decided to reconfigure his PSA, Upman's OA gave

him the right to receive a specified payment for the reconfiguration. Upman contends that

Defendant reconfigured his PSA without following the terms of Section 6.2, and he was not paid

for the reconfiguration in accordance with Section 6.3.

Defendant responds that there is no evidence that it reconfigured Upman's PSA. Instead,

Upman points to instances where his supplemental routes/packages were given away and/or

when packages within his PSA were given away on a certain day due to the volume of packages

in his PSA exceeding the volume that Defendant believed he could reasonably handle that day.

(Doc. No. 167-4, Ex. 4, p. 30-31). Such conduct is specifically allowed under Section 1.10(a) of

his OA. (Doc. No. 132-6, Ex. F, p. 303). Therefore, the Court agrees with Defendant that

Upman's breach of contract claim fails to the extent that it is based on a breach of Section 6,

because there is no evidence that Defendant reconfigured Upman's PSA.

### C.  Harting

Harting asserts a breach of contract claim based on Defendant's alleged breach of Section 6 of her OA.[5]  Additionally, she asserts a false information negligently supplied claim based on Defendant's manager's statement regarding the amount the van availability payment.  However, as explained below, both claims fail.

### 1.  Section 6

Section 6 of Harting's OA provided that Defendant could reconfigure her PSA to take into account customer service requirements after first giving her an opportunity to continue to serve her entire PSA.  However, if Defendant decided to reconfigure her PSA, Harting's OA gave her the right to receive a specified payment for the reconfiguration.  Harting contends that Defendant reconfigured her PSA without following the terms of Section 6.2, and she was not paid for the reconfiguration in accordance with Section 6.3.

Defendant responds that there is no evidence that it reconfigured Harting's PSA.  Instead, Harting testified at her deposition that the routes that were taken away from her were outside of her PSA.  (Doc. No. 132-15, Ex. O, p. 556-57).  Accordingly, the Court agrees with Defendant that Harting's breach of contract claim fails, because there is no evidence that Defendant reconfigured her PSA.

### 2.  False Information Negligently Supplied

In addition to her breach of contract claim, Harting asserts that in 2004, Defendant

---

[5]Harting originally argued that Defendant breached Section 2.2 of her OA, but during oral argument, Plaintiffs' counsel conceded that Harting could not show any damages for that alleged breach.  As such, Defendant is entitled to summary judgment on Harting's claim that Defendant breached Section 2.2 of her OA.

negligently supplied false information to her regarding the amount of the van availability

payment if she purchased a larger van to use for her pickups and deliveries.  Specifically,

Harting contends that one of Defendant's managers verbally "guaranteed" her that if she bought

a larger van, a P500, she would get a larger van availability payment.  (Doc. No. 161-4, Ex. S, p.

302).  The manager told her that "he was certain that there would be an increase in [the] van

availability [payment], substantial he told [her], as in double."  (Doc. No. 161-4, Ex. S, p. 303).

However, after Harting bought the P500 van, she learned that the van availability payment

(which was $25 per day) had only increased by $5.  (Doc. No. 161-4, Ex. S, p. 303).

Defendant responds that this claim fails for three reasons: (1) Harting does not have

standing to pursue this claim; (2) there is no evidence that the statement was *negligently* made;

and (3) there is no evidence of damages.  As explained below, the Court agrees with Defendant

that this claim fails.

### a.  Standing

Defendant contends that Harting assigned her interest in her OA to a corporation that she

co-formed, Hartson Services Inc., in 2002, and as such, Harting lacks standing to pursue relief.

Instead, Defendant argues that Hartson Services Inc. is the proper party to assert such a claim.

The Court agrees with Defendant.

There is no dispute that there does not exist a written document that formalizes the

assignment of Harting's interest in her OA to Hartson Services Inc.  However, the evidence

before the Court regarding the parties' course of performance establishes that an assignment did,

in fact, occur.

As previously stated, an effective assignment must evidence a present intent by the

assignor, at the time of assignment, to divest herself of her rights, and such an intent can be

evidenced through a definitive act.  In the instant case, there is an abundance of evidence that

Harting assigned her interest in her OA to Hartson Services Inc. in 2002.  (Doc. No. 132-10, Ex.

J, p. 453; Doc. No. 162-1, Ex. 1, p. 8, 10; Doc. No. 132-15, Ex. O, p. 527-28, 531-32, 570; Doc.

No. 162-3, Ex. 3, p. 20-22; Doc. No. 162-5, Ex. 5, p. 28; Doc. No. 162-6, Ex. 6, p. 43; Doc. No.

162-7, Ex. 7, p. 62; Doc. No. 162-14, Ex. 14, p. 149-51).  For example, Harting testified at her

deposition that after she incorporated, Defendant made payments that were due under the OA to

Hartson Services Inc.  (Doc. No. 132-15, Ex. O, p. 527-28, 531-32; Doc. No. 162-1, Ex. 1, p. 8).

Furthermore, Hartson Services Inc.'s tax returns reflect the payments that were made by

Defendant.  (Doc. No. 162-5, Ex. 5, p. 28; Doc. No. 162-6, Ex. 6, p. 43; Doc. No. 162-7, Ex. 7,

p. 62; Doc. No. 162-14, Ex. 14, p. 149-51).  Finally, Defendant's internal records reflect that

Hartson Services Inc. took over Harting's OA.  (Doc. No. 132-15, Ex. O, p. 570).  Thus, there is

overwhelming evidence that Harting assigned her interest in her OA to Hartson Services Inc. in

2002.  Given the assignment, the Court agrees with Defendant that Harting cannot pursue this

claim against Defendant that arose in 2004.

### b.  Negligence

Additionally, Defendant argues that this claim fails because Plaintiff has not shown that

Defendant was negligent in making the statement regarding the amount of the van availability

payment.  Florida's standard jury instructions provide that an element of a false information

negligently supplied claim is that the defendant was negligent in obtaining or communicating the

false information.  In re Standard Jury Instructions in Civil Cases – Report 12-01, 2013 WL

2349287, at *14-15 (Fla. May 30, 2013).  However, Harting has failed to provide any

information surrounding the communication of the false information, such as the amount of time that passed between the date that the statement was made and the date that she purchased the larger van.  Perhaps the statement was true when made, but later events caused the amount of the van availability payment to change.  Harting provides no information for the Court to find that there is a genuine issue of material fact that Defendant *negligently* provided the false information.  Thus, this is an additional basis for granting summary judgment on this claim.

### c.  Damages

Additionally, Defendant argues that there is no evidence of damages in the record regarding this claim.  For example, in her Rule 26 disclosure of damages, there is no mention of damages for this claim.  (Doc. No. 167-20, Ex. 20, p. 175-76; Doc. No. 167-21, Ex. 21, p. 192-93).  Likewise, there is no mention of damages for this claim in her answers to Defendant's interrogatories.  (Doc. No. 132-10, Ex. J, p. 452-55).  Thus, this is an additional basis for granting summary judgment on this claim.

### d.  Additional Observations by the Court

Additionally, the Court notes that this claim fails for another reason—the language in Harting's OA makes any reliance on the alleged statement regarding the amount of the van availability payment unreasonable.  Specifically, Addendum 3 to the OA provides the amount of the van availability payment.  (Doc. No. 132-4, Ex. D, p. 240, 259-60).  Section 10 of the OA provides that the Addenda "shall not be modified, altered, changed or amended in any respect unless in writing and signed by both parties."  (Doc. No. 132-4, Ex. D, p. 233).  As such, Harting was not justified in relying on the statement regarding the amount of the van availability payment if the amount conflicted with the terms of the OA.

Given that this Court has concluded that Defendant is entitled to summary judgment on

Harting's false information negligently supplied claim, the Court need not consider Defendant's

motion to amend its affirmative defenses with respect to this claim.  Accordingly, the Court

denies Defendant's motion to amend its affirmative defenses as moot.

## IV.  Motion to Strike Expert Report

Plaintiffs' expert, Gilbert McArthur, has issued an amended expert report (Doc. No. 96-

1), in which he makes certain opinions based on Defendant's representations regarding the

potential profitability for entering into an OA.  Specifically, McArthur states that "[o]ne good

measure of some of the damages incurred by the plaintiffs is the difference between the financial

model prepared by defendant . . . and the actual net business income before taxes realized by the

plaintiffs . . . . Our analysis focuses on that measure of damages, because ultimately all issues in

a business setting manifest themselves in operating results.  (Doc. No. 96-1, p. 4).  McArthur

further opined that "the consistent deviation by significant margins of actual results attained by

the plaintiffs, when compared with the illustrated model provided by the defendant indicates to

this expert that the potential results illustrated are excessively optimistic to the point of being

grossly misleading."  (Doc. No. 96-1, p. 5).

McArthur's report was subject to a motion to strike that was considered by Judge Wilson.

Judge Wilson concluded that parts of the report would be stricken, including the opinion that

Defendant's profitability model was excessively optimistic to the point of being grossly

misleading.  (Doc. No. 101).

Defendant moves to strike the remainder of McArthur's expert report for two reasons: (1)

his damages opinions bear no relationship to Plaintiffs' claims, and (2) his opinions are based on

incorrect methods.  As such, Defendant argues that this expert opinion must be excluded under

<u>Daubert</u>.  The Court agrees with Defendant.

The only claim that remains in this case is Upman's claim that Defendant breached

Section 2.2 of his OA by failing to approve of his wife as a driver for two years.  McArthur's

damages opinions bear absolutely no relationship to this claim.  As such, McArthur's opinion is

irrelevant and cannot be used at trial.  Likewise, McArthur's opinions are based on incorrect

methods, as explained by Defendant during the hearing on this motion.  Accordingly, the Court

grants Defendant's motion to strike McArthur's amended expert report.

## V.  Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1)      Defendant's Motion for Summary Judgment (Doc. No. 131) is **GRANTED IN**

**PART AND DENIED IN PART**: The motion is **DENIED** to the extent that

Upman may pursue his claim that Defendant breached Section 2.2 of his OA by

failing to approve of his wife as a driver for two years; otherwise, Defendant's

motion is **GRANTED** as to all other remaining claims.

(2)      Defendant's Motion for Leave to Amend its Defenses (Doc. No. 140) is **DENIED**

**AS MOOT**.

(3)      Defendant's Motion to Strike McArthur's Expert Report (Doc. No. 119) is

**GRANTED**.

(4)      A pretrial conference in this case is scheduled for September 5, 2013 at 8:30 a.m.

in Courtroom 17.  This case is set for a jury trial on the Court's October 2013 trial

calendar.

**DONE AND ORDERED** at Tampa, Florida, this 19th day of July, 2013.

Copies to:
Counsel of Record

SUSAN C. BUCKLEW
United States District Judge